IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MARIE J. KOSEGARTEN, | ) | CIVIL NO. 10-00321 LEK-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE DEPARTMENT OF THE | ) | |
| PROSECUTING ATTORNEY, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF QUALIFIED IMMUNITY FOR INDIVIDUAL DEFENDANTS AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON TIME-BARRED CLAIMS**

On January 11, 2012, Defendants the County of Maui ("the County"), Benjamin M. Acob, in his individual capacity ("Defendant Acob"), and Timothy T. Tate, in his individual capacity ("Defendant Tate", all collectively, "Defendants") filed their Motion for Partial Summary Judgment on the Issue of Qualified Immunity for Individual Defendants ("Immunity Motion") and, on January 13, 2012, Defendants filed their Motion for Summary Judgment on Time-Barred Claims ("Time-Bar Motion"). [Dkt. nos. 74, 78.] Plaintiff Marie J. Kosegarten ("Plaintiff") filed her memorandum in opposition to the Immunity Motion ("Immunity Opposition") and her memorandum in opposition to the Time-Bar Motion ("Time-Bar Opposition") on April 9, 2012, and her supplemental memorandum in opposition to the Immunity Motion ("Supplemental Immunity Opposition") on July 18, 2012.  [Dkt.

nos. 119, 117, 149.]  Defendants filed their reply regarding the
Immunity Motion ("Immunity Reply") on July 25, 2012, and their
reply regarding their Time-Bar Motion ("Time-Bar Reply") on
April 16, 2012.  [Dkt. nos. 154, 126.]

These matters came on for hearing on August 8, 2012.
Appearing on behalf of Defendants were Cheryl Tipton, Esq., and
Thomas Kolbe, Esq., and appearing on behalf of Plaintiff were
Michael Green, Esq., Richard Gronna, Esq., and Denise Hevicon,
Esq.  After careful consideration of the motions, supporting and
opposing memoranda, and the arguments of counsel, Defendants'
Immunity Motion is HEREBY DENIED and Defendants' Time-Bar Motion
is HEREBY GRANTED IN PART AND DENIED IN PART for the reasons set
forth below.

## BACKGROUND

Plaintiff filed the instant employment discrimination
and retaliation action on June 4, 2010.  Plaintiff filed her
Second Amended Complaint on December 21, 2011.  [Dkt. no. 62.]
At all relevant times, Defendant Acob was the County's Chief
Prosecuting Attorney, and Defendant Tate was a County deputy
prosecuting attorney ("DPA").  [Second Amended Complaint at ¶¶ 7-
8.]  Plaintiff was also employed by the County as a DPA until her
termination.  [Id. at ¶¶ 14, 88.]

The core factual allegations that Plaintiff bases the
Second Amended Complaint upon are the same as the factual

2

allegations in the First Amended Complaint, which are summarized in this Court's November 29, 2011 Order Granting in Part and Denying in Part as Moot Defendants' Motion for Judgment on the Pleadings on Certain Claims, and Granting Plaintiff's Request for Leave to File a Second Amended Complaint ("11/29/11 Order"). [Dkt. no. 58.[1]]  This Court incorporates the 11/29/11 Order's summary of the factual allegations in the First Amended Complaint.

The Second Amended Complaint alleges the following claims: a discrimination/wrongful termination claim under Title VII of the Civil Rights Act of 1964 ("Title VII") against the County ("Count I"); a sexual harassment/hostile work environment claim against the County ("Count II"); a retaliation claim against the County ("Count III"); a discriminatory practices claim against Defendants pursuant to Haw. Rev. Stat. Chapter 378 ("Count IV"); a Whistleblowers' Protection Act claim against the County pursuant to Haw. Rev. Stat. § 378-61, *et seq.* ("Count V"); and a defamation claim against Defendant Tate ("Count VI").

On January 4, 2012, Defendants filed a Motion to Strike and/or to Dismiss Portions of Plaintiff's Second Amended Complaint.  [Dkt. no. 63.]  This Court granted the motion in part, but only insofar as the Court struck the portions of the Second Amended Complaint alleging that Defendant Acob attended an

---

[1] The 11/29/11 Order is also available at 2011 WL 6002870.

August 27, 2008 meeting during which Plaintiff was informed that the County would be investigating her for a management violation. This Court denied the motion in all other respects. [Order Granting in Part & Denying in Part Defs.' Motion to Strike and/or to Dismiss Portions of Pltf.'s Second Amended Complaint, filed 4/5/12 (dkt. no. 115) ("4/5/12 Order").[2]]

I.   **Immunity Motion**

In the Immunity Motion, Defendants first emphasize that the only remaining claim against Defendant Acob is the portion of Count IV alleging that he and Defendant Tate aided and abetted the commission of a discriminatory act prohibited by Chapter 378. Defendants argue that, in order to state an aiding and abetting claim pursuant to Haw. Rev. Stat. § 378-2(3), a plaintiff must identify at least two persons, one who incites, compels, or coerces the discriminatory act, and another who is incited, compelled or coerced to commit the act. [Id. at 9-10.] Defendants emphasize that the County is not considered a person for purposes of this analysis.

Defendants note that, pursuant to § 8-3.3.1 of the Charter of the County of Maui ("County Charter"),[3] the

---

[2] The 4/5/12 Order is also available at 2012 WL 1158742.

[3] The relevant excerpt of the County Charter is attached to Defendants' Concise Statement of Material Facts in Support of the Immunity Motion ("Defendants' Immunity CSOF") as Exhibit A to the Declaration of Cheryl Tipton ("Tipton Immunity Declaration").

prosecuting attorney appoints the DPAs, who serve at the pleasure of the prosecuting attorney.  Thus, Defendants assert that only Defendant Acob had the authority to appoint and retain Plaintiff. [Id. at 10-11.]

In addition, Defendants argue that, under Hawai`i law, Plaintiff must prove by clear and convincing evidence that the official's conduct was motivated by malice and not by a proper purpose.  [Id. at 11.]  Defendants argue that Plaintiff's Second Amended Complaint does not allege malice, and Defendants point out that Defendant Acob consulted with Corporation Counsel before he took some of the actions referenced in the Second Amended Complaint.  Defendants assert that these consultations disprove any allegation of malice and actually establish that Defendant Acob was trying to follow the law.  [Id. (citing Tipton Immunity Decl. at ¶ 8).]  Further, Defendants argue that Plaintiff has not presented any evidence, let alone clear and convincing evidence, that Defendants Acob and Tate acted with malice.  [Id. at 18.]

Defendants argue that Defendant Acob is entitled to qualified immunity because he could not have reasonably anticipated that 1) raising his voice at Plaintiff, 2) authorizing an equal employment opportunity investigation of a discrimination complaint against Plaintiff, or 3) terminating Plaintiff for insubordination constituted discrimination. Defendants also argue that this Court cannot consider the

allegations that Plaintiff raised in the federal claims asserted
in prior versions of the complaint because the Second Amended
Complaint does not assert any federal claims against Defendant
Acob or Defendant Tate.  [Id. at 12-13.]

Defendants also argue that Defendant Tate is entitled
to qualified immunity from the two state law claims remaining
against him.  Similar to the arguments that Defendants raise as
to Defendant Acob, Defendants argue that Defendant Tate is
entitled to qualified immunity as to Plaintiff's aiding and
abetting claim because Plaintiff does not allege that Defendant
Tate aided and abetted Defendant Acob and because Plaintiff does
not allege that Defendant Tate acted with malice.  [Id. at 14.]
Specifically as to Defendant Tate's narcotics class that
Plaintiff alleges she was required to take, Plaintiff has
admitted that Defendant Tate did not engage in any
discriminatory, harassing, or hostile behavior during the class.
[Id. at 14 n.5 (citing Tipton Immunity Decl., Exh. C).[4]]

Defendants also argue that Plaintiff has not alleged
malice to support her defamation claim against Defendant Tate.
First, Defendants note that the two allegations of defamation

_____

[4] Exhibit C is a one page document that appears to part of a
deposition transcript, but Exhibit C does not include either the
cover page of the transcript or the court reporter's
certification.  This presentation appears to be common in
Defendants' exhibits.  The Court, however, notes that Plaintiff
has not challenged the authenticity of Defendants' deposition
transcript exhibits.

that allegedly occurred prior to June 4, 2008 are barred by the two-year statute of limitations.[5]  Further, Defendant Tate's report to Defendant Acob in August 2008 that Plaintiff may be discriminating against Jacki Jura and Yukari Murakami cannot be defamation because DPA Tracy Jones signed a statement that Plaintiff referred to Jura and Murakami as idiots and morons. Defendants argue that Defendant Tate reported the incident to Defendant Acob in connection with the Equal Employment Opportunity Commission ("EEOC") complaints that Ms. Jura and Ms. Murakami filed.  [Id. at 15-17; Defs.' Immunity CSOF at ¶ 15; Tipton Immunity Decl., Exh. G.[6]]  Defendants argue that Defendant Tate cannot be held liable for defamation because he was acting reasonably in the discharge of his public duties and because the statements were about a matter that he and the recipient had a reasonable interest or duty in.  Defendants emphasize that Defendant Tate's statements were not made public, and the statements that Plaintiff made about Ms. Jura and Ms. Murakami were subject to an investigation.[7]  Further, Defendants argue

_____

[5] In the Time-Bar Motion, Defendants seek dismissal of the portion of Count VI (defamation) based on these statements.

