IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

MARIE J. KOSEGARTEN,       )    CIVIL NO. 10-00321 LEK-KSC
                        )
        Plaintiff,     )
                        )
     vs.            )
                        )
THE DEPARTMENT OF THE     )
PROSECUTING ATTORNEY, ET AL., )
                        )
        Defendants.    )
_____ )

**ORDER DENYING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT ON AIDING AND ABETTING CLAIMS**

On July 6, 2012, Defendants the County of Maui ("the County"), Benjamin M. Acob, in his individual capacity ("Defendant Acob"), and Timothy T. Tate, in his individual capacity ("Defendant Tate", all collectively, "Defendants") filed their Motion for Summary Judgment on Aiding and Abetting Claims ("Motion"). [Dkt. no. 142.] Plaintiff Marie J. Kosegarten ("Plaintiff") filed her memorandum in opposition to the Motion on September 10, 2012, and Defendants filed their reply on September 17, 2012. [Dkt. nos. 173, 175.] On September 27, 2012, this Court found the instant Motion suitable for disposition without a hearing pursuant to Rule LR7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawai`i ("Local Rules"). [Dkt. no. 187.] After careful consideration of the Motion, supporting and opposing memoranda, and the relevant legal authority, Defendants' Motion

is HEREBY DENIED for the reasons set forth below.

**BACKGROUND**

This Court recently set forth the factual and procedural history of this case in its Order Denying Defendants' Motion for Partial Summary Judgment on the Issue of Qualified Immunity for Individual Defendants and Granting in Part and Denying in Part Defendants' Motion for Summary Judgment on Time-Barred Claims, filed August 31, 2012 ("8/31/12 Order"), [dkt. no. 172,[1]] which this Court incorporates by reference.

## I.  Motion

In the instant Motion, Defendants first argue that Plaintiff failed to exhaust her administrative remedies as to her aiding and abetting claims.  Insofar as aiding and betting is a state law claim pursuant to Haw. Rev. Stat. § 378-2(3)[2] and it

---

[1] The 8/31/12 Order is also available at 2012 WL 3801728.

[2] At the time of the events in question, Haw. Rev. Stat. § 378-2 (Suppl. 2008) read, in pertinent part:

> It shall be an unlawful discriminatory practice:
> . . . .
> (3) For any person whether an employer, employee, or not, to aid, abet, incite, compel, or coerce the doing of any of the discriminatory practices forbidden by this part, or to attempt to do so[.]

That version is substantively identical to the current version of § 378-2, which reads, in pertinent part:

> (a) It shall be an unlawful discriminatory practice:

(continued...)

2

does not arise under Title VII, Plaintiff had to file a charge with the Hawai`i Civil Rights Commission ("HCRC") within 180 days after the last alleged act of discrimination.  Plaintiff, however, only filed three charges with the Equal Employment Opportunity Commission ("EEOC").  [Mem. in Supp. of Motion at 3; Defs.' Concise Statement of Material Facts in Supp. of Motion, filed 7/6/12 (dkt. no. 143) ("Defs.' CSOF"), Decl. of Cheryl Tipton ("Tipton Decl."), Exhs. A-C.[3]]  Defendants emphasize that obtaining a right-to-sue letter from the HCRC is a pre-condition to bringing a civil action for violations of § 378-2.  [Mem. in Supp. of Motion at 4.]

Defendants argue that Plaintiff did not allege in the Charges that Defendants Acob and Tate "aided, abetted, incited, compelled, or coerced the doing of any of the discriminatory practices forbidden by Chapter 378, Part I, or even that they attempted to do so."  [Id. at 5.]  The County is the only

_____

[2](...continued)
              . . . .
              (3) For any person, whether an employer,
              employee, or not, to aid, abet, incite,
              compel, or coerce the doing of any of the
              discriminatory practices forbidden by this
              part, or to attempt to do so[.]


[3] Exhibit A is Plaintiff's Charge of Discrimination, which the EEOC received on October 17, 2008 ("October 2008 Charge"); Exhibit B is Plaintiff's Charge of Discrimination, received on June 10, 2009 ("June 2009 Charge"); and Exhibit C is Plaintiff's Charge of Discrimination, received on July 9, 2009 ("July 2009 Charge", all collectively "the Charges").

3

respondent named in the Charges and in the right-to-sue letters
from the HCRC and the EEOC.  [Tipton Decl., Exh. D.]  Defendants
argue that Plaintiff's aiding and abetting allegations against
Defendants Acob and Tate are outside of the scope of the Charges,
and therefore those claims are barred for failure to exhaust.
[Mem. in Supp. of Motion at 5.]

        Defendants acknowledge that the Ninth Circuit has
stated that a layperson completing a discrimination charge should
not be held to the same pleading standards applicable to the
filing of a civil complaint.  [Id. at 8 (citing B.K.B. v. Maui
Police Department, 276 F.3d 1091, 1103 (9th Cir. 2002)).]
Defendants, however, argue that this Court should hold Plaintiff
to a higher standard because she is an attorney and, prior to
filing the October 2008 Charge, she stated that she had retained
an attorney.  [Id.; Tipton Decl., Exh. E (email string dated
September 2, 2008 and August 27, 2008 between Plaintiff and
Wayne Steel regarding "Retaliation Claim").]

        Defendants also point out that, in her responses to the
EEOC EAS Questionnaire, which the EEOC uses to draft the formal
complaint, Plaintiff identified the persons responsible as
Peter Hanano, Wayne Steel, and Defendant Acob.  She did not
identify Defendant Tate.  [Mem. in Supp. of Motion 8-9; Tipton
Decl., Exh. F (EAS Questionnaire dated August 28, 2008).]  The
EAS Questionnaire asks the complainant to identify the bases for

4

the claim of employment discrimination.   The complainant can check race, sex, age, disability, national origin, color, religion, retaliation, pregnancy, and other.   Plaintiff marked retaliation and listed "Whistleblower" after "other".   [Tipton Decl., Exh. F at 2.]   Defendants argue that Plaintiff could have listed aiding and abetting under "other", but she did not do so.   [Mem. in Supp. of Motion at 9.]   In addition, the narrative in the EAS Questionnaire does not mention any communications between Defendant Acob and Defendant Tate.   Defendants also argue that, although the Charges list actions by Defendants Acob and Tate, the Charges do not suggest a conspiracy or plot between them, nor do the Charges mention any communications between them. Defendants argue that the Charges were insufficient to exhaust her administrative remedies as to her aiding and abetting claims.   [Id. at 9-10.]   Defendants emphasize that Defendant Tate did not receive notice of any of Plaintiff's Charges.   [Id. at 10 (citing Defs.' CSOF, Decl. of Timothy T. Tate ("Tate Decl.") at ¶ 18).] Defendants therefore argue that they are entitled to summary judgment on Plaintiff's aiding and abetting claims.[4]

          Defendants next argue that Plaintiff's aiding and

_____

     [4] Defendants also argue that, even if Plaintiff exhausted her administrative remedies as to her aiding and abetting claims, they are time-barred as to all acts preceding April 18, 2008. [Mem. in Supp. of Motion at 10.]   The Court will not discuss this argument because the 8/31/12 Order expressly ruled upon which of Plaintiff's Chapter 378 claims were time-barred and which were not.   2012 WL 3801728, at *14-15.

abetting claims are meritless.  According to Defendants, the Second Amended Complaint contains eight paragraphs setting forth the actions which form the basis of Plaintiff's aiding and abetting claims (paragraphs 44, 47, 53, 58, 59, 70, 84, and 106). [Mem. in Supp. of Motion at 11-15.]

Paragraph 44 of the Second Amended Complaint alleges that Defendant Tate aided and abetted Defendant Acob[5] to blemish Plaintiff's personnel file and to create a hostile work environment for her by spreading rumors around the office that Plaintiff called Ms. Jura and Ms. Murakami "idiots" and "morons". Defendants argue that, based on the undisputed facts of this case, Plaintiff cannot prevail on this allegation.  [Mem. in Supp. of Motion at 12.]

Defendants point to: Defendant Acob's testimony that, at the time Plaintiff allegedly made the statement, Ms. Jura and Ms. Murakami had pending EEOC discrimination complaints against the County; [Defs.' CSOF, Decl. of Benjamin A. Acob ("Acob

_____

[5] Although paragraph 44 refers to Defendant Tate aiding and abetting the County, Defendants argue that this reference to the County should be construed as referring to Defendant Acob because this Court ruled that "the Second Amended Complaint, read as a whole, sufficiently identifies: 1) Defendant Tate as the person who incited, compelled, or coerced the discriminatory actions against Plaintiff; and 2) Defendant Acob as the person who was incited, compelled, or coerced into taking discriminatory actions against Plaintiff." [Mem. in Supp. of Motion at 11 (quoting Order Granting in Part & Denying in Part Defs.' Motion to Strike and/or to Dismiss Portions of Pltf.'s Second Amended Complaint, filed 4/5/12 (dkt. no. 115) ("4/5/12 Order"), at 13.] The 4/5/12 Order is also available at 2012 WL 1158742.