[6] Exhibit G is dated August 21, 2008.  It is apparently Wayne Steel's transcription of statements that Tracy Jones made to him.  Ms. Jones signed the document, stating that it was an accurate accounts of the statements she made to him.  There is no declaration authenticating this exhibit.

[7] In a memorandum to Plaintiff dated September 17, 2008,
                                                    (continued...)

7

that the issue whether the communication was privileged is an issue of law appropriate for summary judgment. [Mem. in Supp. of Immunity Motion at 17-18.]

A.   **Plaintiff's Memorandum in Opposition**

In Plaintiff's Immunity Opposition, Plaintiff notes that, since the filing of the Immunity Motion, this Court has already resolved some of the issues Defendants raised in that motion. Thus, the only remaining issue is whether Defendants Acob and Tate are entitled to qualified immunity on the Haw. Rev. Stat. § 378-2(3) aiding and abetting claim and whether Defendant Tate is entitled to qualified immunity on the defamation claim. Plaintiff argues that summary judgment on the issue of qualified immunity is not appropriate at this time. She asserts that she cannot fairly oppose the Immunity Motion because she has not had the opportunity to conduct discovery about Defendants Acob and Tate. [Immunity Opp. at 1.]

The majority of the arguments in the Immunity Opposition address discovery related to the qualified immunity issue. These arguments are moot insofar as this Court continued the original April 2012 date for the hearing on the Immunity Motion after the magistrate judge's discovery ruling and

---

[7](...continued)
Defendant Acob stated that the information gathered during the investigation did not establish that Plaintiff violated the County's anti-discrimination policy. [Tipton Immunity Decl., Exh. I.]

Plaintiff filed a supplemental opposition to the Immunity Motion incorporating discovery conducted pursuant to the magistrate judge's ruling.

Plaintiff also argues that she was not required to plead malice in the Second Amended Complaint to prevent a summary judgment ruling on qualified immunity.  She argues that such a requirement is unreasonable and is inconsistent with Hawai`i state law because, at the time a plaintiff files a complaint, she does not know whether the defendant is going to assert a qualified immunity defense.  [Id. at 12-13.]

    **B.**   **Plaintiff's Supplemental Opposition**

In her Supplemental Immunity Opposition, Plaintiff emphasizes that Hawai`i case law requires courts to utilize a reasonable person standard in determining whether malice exists to extinguish a claim of qualified privilege.  Further, whether malice exists is generally a question of fact for the jury.  [Suppl. Immunity Opp. at 4.]  At her deposition, Plaintiff testified that, in September 2007, Defendant Tate told her: "'You've got to start doing more for Jacki.  You have got to promote Jacki.  You need to do favors for her.'"  [Pltf.'s Suppl. Concise Statement of Material Facts in Opp. to Immunity Motion ("Pltf.'s Suppl. Immunity CSOF"), filed 7/18/12 (dkt. no. 150), Decl. of Counsel, Exh. 2 (Excerpts of 6/22/11 Pltf. Depo. Trans.) ("Pltf. Depo.") at 59.]  Plaintiff responded that his request was

improper and that he should not ask such things.  [Id. at 60.]

Plaintiff testified that Defendant Tate later made an almost

identical request about Ms. Murakami.  [Id. at 76.]  At his

deposition, Defendant Tate denied having a romantic relationship

with Ms. Jura, but he admitted to having a social relationship

with her and to going to her home five or six times.  Defendant

Tate also testified that Ms. Murakami became his girlfriend in

September 2007.  [Pltf.'s Suppl. Immunity CSOF, Decl. of Counsel,

Exh. 7 (Excerpts of 7/2/12 Def. Tate Depo. Trans.) ("Tate Depo.")

at 24-25, 28, 38.]  Plaintiff testified that she did not think it

was appropriate for Defendant Tate to ask her to do favors for

new DPAs with whom he had personal relationships, and she

reported his requests to the department's managers.  [Pltf.'s

Depo. at 77-78.]

        Defendant Acob acknowledged that Plaintiff reported to

him that Defendant Tate came to her and wanted her to promote his

girlfriends.  Plaintiff also told Defendant Acob that Defendant

Tate's girlfriends were incompetent, which Defendant understood

to refer to their abilities in the courtroom.  [Pltf.'s Suppl.

Immunity CSOF, Decl. of Counsel, Exh. 6 (Excerpts of 6/29/12 Def.

Acob Depo. Trans. Vol. II) ("Acob Depo. II") at 77-78.]

Defendant Acob acknowledged that it was improper for Defendant

Tate to ask the supervisor of a DPA whom he was dating to promote

the DPA.  Defendant Acob orally reprimanded Defendant Tate for

doing so.  In other words, he told Defendant Tate: "'Don't do it again'".  [Id. at 83.]

According to Defendant Tate, his supervisor noticed that Plaintiff and Defendant Tate had stopped socializing, so Defendant Tate "gave him some background on what had happened." [Tate Depo. at 66.]  Defendant Tate had concerns that Plaintiff was trying to have Ms. Murakami fired, and he reported these concerns to his supervisor.  He also testified that, in mid-October 2007, Ms. Jura told him that she had heard he was dating someone in the office, and she warned him that, if he was dating someone in the office, Plaintiff would have that person fired. According to Defendant Tate, Ms. Jura said this because, about six weeks prior, Plaintiff had tried to get Ms. Jura fired because Plaintiff believed Defendant Tate was spending time with Ms. Jura and helping her.  Defendant Tate believed that Plaintiff was jealous of him and the women he was dating.  [Id. at 66-68.] Defendant Tate testified that he did not believe Plaintiff thought that he and Plaintiff "could be together in that way, because she knew [he] didn't like her that way."  [Id. at 68.] Plaintiff alleges that the department, with Defendant Acob's approval, launched an investigation into Defendant Tate's allegations that Plaintiff discriminated against Ms. Jura and Ms. Murakami.  Plaintiff emphasizes that, although Defendant Acob acknowledged that Defendant Tate's actions were improper,

Defendant Tate essentially received no disciplinary action.
[Suppl. Immunity Opp. at 7.]

Plaintiff argues that Defendant Acob terminated
Plaintiff because she authorized Cynthia Sims to take Fridays off
to attend medical appointments and because of the 2007
occurrences involving Defendant Tate, Ms. Jura, and Ms. Murakami.
[Id.]  According to Defendant Acob, he terminated Plaintiff for
insubordination because Plaintiff failed to discipline Ms. Sims
for Ms. Sims's routine Friday absences.  In his termination
letter to Plaintiff, Defendant Acob stated that Plaintiff
unilaterally reversed the corrective action he placed on
Ms. Sims.  During his deposition, however, Defendant Tate
admitted that he never sanctioned Ms. Sims, but merely told her
to improve her work attendance.  Thus, Plaintiff argues that the
stated reason for Plaintiff's termination was a pretext.  [Id. at
7-9.]

Plaintiff also points out that, at Defendant Acob's
direction, she investigated Ms. Sims's May 15, 2009 absence from
work.  Plaintiff determined that Ms. Sims was absent that day for
a justifiable, medical reason.  As to Ms. Sims's regular Friday
absences, Plaintiff found that, except for May 15, 2009, Ms. Sims
always submitted a note from her doctor on Oahu for her
anticipated absences.  Further, Ms. Sims was not scheduled for
court on Fridays, and Friday appointments allowed her to save

time and money because Ms. Sims resided on Oahu and flew back every weekend.  Plaintiff followed Defendant Acob's decision that Ms. Sims's May 15, 2009 absence was leave without pay and docked Ms. Sims's pay accordingly.  Thus, Plaintiff did what Defendant Acob directed her to do, even though Plaintiff believed that his decision violated the department policy that a doctor's note was only required for absences of four days or more.  [Id. at 9-10 (citing Acob Depo. II at 113-17; Pltf. Depo. at 161-66).] Plaintiff argues that, insofar as she was not insubordinate in the Sims matter, Defendant Acob's termination of Plaintiff must have stemmed from the 2007 incidents and Defendant Tate's allegations against her.  Plaintiff argues that she has raised a genuine issue of fact as to whether Defendant Acob's conduct establishes malice.  [Id. at 11.]

In addition, Defendant Acob admitted during his deposition that he was aware that the County's anti-discrimination policy requires that supervisors take immediate action to separate employees when there is a complaint of discrimination.  Defendant Acob, however, took no steps to separate Plaintiff and Defendant Tate after Plaintiff filed a discrimination complaint against Defendant Tate; Defendant Acob merely told her to "get over it".  [Acob Depo. II at 34, 42-43, 53-54.]  Defendant Acob still forced Plaintiff to attend a training session taught by Defendant Tate in March 2009.  [Pltf.

13

Depo. at 124-26.]   Plaintiff argues that there is a genuine issue of fact as to whether Defendant Acob acted without a proper purpose, and Plaintiff urges the Court to find that he is not entitled to qualified immunity.   [Suppl. Immunity Opp. at 11-12.]