Decl.") at ¶ 13;] the internal investigation into whether Plaintiff's comments constituted prohibited retaliation for their EEOC complaints; [Defs.' CSOF, Decl. of Wayne Steel[6] ("Steel Decl.") at ¶ 5;] Mr. Steel's deposition testimony that information from an internal discrimination investigation is not placed in anyone's personnel file unless there is a finding, and that the investigative report is only placed in the investigative file; [Tipton Decl., Exh. H (excerpts of 3/2/12 depo. of Wayne F. Steel) at 80, 84-85;] Defendant Acob's testimony that, when Plaintiff denied making the statement, he gave her the benefit of the doubt; his testimony that Plaintiff received a raise effective July 1, 2008 and a positive performance evaluation from him on September 29, 2008; his testimony that Plaintiff's termination was not based on any actions or comments by Defendant Tate; [Acob Decl. at ¶¶ 13-15;] and Plaintiff's admission that, prior to her termination, she had never suffered a disciplinary action of any kind [Tipton Decl., Exh. G (excerpts of Pltf.'s First Suppl. Answers to the County's First Request for Answers to Interrogs.) at 2].

Defendants argue that Plaintiff's comments "were reported to management, not to others in the office, as required by the County's Policy Against Discrimination[.]"  [Mem. in Supp.

---

[6] During the relevant time period, Mr. Steel was the Administrative Officer for the Department of the Prosecuting Attorney ("the Department").  [Steel Decl. at ¶ 2.]

of Motion at 12 (citing Acob Dec. ¶ 13; Tipton Decl., Exh. M).]

Defendant Acob's declaration, however, merely states that

Defendant Tate reported the comments to him and that Defendant

Tate's report was kept confidential.   Defendant Acob does not

address whether Defendant Tate told others in the office about

Plaintiff's alleged comments.   [Acob Decl. at ¶ 13.]

Defendants also argue that Deputy Prosecuting Attorney

("DPA") Tracy Jones confirmed that Plaintiff referred to Ms. Jura

and Ms. Murakami as "morons and idiots".   [Mem. in Supp. of

Motion at 12 (citing Tipton Decl., Exh. P).[7]]

Paragraph 47 of the Second Amended Complaint alleges

Defendant Tate made his August 21, 2008 complaint, which was

based upon Plaintiff's "idiots" and "morons" comment and

regarding Plaintiff's negative remarks about DPA Robert Rivera,

to aid and abet Defendant Acob in creating negative marks in her

personnel file, leading to disciplinary action and her eventual

termination.   Defendants argue that, based on the same undisputed

facts discussed as to paragraph 44, Plaintiff cannot prevail on

this allegation.   [Mem. in Supp. of Motion at 12-13.]

---

[7] The Court notes that Exhibit P is a memorandum dated
September 17, 2008 to Plaintiff from Defendant Acob stating that
the investigation into the alleged statement was complete and
that he was not taking further action because the information
gathered did not support a finding of discrimination.   Exhibit P,
however, does not contain any information about Ms. Jones.
[Tipton Decl., Exh. P.]

Paragraph 53 of the Second Amended Complaint also alleges Defendant Acob aided and abetted the County to create negative marks in Plaintiff's personnel file and to induce her to resign.  Defendants argue that Plaintiff cannot prevail on her aiding and abetting claim to the extent that it is based on this allegation because Defendant Acob is the only person who had the authority to hire and fire DPAs.  [Mem. in Supp. of Motion at 13 (citing Tipton Decl., Exh. S (excerpts of Charter, County of Maui) at § 8-3.3).]  Further, Defendant Acob could not aid and abet himself.  [Id.]

Paragraphs 58 and 59 of the Second Amended Complaint allege that Defendants Acob and Tate used the narcotics training class to establish a pretext for Plaintiffs' termination. Defendants argue that, based on the undisputed facts, Plaintiff cannot prevail on her aiding and abetting claim as to this allegation.  Defendants reiterate that only Defendant Acob had the authority to terminate Plaintiff's employment.  [Mem. in Supp. of Motion at 13-14.]

In addition, Defendants point to the following facts, which they allege are undisputed: the Department periodically provides training for the DPAs; in early 2009, Defendant Acob asked Defendant Tate and DPAs John Kim and Tracy Jones to conduct a training on warrants, narcotics evidence, and other topics; Defendant Tate set the date and time for the training, which

occurred on March 30, 2009; the Department has a long-standing
policy that training sessions are mandatory for all DPAs unless
they are in court or on approved leave; Defendants Acob and Tate
never discussed Plaintiff when they talked about the training;
Defendant Acob had no way of knowing whether Plaintiff would be
in court at the time of the training; prior to the training,
Defendant Acob never specifically instructed Plaintiff to attend,
nor did Plaintiff ask him to excuse her from the training; [Acob
Decl. at ¶¶ 8-10;[8]] Plaintiff was terminated on June 23, 2009,
almost three months after the training; [Second Amended Complaint
at ¶ 88;] and, according to Defendant Acob, Defendant Tate's
actions and comments had nothing to do with Plaintiff's
termination [Acob Decl. at ¶ 15].   Defendants also argue that
Plaintiff's July 2009 Charge admits that Plaintiff's termination
was based upon Plaintiff's insubordination in the Sims matter and
that Defendant Tate was not involved in Plaintiff's termination.
Defendants emphasize that the July 2009 Charge addressing
Plaintiff's termination does not mention Defendant Tate's name.
[Mem. in Supp. of Motion at 14, 18 (citing Tipton Decl, Exh. C).]

Defendants also address: the allegations in paragraphs
70 and 84 of the Second Amended Complaint that Defendant Acob
aided and abetted the County to create negative marks in

_____

[8] Defendant Tate also provided testimony that, in discussing
the training, he and Defendant Acob never discussed Plaintiff.
[Tate Decl. at ¶¶ 13-14.]

10

Plaintiff's personnel file and to set a pretext for her

termination; and the allegations in paragraph 106 that Defendants

Acob and Tate aided and abetted the County to discriminate

against Plaintiff and to create a pretext for her to be

disciplined and eventually terminated.  Defendants argue that

Plaintiff cannot prevail on her aiding and abetting claim

regarding these allegations.  Defendants rely on the same

evidence and legal arguments identified as to the preceding

allegations.  Defendants urge the Court to find that neither

Defendant Acob nor Defendant Tate discriminated against

Plaintiff.  In particular, Defendants argue that there were no

blemishes in Plaintiff's personnel files and therefore Plaintiff

cannot prove that Defendant Acob's actions created negative

remarks in her personnel file.  [Id. at 14-16.]

Plaintiff has also complained about various Reports of

Conference prepared during Defendant Acob's administration.

Defendants point to Wayne Steel's deposition testimony that

Reports of Conference are like meeting minutes that could address

a wide range of actions from counseling through termination.

Sometimes they have nothing to do with employee discipline and

merely reflect an issue that the Prosecuting Attorney wants

documented.  According to Mr. Steel, only reports containing some

form of discipline are included in the employee's personnel

files.  [Tipton Decl., Exh. H (excepts of 3/2/12 depo. of

11

Wayne F. Steel) at 107-08, Witness Clarification Sheet.]  He also
testified that investigative reports and information about
Plaintiff's EEOC charges would be maintained in separate,
confidential files.  [Id. at 80, 84-85.]  Defendants argue that
the only blemish in Plaintiff's personnel file is the Sims
incident, which was the basis of Plaintiff's termination.  [Mem.
in Supp. of Motion at 19.]

Defendants also argue that Plaintiff cannot prevail on
her aiding and abetting claims based either on Defendant Tate's
October 2007 report about his fear that Plaintiff might
discriminate against Ms. Jura and Ms. Murakami or his August 2008
report that Plaintiff called them "idiots and morons" and that
Plaintiff claimed she was responsible for DPA Rivera's demotion.
Defendants contend that: Defendant Acob had a duty to investigate
these complaints; the investigations were confidential; and the
investigations could not be a pretext for discriminatory actions
because Plaintiff did not suffer any adverse employment actions
as a result of the investigations.  [Id. at 19-20.]