Plaintiff also argues that Defendant Tate is not entitled to qualified immunity.   First, it is undisputed that Defendant Tate referred to Plaintiff as a "butch".   Plaintiff argues that Defendant Tate was aware that Plaintiff was not a lesbian.   In fact, Defendant Tate believed that Plaintiff was interested in him romantically.   Although Defendant Tate tried to claim that the comment was a joke, Plaintiff was offended and did not consider it a joke.   [Id. at 13 (citing Tate Depo. at 17-19, 23, 25, 27-28, 32-33; Pltf. Depo. at 67-69).]

Plaintiff also argues that, during his deposition, Defendant Tate admitted that he had asked Plaintiff for favors for Ms. Jura.   Defendant Acob admitted this was inappropriate. [Id. (citing Tate Depo. at 35; Acob Depo. II at 83).]   Plaintiff also points out that Defendant Tate independently accessed the EEOC investigation report about his complaint because the report was on a shared office computer drive.   The report, which was later officially delivered to Defendant Tate, stated, *inter alia*, that Defendant Tate should be cautioned about romantic relationships in the office and that he should be aware of the seriousness of the allegations he raised, particularly when he

14

had no personal knowledge about the subject of the allegations.
Plaintiff therefore argues that Defendant Tate's actions had no
legitimate purpose and went outside lawful boundaries.  [Id. at
14-15 (citing Tate Depo. at 36-38, 72).]

Plaintiff urges the Court to deny the Immunity Motion.

C.   **Defendants' Reply**

In the Immunity Reply, Defendants argue that the
actions Plaintiff identified in her oppositions do not show
either that Defendants Acob and Tate acted with malice or that
they lacked an otherwise proper purpose.  [Immunity Reply at 2-
3.]  Defendants emphasize that the reasonable person test for
qualified immunity only applies to defamation claims; in all
other cases an actual malice test applies.  [Id. at 5.]
Defendants argue that Plaintiff has not identified any evidence
that Defendants Acob and Tate acted together with malice or
improper purpose.  Defendants also argue that the deposition
pages Plaintiff cites for the proposition that Defendant Acob
terminated her for the events in 2007 do not support that
position.  In fact, Defendant Acob testified that Plaintiff's
termination had nothing to do with the 2007 events.  Defendant
Acob also testified that Plaintiff was not a good supervisor, in
part because of the Sims matter.  Although Plaintiff informed
Ms. Sims about all of the issues Defendant Acob identified,
Plaintiff also told Ms. Sims in writing that Plaintiff did not

15

feel management should restrict leave to certain days of the week for certain employees.  Defendants argue that this undermined Defendant Acob's instructions and constituted insubordination, justifying Plaintiff's termination.  [Id. at 6-7 (some citations omitted) (citing Acob Depo. II at 74, 131-32, 155; Report of Conference of Plaintiff counseling Sims; Letter of termination dated June 23, 2009).[8]]  Defendants point out that, on August 27, 2009, Ms. Sims was terminated for failing to do her work and for insubordination.  [Defs.' Suppl. Exhibits to Immunity Reply, filed 7/30/12 (dkt. no. 159), Decl. of Benjamin M. Acob, Exh. K (letter dated 8/27/09 to Ms. Sims from Defendant Acob terminating her employment).]  As to Plaintiff's allegation that Defendant Acob failed to separate Plaintiff from Defendant Tate, Defendants argue that separation was not necessary because they worked in different parts of the building.  Further, Plaintiff was on sick leave for knee surgery from November 28, 2007 to December 31, 2007.  [Immunity Reply at 9 (citing Defs.' Suppl. Exhibits to Immunity Reply, Decl. of Cheryl Tipton ("Suppl. Tipton Immunity Decl.") at ¶ 4, Exh. M[9] at 43).]  The

---

[8] The Report of Conference and the Letter of termination were exhibits to Defendants' Concise Statement of Material Facts in Support of Their Motion for Summary Judgment, filed September 26, 2011 ("Defs.' 9/26/11 CSOF").  [Dkt. no. 48.]  The Report of Conference was Exhibit U, and the Letter of termination was Exhibit W.  [Dkt. nos. 48-42, 48-44.]

[9] Exhibit M is a six-page excerpt of the transcript of
(continued...)

department completed its internal investigation in December 2007 and found that neither Defendant Tate's allegations about Plaintiff nor Plaintiff's allegations about Defendant Tate rose to the level of a violation of the County's anti-discrimination policy.  Defendants argue that, once the investigation was complete, there was no obligation to separate Plaintiff and Defendant Tate.  [Id. (some citations omitted) (citing Tipton Time-Bar Decl., Exh. B-1 at 3).]  Defendant Tate's training class, which Plaintiff claims she was forced to attend, did not occur until approximately sixteen months after the investigation was complete.  Defendant Acob testified that he did not specifically order Plaintiff to attend the training.  He merely advised her that she should attend because there could be information at the training that was not included in the written materials.  [Id. at 9-10 (citing Suppl. Tipton Immunity Decl. at ¶ 3, Exh. L[10] at 50).]

As to Defendant Tate, Defendants argue that Plaintiff has not established malice because Defendant Tate had reasonable concerns that Plaintiff might discriminate against Ms. Murakami because Plaintiff was jealous.  Defendants point out that Robert Rivera and Melinda Mendes also testified at their

---

[9](...continued)
Defendant Acob's June 29, 2012 deposition.

[10] Exhibit L is a one-page excerpt of the transcript of Defendant Acob's January 20, 2012 deposition.

depositions that they suspected that Plaintiff was jealous.[11]
Defendants reiterate that Defendant Tate's report that Plaintiff
discriminated against Ms. Jura and Ms. Murakami by calling them
idiots and morons was not improper.  They emphasize that both
Ms. Jura and Ms. Murakami filed EEOC charges, and Ms. Jura has a
pending action in this district court.  [Id. at 11-12.]

        Defendant Tate denies asking Plaintiff to do favors for
either Ms. Jura or Ms. Murakami but, for purposes of the Immunity
Motion, Defendants argue that, assuming that Defendant Tate did
so, his actions were not malicious.  Defendant Tate was not
Plaintiff's supervisor and he had no authority over her.  Thus,
he could not force her to take any actions in favor of Ms. Jura
or Ms. Murakami.  Defendants argue that, even if he did ask
Plaintiff for favors, this is not clear and convincing evidence
of malice.  [Id. at 12.]  As to his comment that Plaintiff was a
"butch", Defendants state that Defendant Tate only said this to
Ms. Jura to dissuade Ms. Jura from trying to arrange a date
between Ms. Jura's roommate and Plaintiff.  This was a one-time
occurrence in June 2007.  It did not seem to affect Plaintiff's

---

        [11] The Court notes that Defendants rely on a transcript of
the deposition of Robert Rivera and a declaration by Melinda
Mendes that Defendants submitted with Defendants' Concise
Statement of Facts in Support of Their Motion for Summary
Judgment on Aiding and Abetting Claims ("Aiding and Abetting
Motion"), filed July 6, 2012.  [Dkt. no. 143.]  In reviewing the
Immunity Motion and the Time-Bar Motion, the Court will not
consider the exhibits that Defendants filed in support of the
Aiding and Abetting Motion.

relationship with Defendant Tate at the time, and Defendant Tate
later explained to Ms. Jura that it was not true.  Defendants
argue that Plaintiff never complained about the comment until
Defendant Tate raised his concerns about Plaintiff.  [Id. at 12-
13 (citing Tate Depo. at 25-29, 58, 60).]  Defendant Tate admits
that he accessed a report about judges' comments regarding how
the district court DPAs, including Ms. Jura and Ms. Murakami,
handled themselves in court.  Defendants, however, argue that
there is no evidence Defendant Tate used the report for an
improper purpose, and the mere fact that he accessed the report
is not clear and convincing evidence of malice.  [Id. at 13.]

As to the defamation claim, Defendants point out that,
in her memorandum in opposition to the Time-Bar Motion, Plaintiff
acknowledged that the portions of the claim based on Defendant
Tate's report to Defendant Acob that Plaintiff may be
discriminating against Ms. Jura and Ms. Murakami and Defendant
Tate's reference to Plaintiff as a lesbian and a butch are time-
barred because Plaintiff did not bring the claims within two
years after Defendant Tate made the statements.  [Id. at 13-14.]
Defendants reiterate the argument from the Immunity Motion that
Defendant Tate's report to Defendant Acob that Plaintiff called
Ms. Jura and Ms. Murakami idiots and morons had a proper purpose.
[Id. at 14-15.]

Defendants argue that the Court must dismiss

Plaintiff's claims against Defendants Acob and Tate because Plaintiff did not allege malice in the Second Amended Complaint. Defendants emphasize that Plaintiff had notice from their answer to the First Amended Complaint that Defendants Acob and Tate were asserting a qualified immunity defense. They also argue that the Court should not allow Plaintiff to further amend her complaint because she has already had a chance to amend her state law claims against Defendants Acob and Tate. [Id. at 4.]

Defendants therefore urge the Court to grant the Immunity Motion.