Defendant Tate made the October 2007 report to DPA
Rivera, who was the EEOC Officer at the time.[9]  [Tate Decl. at
¶ 6; Defs.' CSOF, Decl. of Robert D. Rivera ("Rivera Decl.") at
¶ 7.]  Defendants characterize the report as "more of an

---

[9] Defendants emphasize that any aiding and abetting claim
based upon this incident is time-barred.  [Mem. in Supp. of
Motion at 21.]

expression of concern" that "'was not . . . a formal
complaint[.]'"  [Mem. in Supp. of Motion at 21 (quoting Steel
Decl., Exh. J).]  Mr. Steel testified that Defendant Acob
assigned him to look into the October 2007 report.  [Tipton
Decl., Exh. H at 58.]  Plaintiff was informed of Defendant Tate's
report, and she was allowed to submit a response and a cross-
allegation of discrimination, which the Department also
investigated.  [Steel Decl. at ¶ 8, Exh. T (Plaintiff's
responsive complaint).]  Mr. Steel, DPA Rivera, and DPA Melinda
Mendes all believed that, during the time of the 2007 events,
Plaintiff was jealous of Defendant Tate's relationships with
other women in the Department, including Ms. Jura and
Ms. Murakami, and/or Plaintiff had romantic feelings for
Defendant Tate herself.  [Steel Decl., Exh. J; id., Exh. L (notes
of Mr. Steel's November 23, 2007 interview with Ms. Jura); id.,
Exh. K (excerpts of 2/17/12 depo. of Robert Rivera) at 44; Defs.'
CSOF, Decl. of Melinda K. Mendes at ¶ 9.]  DPA Rivera also states
that, at an October 29, 2007 management meeting, Plaintiff
recommended that Ms. Murakami be fired.  [Rivera Decl. at ¶ 9.]
DPA Rivera advised against Ms. Murakami's termination because he
thought there might be some merit to Defendant Tate's complaint
about Plaintiff discriminating against Ms. Murakami.  [Id. at
¶ 4; Tipton Decl., Exh. K at 37-38, 41-42.]  DPA Rivera told
Defendant Tate about Plaintiff's recommendation and advised

Defendant Tate to bring his concerns to Defendant Acob.

Defendant Acob, however, demoted DPA Rivera for sharing this

information with Defendant Tate.  [Rivera Decl. at ¶¶ 9-10;

Tipton Decl., Exh. K at 25.]  Defendants argue that, under the

circumstances, Defendant Acob had a duty to investigate Defendant

Tate's complaint.  [Mem. in Supp. of Motion at 25.]

Defendant Acob ultimately found that Defendant Tate's

complaint about discrimination against Ms. Jura and Ms. Murakami

was "unsubstantiated".  [Tipton Decl., Exh. N (Report of

Conference, dated 11/21/07) at 1.]  Defendant Acob asked

Defendant Tate to keep the matter confidential.  Defendant Tate

asked if Plaintiff was still involved in the decision-making

about Ms. Murakami's employment.  Defendant Acob responded that

Plaintiff "may be kept out of it, but he would not be precluded

in considering [Plaintiff's] evaluation." [Id.]  The Report of

Conference states that there was another complaint that was still

under investigation.  [Id.]

Defendant Acob later offered both Ms. Jura and

Ms. Murakami the chance to resign.  Ms. Murakami accepted and

resigned effective December 3, 2007.  Ms. Jura declined and was

terminated effective December 7, 2007.  [Acob Decl. at ¶ 5.]

Plaintiff was on a medical leave at that time.

Defendant Acob also determined, based on the

investigation, that Plaintiff's complaint against Defendant Tate

14

alleging sexual harassment and hostile work environment was
unsubstantiated.  He met with Defendant Tate on December 14, 2007
and informed Defendant Tate of his determination.  He also told
Defendant Tate that Plaintiff "was 'a good supervisor and it
would be unfortunate if she would leave because of her distaste'
for him'." [Id. at ¶ 6.]

Defendants argue that Defendant Tate did not incite
Defendant Acob to discriminatory conduct, as evidenced by the
fact that Defendant Acob: ruled in Plaintiff's favor regarding
Defendant Tate's complaint; terminated Ms. Jura's and
Ms. Murakami's employment as Plaintiff recommended; told
Defendant Tate that Plaintiff was a good supervisor; and did not
discipline Plaintiff for calling Ms. Jura and Ms. Murakami idiots
and morons.  [Mem. in Supp. of Motion at 25.]

Defendants emphasize that, at the time Plaintiff called
Ms. Jura and Ms. Murakami idiots and morons, both women were
practicing attorneys in Wailuku and both had pending EEOC charges
alleging that Plaintiff and the County discriminated against
them.  Defendants argue that Defendant Acob had a duty to
investigate the report because the County could have faced
liability for retaliation based on Plaintiff's derogatory remarks
about them.  [Id. at 26.]  Mr. Steel investigated the report,
[Steel Decl. at ¶¶ 3-4,] and DPA Jones confirmed Plaintiff's
comments [Tipton Decl., Exh. O].

15

During the investigation, Plaintiff denied making those comments, [Acob Decl. at ¶ 13,] but during her deposition, she admitted saying that their filing of EEOC complaints alleging that Plaintiff discriminated against them because of her romantic interest in Defendant Tate was "an idiotic and moronic thing to do." [Tipton Decl., Exh. I (excerpts of 6/22/11 depo. of Pltf.) at 90.] She also admitted that she may have referred to them as "dits", and she admitted saying that she "couldn't believe the allegation that those monkeys were saying in the EEOC complaint[.]" [Id.] In spite of DPA Jones's statement, Defendant Acob gave Plaintiff "the benefit of the doubt[,]" [Acob Decl. at ¶ 13,] and concluded that there had been no violation of the County's anti-discrimination policy [Tipton Decl., Exh. P (memorandum dated 9/17/08 to Plaintiff from Defendant Acob)]. He states that Defendant Tate's report was kept confidential and no documents were placed in Plaintiff's personnel file. [Acob Decl. at ¶ 13.] Mr. Steel testified that the investigative reports he wrote about the complaints against Plaintiff were not placed in her personnel file. [Tipton Decl., Exh. H at 80.]

Defendants argue that, even if Defendant Tate's reports were mistaken, they were not discriminatory acts because he reasonably believed that Plaintiff was engaging in discrimination. Defendant Tate had a right to make the reports, and Defendants assert that Plaintiff's filing this action against

16

him was retaliatory.  [Mem. in Supp. of Motion at 29.]

As to the drug training, Defendants emphasize that Defendant Tate was only one of three people conducting the training.  Further, Plaintiff never requested to be excused from the training before it occurred, and Defendant Acob never specifically instructed Plaintiff that she had to attend.  He did not take attendance at the training, and he did not know that Plaintiff left the training early until she informed of that fact in an email.  [Acob Decl. at ¶¶ 10-11.]  Defendants emphasize that Plaintiff has admitted that Defendant Tate did not say or do anything inappropriate while she was at the training.  [Mem. in Supp. of Motion at 31 (citing Tipton Decl., Exh. I at 126).]  Defendants argue that Plaintiff has no evidence that the drug training, which was mandatory for all deputies who were not in court at the time, was a conspiracy to discriminate against her.  [Id. at 32.]

Finally, Defendants argue that Plaintiff's allegations in paragraph 70 of the Second Amended Complaint that Defendant Acob created negative remarks in Plaintiff's personnel file cannot support an aiding and abetting claim because a person cannot aid and abet himself.  Further, any negative remarks had a legitimate, non-discriminatory purpose.  Defendants also argue that "it is undisputed that Plaintiff's personnel file was clear of any blemishes prior to her termination."  [Id.]

17

## II.   **Memorandum in Opposition**

In her memorandum in opposition, Plaintiff first moves

to strike the following exhibits filed with Defendants' CSOF:

- Exhibit K (excerpts of DPA Rivera's deposition transcript) - no
  court reporter's certification;
- Exhibit J (Mr. Steel's notes of a November 9, 2007 meeting with
  Defendant Tate) - incomplete document without a signature or
  other identification of the sender;
- Exhibit L (notes of Mr. Steel's November 23, 2007 interview with
  Ms. Jura) - incomplete document with incomplete context;[10]
  and
- Exhibit G (Plaintiff's First Supplemental Answers to Defendants'
  First Request for Answers to Interrogatories) - incomplete
  document that does not include the question to which the
  answer responds.

[Mem. in Opp. at 8.]