## II. **Time-Bar Motion**

In the Time-Bar Motion, Defendants argue that the portions of Plaintiff's Title VII and Haw. Rev. Stat. Chapter 378 claims which are based on acts that occurred before December 20, 2007 are time-barred. Plaintiff filed three complaints with the EEOC, one dated October 15, 2008, one dated June 8, 2009, and one dated July 9, 2009. [Mem. in Supp. of Time-Bar Motion at 4-5.] The October 15, 2008 charge alleges acts of discrimination occurring as early as September 1, 2007. [Defs.' Concise Statement of Material Facts in Supp. of Time-Bar Motion, filed 1/13/12 (dkt. no. 79) ("Defs.' Time-Bar CSOF"), Decl. of Cheryl Tipton ("Tipton Time-Bar Decl."), Exh. B-1.] Thus, only acts occurring 300 days before October 15, 2008, *i.e.*, December 20, 2007 or later, are timely. The Second Amended

Complaint alleges the following acts occurring before December 20, 2007: Plaintiff's reassignment in early 2007; Defendant Tate's request in September 2007 that Plaintiff promote Ms. Jura; Defendant Tate's referring to Plaintiff in September 2007 as a "lesbian" and a "butch"; Defendant Tate's request on October 29, 2007 that Plaintiff promote Ms. Murakami; and Defendant's internal complaint that Plaintiff was discriminating against Ms. Jura and Ms. Murakami because she was jealous of them.  Defendants argue that all of Plaintiff's employment discrimination claims based on these allegations are time-barred. [Mem. in Supp. of Time-Bar Motion at 5-11.]

Defendants also argue that Plaintiff's claims for violation of the Hawaii Whistleblowers' Protection Act are barred unless the violation within two years before Plaintiff filed her complaint on June 4, 2010.  Plaintiff's whistleblower claims based on the five acts identified *supra* are therefore time-barred.  [Id. at 11.]  Defendants also argue that a two-year statute of limitations applies to Plaintiff's defamation claim against Defendant Tate.  Plaintiff's defamation claim is therefore time-barred to the extent that it is based upon Defendant Tate's report to Defendant Acob on October 30, 2007 that Plaintiff might be discriminating against Ms. Jura and Ms. Murakami or Defendant Tate's September 2007 references to Plaintiff as a "lesbian" and a "butch".  [Id. at 12.]

21

Defendants therefore urge the Court to grant summary judgment in favor of Defendants as to the time-barred claims identified in this motion.

A.   **Plaintiff's Memorandum in Opposition**

In the Time-Bar Opposition, Plaintiff acknowledges that the Court should grant the Time-Bar Motion as to the portion of the defamation claim based on statements that occurred prior to June 4, 2008,[12] but Plaintiff emphasizes that the facts themselves are not subject to any statute of limitations. [Time-Bar Opp. at 4.]

Plaintiff notes that her EEOC charge dated October 15, 2008 refers to acts of discrimination occurring from September 1, 2007 to September 29, 2008, and the charge states that the discrimination was a continuing action. Plaintiff emphasizes that courts must construe EEOC charges liberally. Further, under the doctrine of continuing violations, the Court can consider discriminatory events beyond the limitations period if they were part of a series of related acts against the plaintiff and some of the acts extended into the limitations period. [Id. at 6-7.] Plaintiff argues that her three EEOC charges "contain the

---

[12] The two allegedly defamatory statements which Plaintiff concedes are time-barred are: Defendant Tate's report on October 30, 2007 that Plaintiff may have been discriminating against Ms. Jura and Ms. Murakami; and Defendant Tate's referring to Plaintiff as a lesbian, which occurred in September 2007. [Time-Bar Opp. at 11-12.]

complete chronology of facts and allegations which commenced in 2007 and culminated in Plaintiff's wrongful termination on June 23, 2009." [Id. at 7-8.]  She argues that the acts were related and subject to the EEOC investigation.  [Id. at 8.]

Plaintiff agrees with Defendants that one comment alone does not create a hostile work environment.  Plaintiff, however, argues that the comment can still be evidence of malice as well as evidence of the disparate manner in which Defendant Acob treated Plaintiff and Defendant Tate when each of them made discrimination claims.  Plaintiff clarifies that she does not assert Defendant Tate's requests that she promote Ms. Jura and Ms. Murakami were, in and of themselves, discrimination against Plaintiff.  The discrimination against Plaintiff occurred after she refused to promote them and she reported Defendant Tate's improper requests to the managers.  Plaintiff alleges that Defendants Acob and Tate retaliated against her for making the complaint.  Thus, Defendant Tate's promotion requests are merely background facts and are not time-barred in that context.  [Id. 8-9.]  Similarly, Plaintiff argues that the ultimate retaliation that is the basis of her whistleblower's claim is her termination, which occurred within the statute of limitations period.  [Id. at 9-11.]

Plaintiff therefore urges the Court to grant the Time-Bar Motion as to only the two pre-June 4, 2008 defamatory

statements and to deny the Time-Bar Motion in all other respects.
[Id. at 12.]

### B.  **Defendants' Reply**

In the Time-Bar Reply, Defendants emphasize that they do not seek summary judgment on Plaintiff's claims based on her termination. [Time-Bar Reply at 2.]

Defendants argue that the continuing violation doctrine does not apply. Plaintiff's timely allegations of discrimination are unrelated to the other acts that occurred beyond the limitations period.[13] They do not involve the same types of employment actions, and the allegedly discriminatory actions occurred relatively infrequently. [Id. at 8.] Defendants acknowledge that the time period for filing a discrimination charge is subject to equitable doctrines, like tolling or estoppel, but courts only apply these doctrines sparingly. Defendants argue that equitable doctrines are inapplicable to this case. Plaintiff knew about Defendant Tate's lesbian comment in September 2007, and she had ample opportunities to make a timely report about it if she found it offensive. Further, Plaintiff was aware that the County's anti-discrimination policy

---

[13] Defendants argue that the following alleged events occurred within the limitations period: Plaintiff not being selected for Manager of the Year in 2008; Plaintiff being questioned about referring to Ms. Jura and Ms. Murakami as idiots and morons; being forced to attend a mandatory training class taught by Defendant Tate; and being called into meetings with Defendant Acob. [Time-Bar Reply at 9.]

states that any employee who feels she has been harassed or discriminated against should make a complaint to her supervisor immediately.  The County's anti-discrimination policy also includes information about the time periods in which a claimant must file a Hawai`i Civil Rights Commission ("HCRC") or EEOC claim.  Defendants argue that Plaintiff ignored these deadlines. [Id. at 10-12 (citing County Policy Against Discrimination[14] at 5, 8).]

Finally, Defendants state that there is no Hawai`i case law directly on point as to the statute of limitations for § 378-2 claims.  Defendants argue that, because the Hawai`i Supreme Court generally looks to analogous federal laws for guidance, this Court should also rule that the portions of Plaintiff's § 378-2 claim based on the pre-June 2008 events are also untimely.  [Id. at 12.]

Defendants therefore urge the Court to grant the Time-Bar Motion.

## DISCUSSION

### I.   Time-Bar Motion

The Court first turns to Defendants' Time-Bar Motion because Defendants argue that the Court cannot consider the facts supporting the time-barred claims in reviewing Plaintiff's timely

---

[14] The County Policy Against Discrimination was Exhibit K with Defendants' 9/26/11 CSOF.  [Dkt. no. 48-29.]

claims.

A.  **Defamation**

Count VI's defamation claim against Defendant Tate is subject to a two-year statute of limitations.  See <u>Bauernfiend v. AOAO Kihei Beach Condos.</u>, 99 Hawai`i 281, 282 n.4, 54 P.3d 452, 453 n.4 (2002) ("Defamation actions are governed by HRS § 657-4 (1993), which provides that "'[a]ll actions for libel or slander shall be commenced within two years after the cause of action accrued, and not after.'" (alteration in <u>Bauernfiend</u>)). Plaintiff filed the instant action on June 4, 2010.

The Second Amended Complaint alleges that Defendant Tate made various statements "in an effort to aid and abet Defendant Acob and Defendant County to create . . . more disparaging and negative marks in her personnel file such that Plaintiff's employment would be placed in a position where she could be terminated." [Second Amended Complaint at ¶ 51.]  The Second Amended Complaint alleges that Defendant Tate made the following statements:

•Shortly after Defendant Tate's September 2007 request that Plaintiff promote Ms. Jura, "Plaintiff learned that Defendant Tate began to refer to the Plaintiff as a 'lesbian' and 'butch' to other members of Defendant County's staff, including Ms. Jura, and/or made other inappropriate comments about Plaintiff." [<u>Id.</u> at ¶ 26.]
•On or about October 30, 2007, Defendant Tate made a complaint against Plaintiff alleging that she had discriminated against Ms. Jura and Ms. Murakami and suggesting that Plaintiff was discriminating against all women in the office with whom Defendant Tate had a relationship. [<u>Id.</u> at ¶ 32.]
•On or about August 21, 2008, Defendant Tate made complaints to

26

Defendant Acob alleging that Plaintiff "referenced [sic] to Ms. Jura and Ms. Murakami as 'idiots' and 'morons' to another deputy attorney" and Plaintiff "stated to another employee that she 'hated' another deputy, Robert Rivera, and she was in fact responsible for his demotion." [Id. at ¶ 47.]