Plaintiff argues, without citing legal authority to

support her position, that a plaintiff is not required to

specifically plead aiding and abetting in an administrative

charge.  The plaintiff need only plead a sufficient factual basis

that, accepted as true, states a plausible argument that the

defendants aided and abetted unlawful discrimination.  Plaintiff

contends that she has met this burden.  [Id. at 9.]  Plaintiff

argues that the Charges, read as a whole, provide sufficient

information about Defendant Tate's and Defendant Acob's

discriminatory conduct.  The Charges rely on the same facts at

---

[10] Plaintiff states that she has never seen Exhibit L before
and denies making the statements it attributes to her.  [Pltf.'s
Concise Statement of Facts in Opp. to Defs.' Motion ("Pltf.'s
CSOF"), filed 9/10/12 (dkt. no. 174), Decl. of Marie J.
Kosegarten ("Pltf. Decl.") at ¶ 22.]

issue in the instant case and Plaintiff has not changed her theory of the case.  Although Defendant Tate is not named as a respondent, the October 2008 Charge refers to him thirty-two times.  [Id. at 11-12.]  Plaintiff argues that the § 378-2(3) claims are encompassed within the allegations of a continuing course of retaliation, sex discrimination, and whistleblower discrimination alleged in the Charges, and the claims do not rely on any additional facts.  [Id. at 15.]

Plaintiff emphasizes that she is a criminal law attorney with no experience in employment law.  When she prepared the Charges, she did not have an attorney assisting her.  Thus, Plaintiff argues that she is a layperson as to employment law, [Pltf. Decl. at ¶¶ 3-4,] and the Court should liberally construe the Charges.  At a minimum, whether she is entitled to liberal construction is an issue of credibility, which is not appropriate for summary judgment.  [Mem. in Opp. at 13.]

As to Defendants' assertion that the undisputed facts establish that her § 378-2(3) claims lack merit, Plaintiff argues that most of the facts Defendants characterize as undisputed are in fact disputed.  First, Defendant Acob cannot testify regarding to whom Defendant Tate did or did not repeat the comments.  Defendants sometimes misstate the content of their exhibits and declarations, and this Court cannot consider the exhibits which Plaintiff asserts must be stricken.  Further, while the County's

19

charter gave Defendant Acob the power to hire and fire DPAs, it did not give him the power to violate state and federal law when he did so.  Plaintiff also argues that some of Defendants' assertions of undisputed facts are contrary to the 8/31/12 Order. [Id. at 19-22.]

As to the examples of Defendants misstating the evidence, Steel testified that Reports of Conference are usually kept in personnel files.  [Pltf.'s CSOF, Decl. of Richard D. Gronna ("Gronna Decl."), Exh. 4 (excerpts of 3/2/12 depo. of Wayne F. Steel) at 106-08.]  Plaintiff also denies being promoted during Defendant Acob's tenure, and she points out that she was denied the manager of the year award, Defendant Acob gave her lower evaluations in 2008 than in 2007, and the pay raise that she received was required by county ordinance.  [Pltf. Decl. at ¶ 12; id., Exhs. 1-3.[11]]  In addition, although Defendant Acob informed Plaintiff there was no EEOC violation, he also advised her that there was still an ongoing investigation into whether she committed a management violation.  [Pltf. Decl. at ¶ 11.] Plaintiff also states that, prior to the drug training at issue in this case, other DPAs had missed training sessions for reasons besides court appearances, and they received the training

---

[11] Exhibit 1 is Plaintiff's September 2007 evaluation, Exhibit 2 is Plaintiff's September 2008 evaluation, and Exhibit 3 is the Notification of Personnel Action for Plaintiff's raise effective July 1, 2008.  [Pltf. Decl. at ¶¶ 32-34.]

information through alternate means.  [Id. at ¶ 13.]  According

to Plaintiff's testimony, Reports of Conference are not merely

meeting minutes, and they are not prepared for positive or

laudatory discussions; they are only prepared when there are

accusations against the person who is the subject of the

conference.  [Id. at ¶ 20.]  Thus, Plaintiff argues that they

blemish the employee's personnel file.  [Mem. in Opp. at 24.]

Plaintiff also states that she reviewed her file both

before and after her termination, and documents, including the

Reports of Conferences about Defendant Tate's complaints against

her, were removed in the interim.  [Pltf. Decl. at ¶ 31.]

Plaintiff argues that Mr. Steel's testimony that Reports of

Conferences usually go into personnel files also supports

Plaintiff's testimony that the reports about Defendant Tate's

complaints were removed from her file.  [Mem. in Opp. at 23

(quoting Gronna Decl., Exh. 4 at 107-08).]

Plaintiff argues that Defendant Tate had a

discriminatory purpose behind his report that she was

discriminating against Ms. Jura and Ms. Murakami because his

report closely followed her complaint regarding his improper

requests that she promote them.  Thus, Plaintiff argues that

Defendant Acob did not have a duty to investigate.  Plaintiff

also argues that the investigation was not kept confidential, as

evidenced by the fact that Defendant Tate gained access to

investigation files.  [Id. at 24-25; Gronna Decl., Exh. 7
(excerpts of 7/2/12 depo. of Def. Tate) at 90.]   She emphasizes
that this Court has already found that Defendant Tate's
complaints could support a Chapter 378 claim because, although
they were an otherwise lawful activity, Plaintiff alleges that
the complaints were false and that Defendant Acob used them as a
pretext to fire Plaintiff.  [Mem. in Opp. at 25 (quoting 4/5/12
Order at 13).]   Plaintiff argues that whether the complaints were
legitimate and whether Plaintiff actually committed the conduct
complained of are questions of fact for the jury.   Plaintiff also
argues that other DPAs' opinions about her alleged romantic
feelings for Defendant Tate are irrelevant.  [Id. at 26-27.]
Plaintiff states that she went out of her way to assist Ms. Jura
and Ms. Murakami.  [Pltf. Decl. at ¶ 6.]

        Plaintiff also argues that the Court should not credit
DPA Rivera's testimony because he admitted that he submitted a
false report about his interview with Ms. Jura, and he asserted
that the practice was acceptable because it is common among
police officers.  [Mem. in Opp. at 27 (citing Gronna Decl., Exh.
5 (excerpts of 3/2/12 depo. of Robert Rivera) at 34-48).]

        As to Defendant Tate's August 2008 report that
Plaintiff called Ms. Jura and Ms. Murakami idiots and morons,
Plaintiff points out that, according to Defendant Acob's
testimony about Defendant Tate calling Plaintiff a lesbian or a

butch, a derogatory comment is not discrimination if it is only said once. [Id. at 28 (citing Gronna Decl., Exh. 6 (excerpts of 1/20/12 depo. of Def. Acob) at 60).]  Plaintiff argues that Defendant Acob's ultimate finding that she had not engaged in improper retaliation supports her "claim that Tate played a part in the Plaintiff's termination and aided and abetted by making spurious false claims against the Plaintiff." [Id. at 29.] Plaintiff argues that Defendants take her deposition testimony about her comments out of context.  She argues that the circumstances of her statements, the propriety of the investigations which ensued, and whether her personnel file was blemished as a result are questions of fact for the jury. Plaintiff also emphasizes that it is a violation of the County's anti-discrimination policy to make a false report of discrimination.  [Id. at 29-30.]

        As to the drug training class, Plaintiff states that, after she received the March 17, 2009 email announcing the class, she did not anticipate attending because she thought she would be in court.  In addition, her EEOC complaint against Defendant Tate was still pending, and it was her understanding that they were to remain separated.  On the day of the training, she did not have to appear in court.  She went to the management office to ask to be excused, but no one was there.  After she was forced to leave the training early because she felt ill, she went to the

management office again, but no one was there.  Plaintiff was reprimanded for failing to attend the training (including being threatened with a demotion to a position supervised by Defendant Tate).  Defendant Acob claimed that, as part of the training, Plaintiff was required to ask questions of Defendant Tate. Defendant Acob also informed Plaintiff that she would be further reprimanded if she did not maintain contact with Defendant Tate. A couple of days later, however, a copy of the power point presentation for the training was circulated office-wide for anyone who was unable to attend.  [Pltf. Decl. at ¶¶ 14-18; Tipton Decl., Exh. B (June 2009 Charge) at 2-3.]  Plaintiff argues that there was no requirement that the participants ask questions of Defendant Tate and that this was Defendant Acob's and Defendant Tate's way of harassing her.  [Mem. in Opp. at 32-33.]  Plaintiff states that she did not look at Defendant Tate while she was at the training and therefore she does not know whether he engaged in offensive body language.  [Pltf. Decl. at ¶ 16.]  Plaintiff emphasizes that, even if he did not engage in offensive body language, that is not the only way he could have harassed her.  Plaintiff argues that it is a question of fact for the jury whether Defendants' failure to follow its anti-discrimination policy regarding separating employees involved in a pending discrimination complaint supports her § 378-2(3) claims.  [Mem. in Opp. at 33-34.]

Finally, as to the other allegations supporting her § 378-2(3) claims, Plaintiff argues that Defendants ignore the rulings in the 4/5/12 Order.  Plaintiff also contends that whether there was a legitimate, non-discriminatory purpose for Defendant Acob's negative remarks in her personnel file and whether her file was blemished are issues of fact for the jury. Plaintiff therefore urges the Court to deny the Motion.  [Id. at 34.]