• Sometime after August 27, 2008, Defendant Tate "made statements to other office personnel and spread rumors amongst the office that Plaintiff had earlier referred to Ms. Jura and Ms. Murakami . . . as 'idiots' and 'morons'." [Id. at ¶ 44.]

In the Time-Bar Motion, Defendants seek summary judgment on the portions of Count VI based on Defendant Tate's October 30, 2007 report and Defendant Tate's alleged September 2007 statements regarding Plaintiff's sexual orientation. [Mem. in Supp. of Time-Bar Motion at 12.] Plaintiff concedes that this Court should grant the Time-Bar Motion as to those portions of Count VI because those incidents occurred more than two years prior to the filing of the Complaint. [Time-Bar Opp. at 11-12.] This Court agrees and GRANTS Defendants' Time-Bar Motion as to the portions of Count VI based on Defendant Tate's October 30, 2007 report and Defendant Tate's alleged September 2007 statements regarding Plaintiff's sexual orientation.

B.  **Title VII**

Count I expressly asserts Title VII violations against the County. Plaintiff asserts that she "was demoted, received negative and unfair treatment, threatened with disciplinary action, discriminated against, and ultimately terminated by Defendant County because of and on the basis of her protected

class." [Second Amended Complaint at ¶ 113.] Count II (sexual

harassment/hostile work environment) and Count III (retaliation)

do not expressly state whether they are state law claims or Title

VII claims. The Court notes that Count III alleges the County

retaliated against Plaintiff for "engag[ing] in a protected

activity by filing Departmental and EEOC/HCRC complaints and

reports about discriminatory and/or harassing activities." [Id.

at ¶ 126.]

Title VII requires a claimant to exhaust her

administrative remedies prior to filing a civil action against

the employer that allegedly discriminated against her. 42 U.S.C.

§ 2000e-5. "Title VII . . . require[s] that an aggrieved party

file a charge with the EEOC within 300 days of the allegedly

unlawful practice to preserve a claim for a subsequent civil

suit." Kagawa v. First Hawaiian Bank/Bancwest Corp., 819 F.

Supp. 2d 1125, 1130 (D. Hawai`i 2011) (some citations omitted)

(citing 42 U.S.C. § 2000e-5(e)(1)).

Defendants urge the Court to grant summary judgment in

their favor as to the portions of Plaintiff's Title VII claims

based on acts that occurred more than 300 days prior to the first

charge that Plaintiff filed with the EEOC. [Mem. in Supp. of

Time-Bar Motion at 6-11.] In October 2008, Plaintiff filed a

Charge of Discrimination with the EEOC. The EEOC received it on

October 17, 2008 ("October 2008 Charge"). [Tipton Time-Bar

Decl., Exh. B-1 at 1.]

The Second Amended Complaint alleges:

- In early 2007, Defendant Acob reassigned Plaintiff from her position as a line deputy to District Court Supervisor. [Second Amended Complaint at ¶ 22.]
- In September 2007, Defendant Tate allegedly asked Plaintiff to promote Ms. Jura. [Id. at ¶¶ 23-25.]
- In September 2007, Defendant Tate allegedly began to refer to Plaintiff as a "lesbian" and a "butch" to office staff. [Id. at ¶ 26.]
- On October 29, 2007, Defendant Tate allegedly asked Plaintiff to promote Ms. Murakami. [Id. at ¶ 28.]
- On October 30, 2007, Defendant Tate made a complaint to Defendant Acob alleging that Plaintiff may be discriminating against Ms. Jura and Ms. Murakami. Defendant Acob and the County initiated an internal investigation into the complaint. [Id. at ¶¶ 32-33.]

All of these events occurred more than 300 days prior to the filing of Plaintiff's October 2008 Charge.

Plaintiff, however, has clarified that she does not assert discrimination claims based solely upon on Defendant Tate's requests that she promote Ms. Jura and Ms. Murakami. Those requests, in and of themselves, did not constitute discrimination against Plaintiff. [Time-Bar Opp. at 8.] Based upon Plaintiff's representations, this Court DENIES AS MOOT Defendants' Time-Bar Motion to the extent that Defendants seek summary judgment as to the portion of Plaintiff's Title VII claims based on Defendant Tate's alleged requests that Plaintiff promote Ms. Jura and Ms. Murakami.

As to the reassignment in early 2007, the alleged sexual orientation statements in September 2007, the October 30,

29

2007 complaint alleging that Plaintiff was discriminating against Ms. Jura and Ms. Murakami, and the resulting investigation, these are adverse employment actions or otherwise discriminatory conduct that Plaintiff allegedly suffered.  These incidents clearly occurred more than 300 days before Plaintiff filed the October 2008 Charge.

This Court acknowledges that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982) (footnote omitted).  "Equitable tolling is, however, to be applied only sparingly, and [c]ourts have been generally unforgiving . . . when a late filing is due to claimant's failure to exercise due diligence in preserving his legal rights[.]" Nelmida v. Shelly Eurocars, Inc., 112 F.3d 380, 384 (9th Cir. 1997) (some alterations in Nelmida) (quotation marks and some citations omitted) (citing Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96, 111 S. Ct. 453, 458, 112 L. Ed. 2d 435 (1990)).  Plaintiff's Time-Bar Opposition does not assert that tolling applies in the instant case.  Based on the record before the Court, and viewing the record in the light most favorable to the non-moving party, see Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006) (stating that, on a summary

judgment motion, "the nonmoving party's evidence is to be

believed, and all justifiable inferences are to be drawn in that

party's favor" (citations, quotation marks, and brackets

omitted)), this Court CONCLUDES that equitable tolling does not

apply in the instant case.

Plaintiff argues that the Court should deem these

allegations timely under the continuing violation doctrine.

[Time-Bar Opp. at 6-8 (discussing Green v. Los Angeles County

Superintendent of Schools, 883 F.2d 1472, 1480 (9th Cir. 1989);

Lesane v. Hawaiian Airlines, 75 F. Supp. 2d 1113, 1125-26 (D.

Haw. 1999)).]  The October 2008 Charge states that the earliest

date the discrimination took place was September 1, 2007 and the

latest date was September 29, 2008.  Plaintiff marked the box for

"CONTINUING ACTION".  [Tipton Time-Bar Decl., Exh. B-1 at 1.]

Plaintiff's argument is misplaced because the United States

Supreme Court's decision in National Railroad Passenger Corp. v.

Morgan, 536 U.S. 101 (2002), overruled prior Ninth Circuit case

law regarding continuing violations of Title VII.

> In Morgan, the Supreme Court held that
> "discrete discriminatory acts are not actionable
> if time barred, even when they are related to acts
> alleged in timely filed charges," 122 S. Ct. at
> 2072, while "a hostile work environment claim
> . . . will not be time barred so long as all acts
> which constitute the claim are part of the same
> unlawful employment practice and at least one act
> falls within the time period," id. at 2077. . . .
>
> The Supreme Court's decision in Morgan
> invalidated our previous application of the

31

continuing violation doctrine to discrete acts of
discrimination and retaliation.  Our ruling in the
case had reversed summary judgment on the ground
that Morgan had raised a genuine issue of fact as
to whether a serial violation existed, linking the
employer's pre- and post-limitations conduct.
Morgan [v. Nat'l R.R. Passenger Corp.], 232 F.3d
[1008,] 1017-18 [(9th Cir. 2000)].  We did not
consider whether the employer had engaged in a
systematic policy or practice of discrimination,
and, as a consequence, the Supreme Court's
decision did not directly overrule our
construction of the latter theory.  However, it
did not specifically endorse that theory either.
See, e.g., Morgan, 122 S. Ct. at 2069, 2072-73
(mentioning the "systematic" theory of continuing
violation but making no ruling as to its
viability).  Instead, the Court elaborated a set
of general principles regarding how courts ought
to apply the Title VII filing deadlines.

Pointing to the mandatory language of the
statute, the Court reasoned that "strict adherence
to the procedural requirements specified by the
legislature is the best guarantee of evenhanded
administration of the law."  Id. at 2070 (internal
quotation marks and citation omitted).  Dismissing
the respondent's argument that Title VII's
protection against unlawful employment "practices"
provided a statutory basis for our continuing
violation doctrine, the Court clarified that it
"interpret[s] the term 'practice' to apply to a
discrete act or single 'occurrence,' even when it
has a connection to other acts."  Id. at 2071.
The Court emphasized that "[d]iscrete acts such as
termination, failure to promote, denial of
transfer, or refusal to hire are easy to
identify," id. at 2073, and thereby concluded that
"[e]ach incident of discrimination . . .
constitutes a separate actionable 'unlawful
employment practice,'" id. (emphasis added).  We
must conclude from the Court's statements that
when, as in the present case, a plaintiff pursues
several disparate treatment claims, based on
discrete discriminatory acts, the limitations
period will begin to run for each individual claim
from the date on which the underlying act occurs.
If a plaintiff chooses to bring separate claims

32

> based on each discriminatory act, his assertion
> that this series of discrete acts flows from a
> company-wide, or systematic, discriminatory
> practice will not succeed in establishing the
> employer's liability for acts occurring outside
> the limitations period because the Supreme Court
> has determined that each incident of
> discrimination constitutes a separate actionable
> unlawful employment practice.