## III. Reply

In their reply, Defendants reiterate that Plaintiff did not exhaust her administrative remedies as to her aiding and abetting claims.  Defendants argue that Plaintiff's administrative allegations were insufficient to state an aiding and abetting claim, and therefore her civil claims are barred for failure to exhaust.  [Reply at 2-4.]  Defendants also emphasize that many of the facts which Plaintiff relies upon to prove her aiding and abetting claims are time-barred because this Court has ruled that "acts occurring before December 20, 2007 are time-barred and Plaintiff is precluded from using the incidents to pursue any claim."  [Id. at 5 (citing 8/31/12 Order at 34, 37, 40).[12]]

---

[12] Defendants misstate the ruling in the 8/31/12 Order. This Court ruled that only **claims** based on the time-barred incidents were precluded.  Plaintiff may rely on those incidents as background facts to support her timely claims.  8/31/12 Order,
(continued...)

Defendants state that there is no case law either defining the key terms in § 378-2(3) or identifying the elements of an aiding and abetting claim.  Defendants, however, emphasize that courts have held that one defendant cannot aid and abet himself.  Defendant Acob had the sole responsibility for personnel actions in the Department, and Defendants argue that the actions he took on his own cannot support Plaintiff's aiding and abetting claims.  Further, Plaintiff has not offered facts to prove the aiding and abetting allegations in the Second Amended Complaint, nor has she established that all the allegedly discriminatory actions actually occurred.  Defendants also argue that Plaintiff has not offered proof that Defendants' legitimate, non-discriminatory reasons for Defendant Acob's personnel actions were merely pretext.  Defendants emphasize that any factual disputes that would not affect the outcome of Plaintiff's aiding and abetting claims are irrelevant to the instant Motion, and a mere scintilla of colorable evidence is not enough to survive summary judgment.  [Reply at 5-7.]

Specifically, Defendants argue that Plaintiff has not established that her personnel file was blemished or that she suffered discriminatory action.  Her allegation that Reports of Conference about Defendant Tate's idiots and morons complaint

---

[12](...continued)
2012 WL 3801728, at *16.

were in her personnel file is not enough to overcome the fact that the investigation into that complaint was resolved in her favor and she was never disciplined prior to her termination. Further, Plaintiff has not identified any documentation of discipline or threats of discipline other than the Sims matter. Defendants also argue that, even if a Report of Conference was a part of Plaintiff's personnel file, it could not be an adverse action if it did not involve some type of discipline. Defendants point out that, in Mr. Steel's deposition correction sheet, he clarified that only a report of conference containing discipline is included in a personnel file. In addition, Plaintiff has presented no evidence that: Defendant Tate's idiots and morons complaint was repeated to others in the Department; Defendant Tate was involved in her non-selection for the Manager of the Year award; she sought a promotion which she was qualified for, but did not receive because of some discrimination; or that Defendant Tate was involved in any decision not to promote her. Defendants also argue that Plaintiff mischaracterizes her 2008 performance evaluation. They point out that twenty of the entries in the evaluation showed improvement from 2007 to 2008 and only supervisory skills, specifically disciplinary control, needed improvement. Defendants argue that Plaintiff has not met her burden of showing that her termination for the Sims matter was pretext. As to Defendant Tate's accessing investigation

reports, there is no evidence that Defendant Acob knew that Defendant Tate did so or that Defendant Tate used the information in the report to aid or abet Defendant Acob in discriminating against Plaintiff.  [Id. at 7-11.]

As to Plaintiff's allegations that Defendant Acob created negative remarks in her personnel file to justify her termination, Defendants reiterate that he cannot aid and abet himself.  Defendants also argue that Plaintiff has not presented any evidence that Defendant Tate was involved in the Sims matter. Further, Plaintiff has no evidence or authority to justify her position that she refused to discipline Ms. Sims because it would have been discriminatory.  There is no evidence that Ms. Sims had a disability, she never asked for an accommodation, and she never requested leave under the Family Medical Leave Act.  Defendants argue that it was proper for Defendant Acob to demand that Plaintiff depart from standard County policies on sick leave with regard to Ms. Sims, who had a history of abusing leave and who knew she had to improve her attendance.  [Id. at 11-12.]

As to the narcotics training, Defendants argue that there is no evidence that Defendant Acob chose Defendant Tate to conduct the training to discriminate against Plaintiff or encouraged him to conduct it in such a manner as to discriminate against Plaintiff.  Further, there is no evidence: that Defendant Acob ordered her to attend the training; who told her, on the day

of the training, that it was mandatory; or that she suffered any discipline for leaving the training early.  Defendants deny that Defendant Acob told her that she had to ask Defendant Tate questions or that she had to maintain contact with him. Defendants emphasize that, contrary to the allegations in her Second Amended Complaint, Plaintiff now admits that she did not request alternate training prior to the session.  Further, although Plaintiff asserts that some DPAs missed training sessions for reasons other than court appearances, that is not in dispute.  Defendants acknowledge that DPAs are excused if they are on approved leave, and Plaintiff has not presented any evidence that DPAs were allowed to miss training sessions for other reasons.  Defendants also argue that there is no support for Plaintiff's claims that they were required to keep Plaintiff and Defendant Tate separate while her EEOC charge was pending. The County's separation policy only applies to internal complaints, and the Department had long since resolved the internal complaint.  [Id. at 13-16.]

Finally, Defendants argue that Plaintiff has violated the Local Rules.  Plaintiff's CSOF exceeds the page and word limit, and does not have a certificate of compliance, and Plaintiff's copy of Defendant Tate's deposition transcript does not include the court reporter's certification.  Defendants also argue that Plaintiff's objections to their exhibits are

29

unfounded.  Where she objects that the exhibits are incomplete, she could have provided complete copies, but Defendants state that the exhibits of Mr. Steel's interview documentation are complete and that he properly authenticated them.  They also argue that the Department was not required to have Plaintiff sign off on the documents.  Defendants acknowledge that DPA Rivera's deposition transcript lacks a court reporter's certification, but they argue that the acts discussed therein are time-barred.  [Id. at 16-17.]

**DISCUSSION**

**I.  Objections**

Plaintiff asks this Court to strike Defendants' Exhibits G, J, K, and L.  [Mem. in Opp. at 8.]  Defendants ask this Court to strike Plaintiff's CSOF, and Defendants point out that Plaintiff's Exhibit 7 lacks a court reporter's certificate. [Reply at 16.]

First, the Court notes that Plaintiff's CSOF is fourteen pages, including the caption and signature, and it does not have a certificate of compliance.  Thus, Plaintiff's CSOF violates the Local Rules, which provide:

> The concise statement in support of or in opposition to a motion for summary judgment shall be no longer than five (5) pages, unless it contains no more than 1500 words.  When a concise statement is submitted pursuant to the foregoing word limitation, the number of words shall be computed in accordance with LR7.5(d), and the concise statement shall include the certificate

provided for in LR7.5(e).

Local Rule LR56.1(d).  While the Court does not condone Plaintiff's failure to comply with the Local Rules, the Court declines to strike Plaintiff's CSOF because, *inter alia*, there is no indication that Plaintiff's non-compliance was prejudicial to Defendants.  The Court therefore DENIES Defendants' request to strike Plaintiff's CSOF.  The Court, however, CAUTIONS Plaintiff that the future failure to comply with the requirements of the Local Rules, in particular Local Rule 56.1, may result in the imposition of sanctions, including the striking of the non-compliant document.

Second, as to Defendants' Exhibit G (Plaintiff's First Supplemental Answers to Defendants' First Request for Answers to Interrogatories), Plaintiff objects on the ground that it is an incomplete document which does not include the underlying question.  In fact, Exhibit G does not even include all of the response.  Local Rule 56.1(c) states that, for documents the parties reference in their concise statements of facts, "[t]he parties may extract and highlight the relevant portions of each referenced document, but shall ensure that enough of a document is attached to put the matter in context."  This Court concludes that Defendants' Exhibit G does not include enough of the underlying document to put the cited matter in context.  The Court therefore GRANTS Plaintiff's request and STRIKES

31

Defendants' Exhibit G.

Third, both Defendants' Exhibit K (excerpts of DPA Rivera's deposition transcript) and Plaintiff's Exhibit 7 (excerpts of Defendant Tate's deposition transcript) lack a court reporter's certification.  The Court notes that it is unclear whether district courts reviewing motions for summary judgment can consider inadmissible evidence.  Compare Nev. Dep't of Corr. v. Greene, 648 F.3d 1014, 1019 (9th Cir. 2011) ("At summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial." (citation and internal quotation marks omitted)), with In re Oracle Corp. Sec. Litig., 627 F.3d 376, 385 (9th Cir. 2010) ("A district court's ruling on a motion for summary judgment may only be based on admissible evidence." (citations omitted)).  At least one Ninth Circuit case has stated that: "A deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent." Orr v. Bank of Am., NT & SA, 285 F.3d 764, 774 (9th Cir. 2002).