Lyons v. England, 307 F.3d 1092, 1105-07 (9th Cir. 2002)

(footnotes omitted) (some alterations in Lyons).

The Second Amended Complaint's allegations include the following discriminatory acts, which occurred within 300 days prior to the filing of the October 2008 Charge: around August 2008, the failure to name Plaintiff as the Manager of the Year when she was the only person nominated for the award; [Second Amended Complaint at ¶¶ 40-41;] on August 25, 2008, Defendant Acob threatened to discipline and/or terminate Plaintiff because she allegedly failed to address an incident involving a drawing or picture left behind by a former department employee; [id. at ¶ 42;] and Defendant Tate's statements, made sometime after August 27, 2008, to office personnel that Plaintiff called Ms. Jura and Ms. Murakami idiots and morons, his complaints, made on or about August 21, 2008, to Defendant Acob about Plaintiff's alleged statements, and the ensuing investigation [id. at ¶¶ 44, 47-48].

Based on the analysis in Morgan and Lyons, this Court concludes that the three aforementioned acts which occurred

beyond the 300-day period were discrete incidents of discrimination that are distinct from the incidents which occurred during the 300-day period, and that the limitations period began to run for each individual claim on the date that each incident occurred.  This Court therefore CONCLUDES that the portions of Plaintiff's Title VII claims based on Plaintiff's reassignment in early 2007, the alleged sexual orientation statements in September 2007, and the October 30, 2007 complaint and investigation regarding Plaintiff's alleged discrimination against Ms. Jura and Ms. Murakami are time-barred.  The Court GRANTS the Time-Bar Motion and GRANTS summary judgment in favor of Defendants as to those portions of Plaintiff's Title VII claims because there are no genuine disputes of material fact and Defendants are entitled to judgment as a matter of law as to the time-barred Title VII claims.  See Fed. R. Civ. P. 56(a).

      **C.**   **Chapter 378 Claims**

      Although Plaintiff does not expressly state so, Count II and Count III appear to assert violations of Haw. Rev. Stat. § 378-2(a)(1) and (2).  Further, Count IV expressly asserts a discriminatory practices claim pursuant to Chapter 378.  A person aggrieved by one of the unlawful practices identified in, *inter alia*, § 378-2, may file a complaint with the HCRC under the procedures identified in Haw. Rev. Stat. Chapter 368.  Haw. Rev. Stat. § 378-4.  Haw. Rev. Stat. § 368-11(c) states, in pertinent

part:

> (c) No complaint shall be filed after the expiration of one hundred eighty days after the date:
>
> > (1) Upon which the alleged unlawful discriminatory practice occurred; or
> >
> > (2) Of the last occurrence in a pattern of ongoing discriminatory practice.

Plaintiff's October 2008 Charge, as well as her Charges of Discrimination that the EEOC received on June 10, 2009 ("June 2009 Charge") and July 9, 2009 ("July 2009 Charge"),[15] are deemed to have been dual-filed with the HCRC.  See E.E.O.C. v. NCL Am. Inc., 504 F. Supp. 2d 1008, 1010 (D. Hawai`i 2007) (stating that "Hawaii is a 'worksharing' state such that administrative claims with the EEOC are deemed 'dual-filed' with" the HCRC).  Pursuant to § 378-4 and § 368-11(c), Plaintiff timely filed her charges as to the incidents that occurred within 180 days prior to the filing of each respective charge.

The Court notes that the Hawai`i Supreme Court has held that, in interpreting § 378-2, federal case law interpreting Title VII is persuasive, but not controlling.  Arquero v. Hilton Hawaiian Village LLC, 104 Hawai`i 423, 429-30, 91 P.3d 505, 511-12 (2004).  Further, this district court has applied the Morgan continuing violation analysis to both Title VII and

---

[15] The June 2009 Charge and the July 2009 Charge are Exhibits B-2 and B-3, respectively, to the Tipton Time-Bar Declaration.

Chapter 378 claims.  See, e.g., White v. Pac. Media Grp., Inc.,
322 F. Supp. 2d 1101, 1112-13 (D. Hawai`i 2004).  This Court
therefore applies the same estoppel and continuing violation
analysis set forth for Plaintiff's Title VII claims, *supra*
section I.B., to Plaintiff's Chapter 378 claims.  Thus, the Court
also concludes that estoppel is not warranted as to Plaintiff's
Chapter 378 claims, and the Court concludes that the incidents
which form the bases of the Chapter 378 claims do not constitute
a continuing violation.

　　　　For the reasons stated in section I.B., this Court also
DENIES AS MOOT Defendants' Time-Bar Motion to the extent that it
seeks summary judgment as to the portions of Plaintiff's Chapter
378 claims based on Defendant Tate's alleged requests that
Plaintiff promote Ms. Jura and Ms. Murakami.  This Court also
CONCLUDES that the portions of Plaintiff's Chapter 378 claims
based on Plaintiff's reassignment in early 2007, the alleged
sexual orientation statements in September 2007, and the October
30, 2007 complaint and investigation regarding Plaintiff's
alleged discrimination against Ms. Jura and Ms. Murakami are
time-barred.  The Court therefore GRANTS the Time-Bar Motion and
GRANTS summary judgment in favor of Defendants as to those
portions of Plaintiff's Chapter 378 claims.

　　　　The Court notes that more than 180 days elapsed between
the filing of the October 2008 Charge and the filing of the June

2009 Charge.  Plaintiff's Chapter 378 claims based upon incidents that occurred more than 180 days prior to the filing of the June 2009 Charge and after the incidents alleged in the October 2008 Charge would be time-barred.  Plaintiff's Second Amended Complaint, however, does not allege any discriminatory or retaliatory incidents that occurred during that period.  Thus, except for the portions of Plaintiff's Chapter 378 claims identified *supra*, the Court CONCLUDES that the remaining portions of Plaintiff's Chapter 378 claims are timely.

### D.  **Whistleblowers' Protection Act**

The statute of limitations for claims under the Hawai`i Whistleblowers' Protection Act is two years.  Haw. Rev. Stat. § 378-63(a).  Count V alleges that the County "discharged, threatened, or otherwise discriminated against Plaintiff regarding her terms, conditions, and privileges of employment" because she "reported, or was about to report, to Defendant County or a public body, a suspected violation a [sic] state or federal law, rule, ordinance, or regulation."  [Second Amended Complaint at ¶¶ 136-37.]

This Court has identified the following allegations in the Second Amended Complaint that occurred more than two years prior to the filing of Plaintiff's original complaint: Plaintiff's reassignment in early 2007; Defendant Tate's September 2007 request that Plaintiff promote Ms. Jura; Defendant

Tate's September 2007 statements regarding Plaintiff's sexual orientation; Defendant Tate's October 2007 request that Plaintiff promote Ms. Murakami; and Defendant Tate's October 30, 2007 complaint alleging that Plaintiff discriminated against Ms. Jura and Ms. Murakami, which resulted in an internal investigation. [Id. at ¶¶ 22-26, 28, 32-33.]

First, Plaintiff does not allege that Defendant Acob reassigned her in January 2007 because she reported, or was about to report, a violation.  Second, Plaintiff has clarified that she does not allege that Defendant Tate's requests that Plaintiff promote Ms. Jura and Ms. Murakami were acts of discrimination against Plaintiff.  This Court therefore finds that Count V is not based upon these allegations.

Plaintiff alleges that, shortly after Defendant Tate's request that she promote Ms. Jura, which Plaintiff reported to the County and the management team, Defendant Tate began referring to Plaintiff as a "lesbian" and a "butch" to County personnel.  [Id. at ¶¶ 25-26.]  Even assuming, arguendo, that Plaintiff is alleging that Defendant Tate began making those statements because she reported his request that she promote Ms. Jura, and assuming further that Defendant Tate's statements are attributable to the County, Plaintiff failed to file her complaint within two years after the incident.

38

Plaintiff also alleges that, the day after the department's management informed Defendant Tate that Plaintiff had reported his inappropriate requests and comments, Defendant Tate filed his internal complaint alleging that Plaintiff discriminated against Ms. Jura and Ms. Murakami.  An internal investigation followed.  [Id. at ¶¶ 29-30, 32-33.]  Even assuming, *arguendo*, that Plaintiff is alleging that Defendant Tate made the October 30, 2007 report because she reported his improper requests and conduct, and assuming further that Defendant Tate's actions are attributable to the County, Plaintiff failed to file her complaint within two years after this incident.

This Court CONCLUDES that the portions of Plaintiff's Whistleblowers' Protection Act claims based on the alleged sexual orientation statements in September 2007, and the October 30, 2007 complaint and investigation regarding Plaintiff's alleged discrimination against Ms. Jura and Ms. Murakami are time-barred. The Court therefore GRANTS the Time-Bar Motion and GRANTS summary judgment in favor of Defendants as to those portions of Count V. The Court CONCLUDES that the remaining portions of Count V are timely.

**E.    Time-barred Incidents as Background Facts**

Although this Court has granted summary judgment in favor of Defendants as to certain incidents alleged in the Second

39

Amended Complaint, this Court emphasizes that these rulings only

preclude Plaintiff from pursing **claims** based on those incidents.