This Court, however, notes that Plaintiff has not identified any inaccuracies in Defendants' Exhibit K, nor have Defendants identified any inaccuracies in Plaintiff's Exhibit 7. The Court also notes that it considered other pages of Defendant

Tate's deposition transcript in the 8/31/12 Order.  See, e.g., 2012 WL 3801728, at *4, 20.  Those excerpts of the transcript also did not have a court reporter's certification.  [Pltf.'s Suppl. Concise Statement of Material Facts in Opp. to Defs.' Motion for Partial Summary Judgment on the Issue of Qualified Immunity for Individual Defs., filed 7/18/12 (dkt. no. 150), Decl. of Counsel, Exh. 7 (excerpts of 7/2/12 depo. of Def. Tate).]  Moreover, neither Defendants' Exhibit K nor Plaintiff's Exhibit 7 contain testimony that is critical to the Court's ruling on the instant Motion.  The Court therefore DENIES the parties' respective requests to strike these exhibits.

Finally, Plaintiff asks the Court to strike Defendants' Exhibits J and L, both of which are Mr. Steel's meeting notes. Plaintiff argues that these documents are incomplete and are not properly authenticated.  Mr. Steel stated in his declaration that: Exhibit J is a true and correct copy of his notes of a meeting with Defendant Tate that occurred on November 9, 2007 at approximately 9:15 a.m.; and Exhibit L is a true and correct copy of his notes of a meeting with Ms. Jura that occurred on November 23, 2007 at approximately 8:15 a.m.  [Steel Decl. at ¶¶ 3-4.]  The Court concludes that Exhibits J and L are properly authenticated as to those meeting notes.  The Court DENIES Plaintiffs' request to strike Exhibits J and L as to those meeting notes.

Exhibit J also includes what appears to be notes of a
meeting with Plaintiff on November 9, 2007 at 11:05 a.m., and
Exhibit L also includes what appears to be notes of meetings with
Defendant Tate on November 23, 2007 at 10:45 a.m. and
November 26, 2007 at 3:30 p.m.  The notes of the November 9, 2007
meeting with Plaintiff and the November 26, 2007 meeting with
Defendant Tate are incomplete.  [Id., Exhs. J, L.]  Further,
Mr. Steel's declaration does not attest to the truth and accuracy
of the exhibits as to those three meetings.  The Court therefore
GRANTS Plaintiff's request to strike Defendants' Exhibit J as to
the notes of the November 9, 2007 meeting and Defendants' Exhibit
L as to the November 23, 2007 meeting and the November 26, 2007
meeting.  The Court now turns to the merits of the instant
Motion.

## II.  **Exhaustion**

As noted in the 8/31/12 Order, "[a] person aggrieved by
one of the unlawful practices identified in, *inter alia*, § 378-2,
may file a complaint with the HCRC under the procedures
identified in Haw. Rev. Stat. Chapter 368."  2012 WL 3801728, at
*14 (citing Haw. Rev. Stat. § 378-4).  The failure to file a HCRC
complaint regarding the alleged discrimination precludes an
employee from filing a civil action based on the alleged
discrimination.  French v. Hawaii Pizza Hut, Inc., 105 Hawai`i
462, 475-77, 99 P.3d 1046, 1059-61 (2004); see also Haw. Rev.

34

Stat. § 368-12.[13]

First, to the extent that the Motion argues that
Plaintiff failed to exhaust her administrative remedies as to her
Haw. Rev. Stat. Chapter 378 claims because she filed charges with
the EEOC and "never filed a complaint directly with the HCRC[,]"
[Mem. in Supp. of Motion at 3,] the Court rejects Defendants'
argument.  Plaintiff's EEOC Charges are deemed to have been dual-
filed with the HCRC, see E.E.O.C. v. NCL Am. Inc., 504 F. Supp.
2d 1008, 1010 (D. Hawai`i 2007) (stating that "Hawaii is a
'worksharing' state such that administrative claims with the EEOC
are deemed 'dual-filed' with" the HCRC), as evidenced by the fact
that the HCRC issued Plaintiff a right-to-sue letter for each of
the Charges [Tipton Decl., Exh. D at 1, 3, 5].

Second, to the extent that Defendants argue that
Plaintiff failed to exhaust her administrative remedies as to
some of her § 378-2(3) claims[14] because she failed to file her

---

[13] Section 368-12 states, *inter alia*: "The commission may
issue a notice of right to sue upon written request of the
complainant.  Within ninety days after receipt of a notice of
right to sue, the complainant may bring a civil action under this
chapter."

[14] Although Defendants refer to the claims against
Defendants Acob and Tate as the "aiding and abetting claims",
Count IV of the Second Amended Complaint, as interpreted by the
4/5/12 Order, alleges that Defendant Tate "aided, abetted,
incited, compelled, and coerced" Defendant Acob "to commit
discriminatory practices forbidden by Haw. Rev. Stat. Chap. 378,
or attempted to do so."  See Second Amended Complaint at ¶ 132;
4/5/12 Order, 2012 WL 1158742, at *6.  Insofar as the claims
(continued...)

35

Charges within the requisite 180-day period, this Court has already ruled upon that issue.  See 8/31/12 Order, 2012 WL 3801728, at *15.  The Court did not expressly rule upon the timeliness of Plaintiff's claims challenging her termination, because that issue was not before the Court.  See id. at *9.  The July 2009 Charge states that Plaintiff was terminated on June 23, 2009, and the EEOC received the charge on July 9, 2009.  [Tipton Decl., Exh. C at 1, 6.]  Thus, the Court CONCLUDES that Plaintiff timely filed the July 2009 Charge within the 180-day time limitation for Chapter 378 claims based on her termination.

Third, Defendants argue that Plaintiff failed to exhaust her administrative remedies as to her § 378-2(3) claims because neither Defendant Acob nor Defendant Tate was a named respondent in any of the Charges.  Each of Plaintiff's Charges only names the County as the "Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That [She] Believe[s] Discriminated Against [Her] . . . ."  [Tipton Decl., Exhs. A-C.]  In determining whether Plaintiff's Charges can be construed as exhausting her § 378-2(3) claims against the unnamed Defendant Acob and Defendant Tate, this Court considers the Ninth Circuit's analysis

---

[14](...continued)
against Defendants Acob and Tate are not limited to aiding and abetting, the Court will refer to them as the "§ 378-2(3) claims".

in B.K.B. v. Maui Police Department, 276 F.3d 1091 (9th Cir.

2002) (holding that the plaintiff preserved her Haw. Rev. Stat.

Chapter 378 claims of sexual harassment even though she failed to

include specific allegations of sexual harassment on her HCRC

form).  The Hawai`i Supreme Court applied the B.K.B. analysis in

French, noting that, in B.K.B.:

> The Court of Appeals went on to state that
> the language of Equal Employment Opportunity
> Commission charges should be construed "'with the
> utmost liberality since they are made by those
> unschooled in the technicalities of formal
> pleading." [B.K.B., 276 F.3d] at 1100 (quoting
> Kaplan v. Int'l Alliance of Theatrical & Stage
> Employees, 525 F.2d 1354, 1359 (9th Cir. 1975)).
> "The crucial element of a charge of discrimination
> is the factual statement therein." Id.  In this
> light, the Court of Appeals set forth several
> factors to consider:
>
>> In determining whether a plaintiff has
>> exhausted allegations that she did not
>> specify in her administrative charge, it is
>> appropriate to consider such factors as the
>> alleged basis of discrimination, dates of
>> discriminatory acts specified within the
>> charge, perpetrators of discrimination named
>> in the charge, and any locations at which
>> discrimination is alleged to have occurred.
>> In addition, the court *should consider*
>> *plaintiff's civil claims to be reasonably*
>> *related to allegations in the charge to the*
>> *extent that those claims are consistent with*
>> *the plaintiff's original theory of the case*.
>
> Id. (emphasis added).  The Ninth Circuit reasoned
> that complainants who file discrimination charges
> are "laypersons and should not be held to a higher
> standard of legal pleading" than that employed
> with respect to a civil complaint.  Id. at 1103.

French, 105 Hawai`i at 476, 99 P.3d at 1060.  This Court notes

that the Hawai`i Supreme Court applied the <u>B.K.B.</u> analysis even

though <u>B.K.B.</u> dealt with a Chapter 378 sexual harassment claim,

which does not have an exhaustion requirement.  <u>See B.K.B.</u>, 276

F.3d at 1109.