In other words, Plaintiff cannot obtain relief from Defendants

for any damages that she suffered directly from those incidents.

Plaintiff, however, may rely on the time-barred incidents as

background facts in support of her timely claims, if Plaintiff's

evidence of those incidents is admissible pursuant to the Federal

Rules of Evidence and the applicable case law.  The Ninth Circuit

has recognized that

> time-barred acts should be considered "as evidence
> that conduct falling within the limitations period
> had an unconstitutional purpose" [RK Ventures,
> Inc. v. City of Seattle,] 307 F.3d [1045,] 1050
> [(9th Cir. 2002)].  In that case, we held that
> "[i]n assessing whether acts occurring within the
> limitations period are constitutional, we may look
> to prelimitations period events as evidence of an
> unconstitutional motive."  Id.; see also Anderson
> v. Reno, 190 F.3d 930, 936 (9th Cir. 1999)
> ("[E]ven if not actionable in and of themselves,
> untimely claims serve as relevant background
> evidence to put timely claim in context."),
> overruled on other grounds by Nat'l R.R. Passenger
> Corp. v. Morgan, 536 U.S. 101, 122 S. Ct. 2061,
> 153 L. Ed. 2d 106 (2002). . . .

Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 929 n.8 (9th Cir.

2004) (some alterations in Olsen).

The Court therefore DENIES the Time-Bar Motion to the

extent that Defendants seek a ruling that Plaintiff is precluded

from presenting evidence of time-barred incidents to support her

timely claims.  If Defendants wish to challenge the admissibility

of Plaintiff's evidence of the time-barred incidents, Defendants

may raise those challenges in their motion in limine.

## II. **Immunity Motion**

The Immunity Motion seeks summary judgment in favor of Defendants Acob and Tate on the ground that they have immunity from Plaintiff's claims against them.  The only claim in the Second Amended Complaint against Defendant Acob is the Haw. Rev. Stat. § 378-2(a)(3) aiding and abetting claim in Count IV, and the only claims against Defendant Tate are the aiding and abetting claim and the defamation claim in Count VI.

First, the Court agrees with Plaintiff that the 4/5/12 Order resolves Defendants' argument in the Immunity Motion that Defendants Acob and Tate are entitled to summary judgment on the aiding and abetting claim because Plaintiff failed to identify a person who incited, compelled or coerced the discriminatory act and another person who was incited, compelled or coerced into committing the discriminatory act.  See 4/5/12 Order, 2012 WL 1158742, at *6.

Defendants also argue that this Court must dismiss the aiding and abetting claim against Defendants Acob and Tate because Plaintiff did not plead malice in the Second Amended Complaint.  Finally, Defendants argue that, even assuming Plaintiff properly pled her aiding and abetting claim, Plaintiff has not identified a genuine issue of material fact regarding Defendant Acob's and Defendant Tate's qualified immunity and

they are entitled to judgment as a matter of law.

This district court has described the following analysis of qualified immunity from state law claims:

> Hawaii law provides that a nonjudicial government official has a qualified or conditional privilege with respect to his or her tortious actions taken in the performance of his or her public duty. <u>Towse v. State of Hawaii</u>, 647 P.2d 696, 702 (Haw. 1982); <u>Runnels v. Okamoto</u>, 525 P.2d 1125, 1128 (Haw. 1974). This privilege shields all but the most guilty nonjudicial officials from liability, but not from the imposition of a suit itself. <u>Towse</u>, 647 P.2d at 702. The privilege is the result of the Hawaii Supreme Court's balancing of competing interests. It protects the innocent public servant's pocketbook, yet it allows an injured party to be heard. <u>See Medeiros v. Kondo</u>, 522 P.2d 1269, 1272 (Haw. 1974).
>
> For a tort action to lie against a nonjudicial government official, the injured party must allege and demonstrate by clear and convincing proof that the official was motivated by malice and not by an otherwise proper purpose. <u>Towse</u>, 647 P.2d at 702-03; <u>Medeiros</u>, 522 P.2d at 1272. When a public official is motivated by malice, and not by an otherwise proper purpose, Hawaii law provides that the cloak of immunity is lost and the official must defend the suit the same as any other defendant. <u>Marshall v. Univ. of Haw.</u>, 821 P.2d 937, 946 (Haw. Ct. App. 1991), <i>abrogated on other grounds by</i> <u>Hac v. Univ. of Haw.</u>, 73 P.3d 46 (Haw. 2003).
>
> The existence or absence of malice is generally a question for the jury. <u>Runnels</u>, 525 P.2d at 1129. However, when the existence or absence of malice is demonstrated to the court via uncontroverted affidavits or depositions, the court may rule on the existence or absence of malice as a matter of law. <u>See</u> <u>id.</u>

<u>Edenfield v. Estate of Willets</u>, Civ. No. 05-00418

SOM-BMK, 2006 WL 1041724, at *11-12 (D. Haw. Apr. 14, 2006) (parallel citations omitted).

The Supreme Court of Hawai`i has held that "the phrase 'malicious or improper purpose' should be defined in its ordinary and usual sense." Awakuni v. Awana, 165 P.3d 1027, 1042 (Haw. 2007). In Awakuni, the Supreme Court relied on Black's Law Dictionary, which defines "malicious" as "'[s]ubstantially certain to cause injury' and '[w]ithout just cause or excuse'"; and defines "malice" as "'[t]he intent, without justification or excuse, to commit a wrongful act[,]' 'reckless disregard of the law or of a person's legal rights[,]' and '[i]ll will; wickedness of heart.'" Id. (quoting Black's Law Dictionary 976-77 (8th ed. 2004)).

Long v. Yomes, Civ. No. 11-00136 ACK-KSC, 2011 WL 4412847, at *6 (D. Hawai`i Sept. 20, 2011) (alterations in Long) (footnote omitted).

As Defendants argue in the Immunity Motion, an actual malice standard applies as to all tort claims, except defamation. This district court has stated:

To determine whether [the defendants] acted with malice, Plaintiff argues that the applicable standard is the "reasonable man" standard articulated in Towse, 64 Haw. at 633, 647 P.2d at 703. Nevertheless, Towse involved a defamation case, and the Court notes that there are no cases applying the "reasonable man" test to non-defamation torts by government officials. See Edenfield v. Estate of Willets, 2006 WL 1041724, at *12 (D. Haw. 2006) ("This court does not read Towse as requiring application of the 'reasonable man' test to the facts of this nondefamation case. To hold otherwise would effectively remove the 'malice' requirement and run contrary to the Hawaii Supreme Court's admonition that only the most guilty of officials are liable for their tortious acts"). The Court concludes that the 'reasonable man' standard is inapplicable to

> determining malice in cases involving torts other
> than defamation.  The applicable standard is
> whether Plaintiffs have met their burden of
> proving that the officers were motivated by malice
> and not by an otherwise proper purpose.

White v. Sabatino, 526 F. Supp. 2d 1143, 1161-62 (D. Hawai`i

2007) (footnote omitted).  Under Towse, a court must measure the

actions of the defendant in a defamation action against the

actions of "a reasonable man under the circumstances, with due

regard to the strength of his belief, the grounds that he has to

support it, and the importance of conveying the information."  64

Haw. at 633, 647 P.2d at 703 (citations and quotation marks

omitted).

    A.   **Pleading Requirement**

        To the extent that Defendants argue Plaintiff failed to

sufficiently plead malice in the Second Amended Complaint, a

dismissal standard, rather than a summary judgment standard,

applies.  "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'"  Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007)); see also Weber v. Dep't of

Veterans Affairs, 521 F.3d 1061, 1065 (9th Cir. 2008).

        This Court acknowledges that it has previously

dismissed state law claims without prejudice where the plaintiff

failed to plead malice sufficiently to overcome the conditional

privilege.  See, e.g., Salameh v. City & Cnty. of Honolulu, Civil No. 12-00073 LEK-KSC, 2012 WL 1109052, at *5-6 (D. Hawai`i Mar. 30, 2012); Smith v. Davidson, Civil No. 11-00498 LEK-RLP, 2012 WL 996890, at *7-8 (D. Hawai`i Mar. 22, 2012).  Further, this district court has recognized that a plaintiff must "must allege . . . that the official was motivated by malice and not by an otherwise proper purpose."  Long, 2011 WL 4412847, at *6 (some citations omitted) (citing Towse, 647 P.2d at 702-03).  Nothing in these and similar cases, however, requires that a plaintiff plead the word "malice" in the complaint.  Under the dismissal standard, all that is required is that the plaintiff plead sufficient factual matter, accepted as true, to state a plausible argument that the defendant acted with malice.