In addition, as stated in the 8/31/12 Order, "the

Hawai`i Supreme Court has held that, in interpreting § 378-2,

federal case law interpreting Title VII is persuasive, but not

controlling."  2012 WL 3801728, at *14 (citing <u>Arquero v. Hilton</u>

<u>Hawaiian Village LLC</u>, 104 Hawai`i 423, 429-30, 91 P.3d 505,

511-12 (2004)).  "Generally, Title VII claimants 'may only sue

[parties] named in the EEOC charge because only those [parties]

named had an opportunity to respond to the charges during the

administrative proceedings.'"  <u>Nowick v. Gammell</u>, 351 F. Supp. 2d

1025, 1036 (D. Hawai`i 2004) (alterations in <u>Nowick</u>) (quoting

<u>Sosa v. Hiraoka</u>, 920 F.2d 1451, 1458 (9th Cir. 1990)).  There

are, however, several exceptions to this general rule:

> First, Title VII claims may be brought in a
> lawsuit against persons not named in an EEOC
> complaint "as long as they were involved in the
> acts giving rise to the EEOC claims."  <u>Wrighten v.</u>
> <u>Metro. Hosp., Inc.</u>, 726 F.2d 1346, 1352 (9th Cir.
> 1984); <u>Chung [v. Pomona Valley Cmty. Hosp.]</u>, 667
> F.2d 788, 792 (9th Cir. 1982). . . .
>
> Second, a Title VII claimant may also sue an
> unnamed party if "facts in the EEOC charge are
> alleged from which it could be inferred that the
> unnamed party violated Title VII."  <u>Wangler v.</u>
> <u>Haw. Elec. Co.</u>, 742 F. Supp. 1458, 1462 (D.
> Hawai`i 1990) (citing <u>Bernstein v. Aetna Life &</u>
> <u>Casualty</u>, 843 F.2d 359, 362 (9th Cir. 1988));
> <u>Bratton v. Bethlehem Steel Corp.</u>, 649 F.2d 658,

666 (9th Cir. 1980). . . .

Third, "if the respondent named in the EEOC charge is a principal or agent of the unnamed party, or if they are 'substantially identical parties,' suit may proceed against the unnamed party." Sosa, 920 F.2d at 1460 (quoting 2 A. Larson, Employment Discrimination § 49.11(c)(2)). . . .

Fourth, "if the unnamed party had notice of the EEOC conciliation efforts and participated in the EEOC proceedings, the suit may proceed against the unnamed party." Id. (citing 2 A. Larson at § 49.11(c)(2)). . . .

Fifth, "where the EEOC or the [previously unnamed] defendants themselves 'should have anticipated' that the claimant would name those defendants in a Title VII suit, the court has jurisdiction over those defendants even though they were not named in the EEOC charge." Sosa, 920 F.2d at 1459 (quoting Chung v. Pomona Valley Community Hosp., 667 F.2d 788, 792 (9th Cir. 1982)). . . .

Id. at 1036-37 (some alterations in Nowick).

Defendant Acob clearly falls within the first and third exceptions. In her EEOC EAS Questionnaire, Plaintiff listed Defendant Acob as one of the persons responsible for the alleged discrimination against her. [Tipton Decl., Exh. F at 2.] This is the type of document, besides the administrative charge itself, that a court may consider in determining the scope of an administrative action. See French, 105 Hawai`i at 476, 99 F.3d at 1060 ("Appellant's charge form, the 'HCRC investigator's notes,' and 'List of Important Dates' addendum to the HCRC Pre-Complaint Questionnaire are relevant."). The Charges

39

themselves refer to "Respondent (Benjamin Acob)", "Respondent
(Ben Acob)" and "Respondent (Mr. Acob)" in their statements of
the facts supporting Plaintiff's discrimination claims.  <u>See,
e.g.</u>, Tipton Decl, Exh. A at 4; <u>id.</u>, Exh. B at 1; <u>id.</u>, Exh. C at
2.  Further, in terms of personnel decisions within the
Department, the County and Defendant Acob are "substantially
identical parties" because, as Defendants have repeated pointed
out, Defendant Acob is the only person who had the authority to
hire and fire DPAs.  [Mem. in Supp. of Motion at 13 (citing
Tipton Decl., Exh. S (excerpts of Charter, County of Maui) at
§ 8-3.3).]  This Court therefore CONCLUDES that Plaintiff may
pursue her § 378-2(3) claims against Defendant Acob, even though
he was not a named respondent in the Charges.

     Whether Plaintiff may pursue her § 378-2(3) claims
against Defendant Tate is a closer question.  Plaintiff did not
list Defendant Tate as one of the responsible persons in her EEOC
EAS Questionnaire.  [Tipton Decl., Exh. F at 2.]  Defendants make
much of the fact that the July 2009 Charge, which addressed
Plaintiff's termination, did not reference Defendant Tate.  The
July 2009 Charge, however, states:

> Respondent has engaged in wrongful termination of
> my employment as a deputy prosecuting attorney.
> My termination is based upon Respondent's
> retaliation against me since the filing of EEOC
> charge 486-2008-00510 and EEOC Charge 486-2009-
> 00353.  I believe I have been discriminated
> against based upon my sex (female) and in
> retaliation to opposing discrimination in

> violation of Title VII of the Civil Rights Act of 1964, as amended, and in retaliation for opposing discrimination as a whistleblower.

[Id., Exh. C at 7.]  Thus, this Court construes the July 2009 Charge as alleging that Plaintiff's termination constituted sex discrimination and retaliation in light of the acts alleged in all of the Charges.  This Court has previously ruled that Plaintiff may rely upon evidence of time-barred incidents to provide background for her timely claims, as long as Plaintiff's evidence is admissible.  8/31/12 Order, 2012 WL 3801728, at *16. The October 2008 Charge alleges multiple actions by Defendant Tate, [Tipton Decl., Exh. A,] including Defendant Tate's alleged discriminatory acts that occurred within 180-days of the filing of the October 2008 Charge.  8/31/12 Order, 2012 WL 3801728, at *13, *15.  For example, the October 2008 Charge alleges:

> Timothy T. Tate reported to Respondent just prior to my giving EEOC testimony against him, Ms. Murakami, and Ms. Jura, that in August of 2008, I allegedly made a statement that Ms. Jura and Ms. Murakami were "idiots and morons" which according to Respondent amounted to an EEOC "protected class" charge of discrimination.
>
> On August 27, 2008 . . . , I informed Respondent that I considered the actions of Respondent and the actions of Timothy T. Tate to be harassing and retaliatory and that they were on notice that I would be filing a complaint.

[Tipton Decl., Exh. A at 5.]  Based upon the foregoing, this Court FINDS that Defendant Tate was involved in the acts giving rise to the claims in the Charges, and this Court CONCLUDES that

Plaintiff may pursue her § 378-2(3) claims against Defendant Tate, even though he was not a named respondent in the Charges.

Finally, Defendants argue that Plaintiff did not exhaust her administrative remedies as to her § 378-2(3) claims because "the 'aid and abet' allegation was not contained in any of her three EEOC charges." [Mem. in Supp. of Motion at 6-7.] The Charges expressly allege discrimination based on sex, retaliation, and whistleblower activity. [Tipton Decl., Exh. A at 1, Exh. B at 1, Exh. C at 1.]

As previously noted, this Court must consider whether Plaintiff's § 378-2(3) claims are "reasonably related to allegations in the charge to the extent that those claims are consistent with" Plaintiff's sex discrimination and retaliation, and whistleblower claims. See French, 105 Hawai`i at 476, 99 P.3d at 1060 (emphasis omitted) (quoting B.K.B., 276 F.3d at 1100). In French, the Hawai`i Supreme Court held that, under the circumstances, the plaintiff's civil complaint alleging gender discrimination was inconsistent with her original theories of age and disability discrimination which she presented to the HCRC. Id. at 477, 99 F.3d at 1061. Gender discrimination is a separate and distinct theory from age and disability discrimination. In contrast, Plaintiff's § 378-2(3) claims do not present a separate and distinct theory from her other Chapter 378 claims. Defendants Acob's and Tate's alleged acts, which form the basis

42

of Plaintiff's § 378-2(3) claims, are merely the manner in which

the County allegedly accomplished the alleged discrimination

against Plaintiff; they do not constitute a different type of

discrimination from the claims expressly set forth in the

Charges.  Plaintiff's employer, the County, acted through

Defendant Acob, its Prosecuting Attorney and the individual with

the authority to hire and fire the DPAs, including Plaintiff.