The Second Amended Complaint alleges, inter alia, that Defendant Acob: demoted Plaintiff without reason; [Second Amended Complaint at ¶¶ 19, 22;] Defendant Acob and other members of the department's management immediately told Defendant Tate about Plaintiff's complaint that he asked her to promote Ms. Jura and Ms. Murakami; Defendant Acob and other members of management failed to take action, or took only minimal action, on Plaintiff's complaint; [id. at ¶¶ 29-31;] Defendants decided not to present a management award for which Plaintiff was the only person nominated; [id. at ¶¶ 40-41;] became irate and threatened to discipline or terminate Plaintiff based on an incident

45

involving a drawing or picture that a former employee left in the hallway; [id. at ¶ 42;] lied when he told Plaintiff that Corporation Counsel conducted the investigations into the complaints involving Plaintiff and Defendant Tate; [id. at ¶¶ 55-56;] required Plaintiff to attend a training class taught by Defendant Tate, in spite of her request for alternate training in light of her history with Defendant Tate, and disciplined her for leaving the class early after she became physically ill; [id. at ¶¶ 58-64;] threatened to demote Plaintiff if she failed to maintain contact with Defendant Tate or to attend any of Defendant Tate's training classes; [id. at ¶¶ 66-69;] threatened to discipline Plaintiff if he was dissatisfied with Ms. Sims' attendance; [id. at ¶ 83;] and Defendant Acob and the County terminated Plaintiff for insubordination although two male employees were only demoted for similar misconduct within the same year or the previous year [id. at ¶¶ 88, 90-95]. This Court therefore concludes that the Second Amended Complaint sufficiently pleads factual allegations that state a plausible argument that Defendant Acob acted with malice.

The Second Amended Complaint also alleges, *inter alia*, that Defendant Tate: asked Plaintiff to promote two DPAs with whom he was romantically involved; [id. at ¶¶ 23-24, 27-28;] began referring to Plaintiff as a "lesbian" and a "butch" shortly after his first request; [id. at ¶ 26;] filed a complaint

46

alleging that Plaintiff discriminated against Ms. Jura and Ms. Murakami after he learned that Plaintiff reported his promotion requests; [id. at ¶¶ 29-30, 32;] spread rumors among the office that Plaintiff had referred to Ms. Jura and Ms. Murakami as "idiots" and "morons"; and filed another complaint about the incident [id. at ¶¶ 44, 47].  This Court concludes that the Second Amended Complaint sufficiently pleads factual allegations that state a plausible argument that Defendant Tate acted with malice.

This Court therefore DENIES the Immunity Motion as to Defendants' argument that the Court should dismiss Plaintiff's claims against Defendants Acob and Tate based on the failure to plead malice in the Second Amended Complaint.

**B.   Entitlement to Qualified Immunity**

Defendants also argue that this Court should conclude, as a matter of law, that Defendants Acob and Tate are entitled to qualified immunity.

**1.   Defendant Tate**

Plaintiff has presented her testimony that Defendant Tate asked her to promote Ms. Jura and Ms. Murakami and that she refused these requests.  [Pltf. Depo. at 59-60, 76.]  Although Defendant Tate denies making these requests, Plaintiff has also presented Defendant Acob's testimony acknowledging that Plaintiff reported such requests to him and that the requests were

improper.  Defendant Acob testified that he instructed Defendant
Tate not to do it again.  [Acob Depo. II at 83.]  Defendant Acob
also testified that Defendant Tate complained to him that Ms.
Jura and Ms. Murakami might be fired for a discriminatory reason
because Plaintiff was jealous of them.  [Id. at 80.]  Further, it
is undisputed that Defendant Tate told Ms. Jura that Plaintiff
was a homosexual.  [Tate Depo. at 25.]

     Although, as discussed *supra*, any claims based upon
these incidents are time-barred, viewing the record in the light
most favorable to Plaintiff, the Court finds that they are
relevant to the issue whether Defendant Tate acted with malice in
the incidents which are the subject of timely claims.  In this
Court's view, the ultimate determination of the claims against
Defendant Acob will depend upon the credibility of each party's
version of the relevant events.  This district court has
recognized that

> "[o]n summary judgment, [the court] must draw all
> justifiable inferences in favor of the nonmoving
> party, including questions of credibility and of
> the weight to be accorded particular evidence."
> Masson v. New Yorker Magazine, Inc., 501 U.S. 496,
> 520 (1991); see Bravo v. City of Santa Maria, 665
> F.3d 1076, 1083 (9th Cir. 2011) ("If a rational
> trier of fact could resolve a genuine issue of
> material fact in the nonmoving party's favor, the
> court 'may not affirm a grant of summary
> judgment . . . because credibility determinations,
> the weighing of the evidence, and the drawing of
> legitimate inferences from the facts are jury
> functions, not those of a judge.'" (quoting Nelson
> v. City of Davis, 571 F.3d 924, 927 (9th Cir.
> 2009))).

Ingalls v. Gov't Emps. Ins. Co., Civil Nos. 11-00244 JMS/RLP, 11-00488 JMS/KSC, 2012 WL 2873562, at *7 n.14 (D. Hawai`i July 12, 2012) (alterations in Ingalls).

The Court therefore FINDS that the incidents listed *supra* are sufficient to establish genuine issues of material fact as to whether Defendant Tate acted with malice, under either the actual malice or the reasonable man standard, in the incidents which are the bases of timely claims. Thus, the Court cannot find, at the present time, that Defendant Tate is entitled to qualified immunity. Defendants' Motion is DENIED WITHOUT PREJUDICE as to Defendant Tate. Defendants may revisit the qualified immunity issue based on the evidence adduced at trial.

### 2. **Defendant Acob**

In the letter in which Defendant Acob terminated Plaintiff's employment, he stated:

> In writing for your subordinate to sign-off on, you have informed your subordinate that my position on leaves as it pertains to this subordinate is inappropriate. You have imposed your own position over that of the department's to the detriment of the department. As a result, among other things, you essentially unilaterally reversed the corrective action I previously placed upon this employee. . . .

[Pltf.'s Suppl. Immunity CSOF, Decl. of Counsel, Exh. 5.] Defendant Acob's deposition testimony, however, does not clearly identify any action that Defendant Acob directed Plaintiff to take against Ms. Sims but that Plaintiff refused to implement,

although Plaintiff did state her disagreement with his decision. [Pltf.'s Concise Statement of Material Facts in Opp. to Immunity Motion, filed 4/9/12 (dkt. no. 120) ("Pltf.'s Immunity CSOF"), Decl. of Counsel, Exh. 3 (excerpts of 1/20/12 Defendant Acob Depo. Trans. ("Acob Depo. I")) at 88-92, 99-100, 102-18.] Defendant Acob also testified that, in the case of a male manager who disclosed confidential information to a DPA who should not have been privy to the information, Defendant Acob only demoted him. [Acob Depo. I at 15-16.]

This Court acknowledges that it is a much closer question whether Defendant Acob is entitled to summary judgment based on qualified immunity than whether Defendant Tate is entitled to qualified immunity. The Court, however, FINDS that the circumstances related to Plaintiff's termination, together with Defendant Acob's actions in connection with the incidents and complaints between Plaintiff and Defendant Tate, are sufficient to establish genuine issues of material fact as to whether Defendant Acob acted with actual malice in the incidents which are the subject of timely claims. Further, as with the claims against Defendant Tate, credibility issues are also critical to the resolution of the claim against Defendant Acob, and this Court cannot resolve credibility issues on summary judgment. The Court therefore cannot find, at the present time, that Defendant Acob is entitled to qualified immunity.

Defendants' Motion is DENIED WITHOUT PREJUDICE as to Defendant Acob.  Defendants may revisit the qualified immunity issue based on the evidence adduced at trial.

### CONCLUSION

On the basis of the foregoing, Defendants' Motion for Partial Summary Judgment on the Issue of Qualified Immunity for Individual Defendants, filed January 11, 2012, is HEREBY DENIED, and Defendants' Motion for Summary Judgment on Time-Barred Claims, filed January 13, 2012, is HEREBY GRANTED IN PART AND DENIED IN PART.  The denial of the Immunity Motion is WITHOUT PREJUDICE as to the issue whether Defendants Acob and Tate are entitled to qualified immunity.

Defendants' Time-Bar Motion is GRANTED insofar as the Court GRANTS summary judgment in favor of Defendants as to:

- the portions of Plaintiff's Title VII claims and Plaintiff's Haw. Rev. Stat. Chapter 378 claims based on Plaintiff's reassignment in early 2007, Defendant Tate's alleged September 2007 statements regarding Plaintiff's sexual orientation, and Defendant Tate's October 30, 2007 complaint, and the ensuing investigation, regarding Plaintiff's alleged discrimination against Ms. Jura and Ms. Murakami;
- the portion of Count V based upon Defendant Tate's alleged statements beginning in September 2007 about Plaintiff's sexual orientation and Defendant Tate's October 30, 2007 complaint and ensuing investigation; and
- the portion of Count VI based upon Defendant Tate's October 30, 2007 report and Defendant Tate's alleged sexual orientation statements in September 2007.

Defendants' Time-Bar Motion is DENIED AS MOOT as to the portions of Plaintiff's Title VII claims and Plaintiff's Chapter 378

51

claims based solely upon Defendant Tate's requests that Plaintiff promote Ms. Jura and Ms. Murakami.  Defendants' Time-Bar Motion is DENIED in all other respects.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, August 31, 2012.



 /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**MARIE J. KOSENGARTEN V. THE DEPARTMENT OF THE PROSECUTING ATTORNEY, ET AL; CIVIL NO. 10-00321 LEK-KSC; ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF QUALIFIED IMMUNITY FOR INDIVIDUAL DEFENDANTS AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON TIME-BARRED CLAIMS**