Plaintiff alleges that Defendant Tate "aided, abetted, incited,

compelled, and coerced" Defendant Acob to discriminate against

her in violation of Chapter 378.  [Second Amended Complaint at

¶ 132.]  Defendants argue that neither the Charges nor the EAS

Questionnaire allege "any communications between Acob and Tate to

suggest aid [sic] and abetting" or "even a hint of conspiracy or

plotting together . . . ."  [Mem. in Supp. of Motion at 9.]

        Direct communications about the discrimination, a

conspiracy, or a plot are not the only ways to establish a § 378-

2(3) claim.  Section 378-2(3) includes the prohibition against

inciting a discriminatory practice.  The term "incite" means

"[t]o provoke or stir up (someone to commit a criminal act, or

the criminal act itself)."  Black's Law Dictionary 830 (9th ed.

2009).[15]  A reasonable interpretation of the Charges is that

_____

        [15] Although neither Chapter 378 nor Hawai`i case law defines
"incite", the Hawai`i appellate courts commonly cite to Black's
Law Dictionary for the definitions of terms.  See, e.g., Berry v.
Berry, 127 Hawai`i 243, 259 n.38, 277 P.3d 968, 984 n.38 (2012);
                                        (continued...)

Defendant Tate, through his allegedly improper internal complaint about Plaintiff and through his other actions, incited Defendant Acob to discriminate against Plaintiff.  In light of the many ways Plaintiff could establish a § 378-2(3) claim and reading the factual allegations in the Charges as a whole, this Court concludes that Plaintiff's § 378-2(3) claims are "reasonably related to allegations in the charge to the extent that those claims are consistent with" the sex discrimination and retaliation, and whistleblower claims Plaintiff expressly alleged against the County.  The Court therefore CONCLUDES that the Charges were sufficient to exhaust Plaintiff's administrative remedies as to her timely § 378-2(3) claims.  Defendants' Motion is DENIED as to the exhaustion issue.

## III. <u>Burden on Summary Judgment</u>

Defendants also argue that Defendants Acob and Tate are entitled to summary judgment on the remaining § 378-2(3) claims because Plaintiff has not identified any genuine issues of

---

[15](...continued)
<u>Hart v. Ticor Title Ins. Co.</u>, 126 Hawai`i 448, 450 n.2, 272 P.3d 1215, 1217 n.2 (2012); <u>Riethbrock v. Lange</u>, 128 Hawai`i 1, 17-18, 282 P.3d 543, 559-60 (2012).

The Court notes that the Hawai`i appellate courts have recognized that a person can incite a discriminatory decision by giving advice.  <u>See</u> <u>Lales v. Wholesale Motors Co.</u>, No. 28516, 2012 WL 1624013, at *12 (Hawai`i Ct. App. May 9, 2012) (discussing <u>Schefke v. Reliable Collection Agency, Ltd.</u>, 96 Hawai`i 408, 442, 32 P.3d 52, 86 (2001)).  Giving advice, however, is merely one example of inciting discrimination; the courts have not limited the manner in which a plaintiff can establish the incitement of a discriminatory action.

material fact and they are entitled to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56(a) (stating that a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").  Defendants essentially contend that neither Defendant Acob nor Defendant Tate committed any discriminatory actions against Plaintiff and that the only adverse employment action she suffered was her termination for the Sims matter.  Defendants assert that they have established a legitimate, non-discriminatory reason for her termination, and Plaintiff has not established a genuine issue of material fact as to whether that legitimate reason was pretextual.

The <u>McDonnell Douglas</u> burden-shifting analysis applies to § 378-2(3) claims.  <u>McNally v. Univ. of Hawai`i</u>, 780 F. Supp. 2d 1037, 1060 (D. Hawai`i 2011) (citing <u>Schefke v. Reliable Collection Agency, Ltd.</u>, 96 Hawai`i 408, 426, 32 P.3d 52, 70 (2001)).  In <u>Schefke</u>, the Hawai`i Supreme Court noted that it had "adopted the burden-shifting analysis set forth by the United States Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-03, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), in other types of HRS § 378-2 discrimination cases."  96 Hawai`i at 425, 32 P.3d at 69 (citations omitted).  In the context of a claim under § 378-2(2), the Hawai`i Supreme Court set forth the <u>McDonnell Douglas</u> burden-shifting analysis as follows:

Consistent with the approach under Title VII
and the foregoing cases involving HRS § 378-2, we
hold that a retaliation claim under HRS § 378-2(2)
is subject to the following three-part test: (1)
the plaintiff must first establish a prima facie
case of such retaliation . . . ; (2) if the
plaintiff establishes a prima facie case of
retaliation, the burden shifts to the defendant to
provide a legitimate, nondiscriminatory reason for
the adverse employment action, see [Ray v.
Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000)];
Shoppe [v. Gucci Am., Inc.], 94 Hawai`i [368,]
378-79, 14 P.3d [1058,] 1059-60 [(2000)]; and (3)
if the defendant articulates such a reason, the
burden shifts back to the plaintiff to show
evidence demonstrating that the reason given by
the defendant is pretextual.  See Ray, supra;
Shoppe, 94 Hawai`i at 379, 14 P.3d at 1060. . . .

Schefke, 96 Hawai`i at 426, 32 P.3d at 70.

First, Defendants argue that some of Plaintiff's § 378-
2(3) claims allege that Defendant Acob aided and abetted himself
and Plaintiff cannot prevail as a matter of law on those claims.
See Maizner v. Haw., Dep't of Educ., 405 F. Supp. 2d 1225, 1239
(D. Hawai`i 2005) (ruling that the plaintiff failed to state a
§ 378-2(3) claim where he alleged that a defendant incited,
compelled, or coerced himself into discriminatory practices
because "[t]here must be at least two persons (someone who
incites, compels, or coerces, and some other person who is
incited, compelled, or coerced)").  This Court, however, has
already ruled that "the Second Amended Complaint, read as a
whole, sufficiently identifies: 1) Defendant Tate as the person
who incited, compelled, or coerced the discriminatory actions
against Plaintiff; and 2) Defendant Acob as the person who was

46

incited, compelled, or coerced into taking discriminatory actions
against Plaintiff." 4/5/12 Order, 2012 WL 1158742, at *6. Thus,
this Court construes the Second Amended Complaint's allegations
of discriminatory actions by Defendant Acob as actions which
Defendant Tate allegedly incited, compelled, or coerced.

        As to whether Plaintiff has established her prima facie
case for her § 378-2(3) claims, the Court recognizes that it is a
close question, but the Court emphasizes that it must view the
record in the light most favorable to Plaintiff. See Miller v.
Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006)
(stating that, on a summary judgment motion, "the nonmoving
party's evidence is to be believed, and all justifiable
inferences are to be drawn in that party's favor" (citations,
quotation marks, and brackets omitted)). Under this standard,
and considering the record as a whole, including the time-barred
incidents which this Court has ruled may provide relevant
background information for the timely incidents, the Court FINDS
that there are genuine issues of material fact which preclude
summary judgment on Plaintiff's § 378-2(3) claims. In
particular, there are genuine issues of material fact as to
whether some of the conduct that Plaintiff has alleged, such as
Defendant Tate's internal complaint about the "idiots and morons"
comment and the ensuing investigation, resulted in an adverse
employment action. Defendants have presented legitimate, non-

47

discriminatory reasons for Defendant Acob's and Defendant Tate's actions, including the "idiots and morons" complaint, the investigation, and Plaintiff's termination.  There are, however, genuine issues of material fact as to whether these stated reasons were merely pretext.  In the Court's view, the ultimate determination of these issues will depend upon assessments of credibility, the weighing of the evidence, and the determination of what inferences may be reasonably drawn from the facts.  As this Court recognized in the 8/31/12 Order, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions" and are not appropriate for summary judgment.  2012 WL 3801728, at *20-21 (quoting Ingalls v. Gov't Emps. Ins. Co., Civil Nos. 11-00244 JMS/RLP, 11-00488 JMS/KSC, 2012 WL 2873562, at *7 n.14 (D. Hawai`i July 12, 2012) (some citations and quotation marks omitted)).

Although this Court recognizes that it is a close question whether Defendants Acob and Tate are entitled to summary judgment on Plaintiff's § 378-2(3) claims and this Court emphasizes that its ruling is not necessarily an indication that Plaintiff is likely to prevail on these claims at trial, this Court CONCLUDES that Defendants Acob and Tate have not established that they are entitled to judgment as a matter of law.

## CONCLUSION

On the basis of the foregoing, Defendants' Motion for Summary Judgment on Aiding and Abetting Claims, filed July 6, 2012, is HEREBY DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, October 30, 2012.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**MARIE J. KOSEGARTEN V. THE DEPARTMENT OF THE PROSECUTING ATTORNEY, ET AL; CIVIL NO. 10-00321 LEK-KSC; ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON AIDING AND ABETTING CLAIMS**