IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

MARIE J. KOSEGARTEN,       )    CIVIL NO. 10-00321 LEK-KSC
                           )
          Plaintiff,       )
                           )
     vs.                   )
                           )
THE DEPARTMENT OF THE      )
PROSECUTING ATTORNEY, ET AL., )
                           )
          Defendants.      )
_____ )

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS OF
DISCRIMINATION BASED ON GENDER AND SEXUAL ORIENTATION AND
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
<u>SUMMARY JUDGMENT ON CLAIMS OF RETALIATION AND DEFAMATION</u>**

On September 24, 2012, Defendants the County of Maui

("the County"), Benjamin M. Acob, in his individual capacity

("Defendant Acob"), and Timothy T. Tate, in his individual

capacity ("Defendant Tate", all collectively, "Defendants") filed

their Motion for Summary Judgment on Plaintiff's Claims of

Discrimination Based on Gender and Sexual Orientation

("Discrimination Motion").  [Dkt. no. 177.[1]]  On September 26,

2012, Defendants filed their Motion for Summary Judgment on

Claims of Retaliation and Defamation ("Retaliation Motion").

[Dkt. no. 184.]  Plaintiff Marie J. Kosegarten ("Plaintiff")

filed her memorandum in opposition to the Discrimination Motion

_____

[1] On September 26, 2012, Defendants filed a new memorandum
in support of the Discrimination Motion to correct a problem with
the signature on the original memorandum.  [Dkt. no. 181.]

("Discrimination Memorandum in Opposition") and her memorandum in opposition to the Retaliation Motion ("Retaliation Memorandum in Opposition") on November 5, 2012.  [Dkt. nos. 194, 197.] Defendants filed their replies on September 17, 2012.  [Dkt. nos. 173, 175.]  On November 23, 2012, this Court found the instant motions suitable for disposition without a hearing pursuant to Rule LR7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawai`i ("Local Rules"). [Dkt. no. 187.]  After careful consideration of the motions, supporting and opposing memoranda, and the relevant legal authority, Defendants' Discrimination Motion and Defendants' Retaliation Motion are HEREBY GRANTED IN PART AND DENIED IN PART for the reasons set forth below.

## BACKGROUND

This Court has set forth the factual and procedural history of this case in numerous other orders, including the Order Denying Defendants' Motion for Partial Summary Judgment on the Issue of Qualified Immunity for Individual Defendants and Granting in Part and Denying in Part Defendants' Motion for Summary Judgment on Time-Barred Claims, filed August 31, 2012 ("8/31/12 Order"), [dkt. no. 172,[2]] and the Order Denying Defendants' Motion for Summary Judgment on Aiding and Abetting Claims, filed October 30, 2012 ("10/30/12 Order"), [dkt. no.

---

[2] The 8/31/12 Order is also available at 2012 WL 3801728.

193,[3]] which this Court incorporates by reference.

I.   **Discrimination Motion**

In addition to evidence already discussed in prior orders, Defendants emphasize the following disciplinary actions that Defendant Acob took against other deputy prosecuting attorneys ("DPAs") during his tenure as the County's prosecuting attorney: termination of Jackie Jura for performance issues; termination of Robert Rivera for insubordination; termination of Cynthia Sims for performance issues and insubordination; allowing Yukari Murakami and James Masters to resign in lieu of termination; and demoting and suspending John D. Kim for having a case backlog and for failing to notify another attorney about changes to a plea agreement.  [Mem. in Supp. of Discrimination Motion at 8-9 (citing Defs.' Concise Stat. in Supp. of Discrimination Motion, filed 9/24/12 (dkt. no. 178) ("Defs.' Discrimination CSOF"), Decl. of Benjamin M. Acob ("Acob Discrimination Decl.") at ¶¶ 27-28).]  Thus, Defendants argue that Defendant Acob terminated people without regard to their gender.  [Id. at 10.]

Defendants also emphasize the following promotions that Defendant Acob made during his tenure as prosecuting attorney: promoting Jerrie Sheppard, a female, to felony screening supervisor on March 17, 2008 to replace John Tam; and promoting

---

[3] The 10/30/12 Order is also available at 2012 WL 5381799.

Melinda Mendes to circuit court supervisor in July 2008 to replace Kim.  [Id. at 9 (citing Acob Discrimination Decl. at ¶ 28).]

Mendes stated in her declaration that, during Defendant Acob's tenure as prosecuting attorney, she witnessed him promote and discipline both men and women.  [Defs.' Discrimination CSOF, Decl. of Melinda Mendes ("Mendes Discrimination Decl.") at ¶ 5.] Defendants state that other DPAs and staff considered Defendant Acob's management style oppressive, but none believed that his style was based on gender.  [Mem. in Supp. of Discrimination Motion at 11-12 (quoting Defs.' Discrimination CSOF, Decl. of Rebecca Becker at ¶ 10; id., Decl. of Paula Heiskell at ¶ 6; id., Decl. of Carol Kramer ("Kramer Discrimination Decl.") at ¶ 6; id., Decl. of Cindy Lee ("Lee Discrimination Decl.") at ¶ 7; id., Decl. of Richard Minatoya ("Minatoya Discrimination Decl.") at ¶ 8; id., Decl. of Jerrie Sheppard ("Sheppard Discrimination Decl.") at ¶ 7).]  Sheppard, a close friend of Plaintiff, who still socializes with her, felt that Defendant Acob targeted Plaintiff and Rivera.  [Sheppard Discrimination Decl. at ¶¶ 3, 7.]

Defendants argue that Plaintiff only assumes that she was treated differently for similar misconduct by her male coworkers, Rivera and Kim.  Defendants emphasize that Plaintiff admitted during her deposition that she did not know why they

4

were demoted.  [Mem. in Supp. of Discrimination Motion at 13 (citing Defs.' Discrimination CSOF, Decl. of Cheryl Tipton ("Tipton Discrimination Decl."), Exh. D (excerpts of trans. of 6/22/11 depo. of Plaintiff) at 184-85).]  Defendants argue that Kim was not disciplined for insubordination, and Plaintiff has not identified any evidence that Kim received preferential treatment because he was male.  In fact, Defendant Acob replaced Kim with a female DPA.  [Id. at 13-14.]  Rivera was demoted on February 4, 2008 because, in October 2007, he disclosed confidential information from a management meeting to Defendant Tate.  In February 2010, Defendant Acob terminated Rivera for insubordination.  [Acob Discrimination Decl. at ¶ 28.]  According to Rivera, he disagreed with what Defendant Acob was doing, and Defendant Acob considered that insubordination.  [Tipton Discrimination Decl., Exh. A (excerpts of trans. of 2/7/12 depo., vol. I, of Robert Rivera) at 8.]

    Defendants argue that Defendant Acob terminated Plaintiff for a legitimate reason - she was insubordinate in the Sims matter.  [Mem. in Supp. of Discrimination Motion at 15.] Defendants point out that Sims submitted a letter of resignation in October 2008, but in December 2008 she asked to rescind her resignation.  After a January 8, 2009 meeting he had with Sims and Plaintiff, Defendant Acob agreed to allow Sims to continue her employment if she agreed to improve her attendance and do her

work.  Sims agreed.  [Acob Discrimination Decl. at ¶¶ 21-22; id.,
Exh. O (Sims' resignation letter).]  After that meeting and
before the unapproved May 15, 2009 absence, Sims took either sick
leave or vacation on thirteen of nineteen Friday workdays.  [Acob
Discrimination Decl. at ¶ 22.]

On May 19, 2009, Defendant Acob met with Plaintiff to
discuss Sims's unauthorized leave and other performance issues.
Defendant Acob informed Plaintiff that he considered Sims "AWOL"
and directed Plaintiff to counsel Sims in light of her history of
attendance problems and her failure to honor her promises to
improve.  Plaintiff was resistant and expressed her disapproval,
but stated that she would talk to Sims.  Plaintiff, however, said
that she would not write Sims up.  [Acob Discrimination Decl. at
¶ 24; Tipton Discrimination Decl., Exh. R-2 (trans. of 5/19/09
meeting) at 21-25, 30.[4]]  At the meeting, Defendant Acob tried to
explain to Plaintiff that it was important for her to write up
her supervisees if her attempts to talk to them about an issue
failed to resolve the problems.  [Tipton Discrimination Decl.,
Exh. R-2 at 44-45.]  Defendant Acob also raised this issue in his
September 2008 performance evaluation of Plaintiff, noting that
written documentation would support formal discipline if that

_____

[4] Defendants state that, without Defendant Acob's knowledge,
Plaintiff recorded the May 19, 2009 meeting, as well as their
meetings on April 2, 2009, and June 22 and 23, 2009.  [Mem. in
Supp. of Discrimination Motion at 16 n.4; Acob Discrimination
Decl. at ¶¶ 17, 25.]

became necessary for the supervisee.  [Acob Discrimination Decl. at ¶ 29; id., Exh. S (September 2008 evaluation) at 3.] Defendants also provided testimony from others in the Department of the Prosecuting Attorney ("the Department") who observed Plaintiff's resistence to disciplining her subordinates. [Minatoya Discrimination Decl. at ¶ 7; Sheppard Discrimination Decl. at ¶ 13; Defs.' Discrimination CSOF, Decl. of Peter Hanano ("Hanano Discrimination Decl.") at ¶ 7.]

        Plaintiff drafted a memorandum documenting her informal counseling session with Sims during which she addressed the concerns that Defendant Acob raised.  Plaintiff and Sims signed the memorandum and dated it June 1, 2009.  The memorandum includes a list of the concerns Defendant Acob instructed Plaintiff to raise with Sims, but it also includes Plaintiff's statement that: "As I do not feel that it is appropriate for management to be able to restrict leave to certain days for certain employees, I am not making a formal write-up in this case." [Acob Discrimination Decl., Exh. H at 5.]  Defendant Acob determined that Plaintiff's actions effectively reversed the corrective action that he instructed Plaintiff to impose upon Sims.  [Id., Exh. J.]  Defendants therefore argue that Defendant Acob had a legitimate, non-discriminatory reason to terminate Plaintiff's at-will employment.  [Mem. in Supp. of Discrimination Motion at 19 (citing Acob Discrimination Decl. at ¶ 32).]

Defendants argue that there is no evidence that Defendant Acob's stated reason was a pretext for gender discrimination.  In fact, when Plaintiff wrote an e-mail to the Equal Employment Opportunity Commission ("EEOC") investigator about amending her charges to include a claim based on her termination, she stated that her termination was based on retaliation and whistleblowing. She did not mention gender discrimination.  [Id. at 19-20 (citing Tipton Discrimination Decl., Exh. K).]

        Defendants also argue that Plaintiff has not established a prima facie case of discrimination in the terms of her employment or a prima face case of a hostile work environment based on gender.  Defendants emphasize that this Court has ruled that Plaintiff cannot base her claims on time-barred incidents, and Defendants assert that, as to each of the timely incidents,[5]

_____

        [5] Defendants state that the timely incidents are: the failure to name Plaintiff as the manager of the year in 2008; the August 25, 2008 meeting regarding a picture left behind by a former DPA; Defendant Tate's statements to management and other Department personnel about Plaintiff's derogatory comments regarding other DPAs; management's investigation into Defendant Tate's report; Plaintiff's allegation that, during a meeting related to the investigation, management warned her that she should be careful during her EEOC testimony because it could negatively impact her employment; the incident involving the drug team training led by Defendant Tate and two other DPAs; allegations that Plaintiff was threatened with discipline for her failure to discipline Sims; Defendant Tate's encouraging Jura and Murakami to file EEOC complaints against Plaintiff; Plaintiff's limited pay raises and lack of awards and commendations while Defendant Acob was the County's prosecuting attorney; the alleged negative marks in Plaintiff's personnel file; and Plaintiff's termination.  [Mem. in Supp. of Discrimination Motion at 20-21.]

Plaintiff has failed to identify any evidence that the incident related to Plaintiff's gender.  Further, none of the timely incidents constitute adverse employment actions.  [Id. at 20-21.]

Specifically, as to the manager of the year award, Defendants argue that Plaintiff's non-selection was not an act of gender discrimination, as evidenced by the facts that: in 2008 both a male and a female were nominated but neither received the award for legitimate, non-discriminatory reasons; and, in 2007 and 2009, the award went to females.  [Acob Discrimination Decl. at ¶ 30.]  As to the August 27, 2008 meeting during the course of the investigation into Defendant Tate's complaint regarding Plaintiff's derogatory comments about Jura, Murakami, and Rivera, Defendants emphasize that Defendant Acob was not present at that meeting, and they deny that either Wayne Steel or Peter Hanano, who were present, tried to influence Plaintiff's EEOC testimony in any way.  In fact, Plaintiff received a standard email about such testimony, instructing her to testify truthfully.  [Acob Discrimination Decl. at ¶ 12; Hanano Discrimination Decl. at ¶ 11; Defs.' Discrimination CSOF, Decl. of Wayne Steel ("Steel Discrimination Decl.") at ¶¶ 4-5; Steel Discrimination Decl., Exh. T.]

As to the drug training, Defendants emphasize Plaintiff's inconsistent positions on this incident, and they reiterate the evidence related to this matter which this Court

discussed in its prior orders.  [Mem. in Supp. of Discrimination Motion at 22-24.]  Defendants emphasize that there is no evidence that the scheduling of the training or the selection of the training leaders had anything to do with Plaintiff.  [Id. at 25 (citing Acob Discrimination Decl. at ¶ 25).]

On April 2, 2009, three days after the training, Defendant Acob met with Plaintiff to discuss her request that she not have any further contact with Defendant Tate.  Defendant Acob hoped that Plaintiff would move on because the internal investigation into Defendant Tate's complaint had been completed about fifteen months prior, and Plaintiff had been informed that the ultimate finding was that no discrimination occurred. Defendant Acob explained that he wanted all DPAs to attend the drug training so that they could benefit from the questions and answers that came up.  In the context of Plaintiff's request that she not have any further contact with Defendant Tate, Defendant Acob did tell Plaintiff that she had to "get over it," but he also told her that, if there were any other incidents with Defendant Tate, she should report them to him and he would handle them.  [Acob Discrimination Decl. at ¶ 17; id., Exh. R-1 at 8-10, 12.]  Defendants emphasize that, although the Second Amended Complaint alleges that Defendant Acob threatened disciplinary action against Plaintiff, including making Defendant Tate her supervisor, the transcript of the April 2, 2009 meeting proves

this did not occur.  Defendant Acob merely stated that, if Plaintiff continued to be unable to work with Defendant Tate, it could negatively affect the work and there would be consequences. [Mem. in Supp. of Discrimination Motion at 26-27 (citing Second Amended Complaint at ¶¶ 58-72; Acob Discrimination Decl., Exh. R-1 at 10, 29).]

As to the allegation that Defendant Tate encouraged Jura and Murakami to file EEOC complaints against Plaintiff, Defendant Tate denies doing so.  [Tipton Discrimination Decl., Exh. Y (excerpts of trans. of 7/2/12 depo. of Defendant Tate) at 107.]  As to the alleged negative marks in Plaintiff's personnel file, Defendants contend that the only negative marks relate to the Sims incident, which was the basis of Plaintiff's termination.  [Acob Discrimination Decl. at ¶ 34.]

Defendants also argue that there is no evidence to support Plaintiff's allegation that the male who was promoted to her position after her termination, Kenton Werk, was not qualified and was promoted merely because of his gender. Defendants point out that two males were demoted and two females were promoted during the period in question, and Plaintiff herself had previously acknowledged that Werk was an excellent employee.  Defendants assert that he was promoted based on merit. [Mem. in Supp. of Discrimination Motion at 28-29 & n.7 (citing Acob Discrimination Decl., Exh. X at 2; Acob Discrimination Decl.

at ¶ 35).]

Next, Defendants argue that the timely incidents alleged in the Second Amended Complaint are not severe or pervasive enough to establish a hostile work environment based on gender, and Defendants argue that Plaintiff has not identified any physical or verbal harassment based on gender.  Thus, Defendants contend that Plaintiff has not established a prima facie case for a hostile work environment claim under either federal or state law.  [Id. at 29-32.]

Finally, Defendants argue that Plaintiff has not properly pled, and cannot prevail as a matter of law, on claims for violations of the Fourteenth Amendment and 42 U.S.C. § 1981. [Id. at 33.]  This Court, however, notes that the Second Amended Complaint does not set forth such claims.

For all of these reasons, Defendants urge this Court to "dismiss" Plaintiff's federal and state claims for discrimination based on gender and sexual orientation.  [Id. at 34.]

## A.    Discrimination Memorandum in Opposition

In her Discrimination Memorandum in Opposition, Plaintiff argues that many of the facts which Defendants assert are undisputed are in fact in dispute: whether Defendant Tate tried to influence Plaintiff's supervision of Jura and Murakami; whether the prosecuting attorney's powers under the Charter of Maui authorized Plaintiff's termination under the facts of this

case; what transpired at an August 25, 2008 meeting regarding a framed picture belonging to a former DPA which was allegedly taken by another DPA whom Plaintiff supervised; what transpired at an August 27, 2008 meeting regarding Defendant Tate's complaint about Plaintiff's alleged derogatory statements; whether Plaintiff's EEOC complaint filed on July 9, 2009 contained allegations regarding sex discrimination; and whether the salary increases Plaintiff received on July 1, 2007 and July 1, 2008 were from Defendant Acob.  Plaintiff also argues that defense counsel Cheryl Tipton, Esq., cannot testify that Jura and Murakami filed EEOC complaints alleging that Plaintiff discriminated against them because Ms. Tipton cannot be both an advocate and a witness.  [Discrimination Mem. in Opp. at 4-6.]

Plaintiff argues that she was treated differently on the basis of her gender.  Although Defendants assert that Defendant Acob targeted both male and female Department employees and Defendants emphasize that Rivera, a male, was terminated, Plaintiff emphasizes that Rivera was not terminated for his first insubordination offense.  Unlike Plaintiff, he was demoted first.  Rivera also testified that he believed that the stated reason for his termination, his revealing confidential information from a management meeting to Defendant Tate, may not have been the only reason for his demotion.  [Id. at 8-9 (citing Pltf.'s Separate & Concise Stat. of Material Facts in Supp. of Discrimination Mem.

13

in Opp., filed 11/5/12 (dkt. no. 195) ("Pltf.'s Discrimination CSOF"), Decl. of Denise M. Hevicon ("Hevicon Discrimination Decl."), Exh. 1 at 25-26, 40).]

Defendants argue that Defendant Acob punished insubordination and incompetence, but Defendants' own declarations indicate that Department employees feared unjust and arbitrary discipline by Defendant Acob.  [Id. at 9 (citing Lee Discrimination Decl. ¶ 7).]  Carol Kramer, Plaintiff's secretary, stated that she and Plaintiff were called into meetings regarding issues that previously had not been a concern and that their division was targeted during Defendant Acob's administration. Jerrie Sheppard stated that she believed Defendant Acob targeted Plaintiff and Rivera.  [Id. (citing Kramer Discrimination Decl.; Sheppard Discrimination Decl. at ¶ 8).]  Plaintiff notes that Defendants did not submit a declaration by DPA Carson Tani to support the Discrimination Motion.  Tani, a male, started with the Department at the same time as Plaintiff.  According to Plaintiff, he told her that Defendant Acob disciplined him twice for insubordination and believes that his personnel file contains the relevant records.  [Id. at 10 (citing Pltf.'s Separate & Concise Stat. of Material Facts in Supp. of Discrimination Mem. in Opp., filed 11/5/12 (dkt. no. 195) ("Pltf.'s Discrimination CSOF"), Decl. of Marie J. Kosegarten ("Pltf. Discrimination Decl.") at ¶¶ 77-80).]

14

Plaintiff argues that the stated reason for her termination was a pretext.  She asserts that Sims was receiving feedback and comments that were consistent with the learning curve of a new DPA, and Plaintiff did not think Sims was any further behind in her duties than any other new DPA.  Plaintiff states that she counseled Sims on numerous occasions, but it was not feasible to prepare a Report of Conference for each instance. Plaintiff used her judgment in counseling her subordinates and addressed matters with Defendant Acob when necessary.  [Id. at 10-11 (citing Pltf. Discrimination Decl. at ¶¶ 46-51).]

Plaintiff states that, in 2009, Sims had serious medical issues.  Plaintiff believes Sims was diagnosed with diabetes and had episodes where she lost consciousness.  On May 15, 2009, both Plaintiff and Sims were absent from work, but Plaintiff recalls that Sims did submit a leave request form, which Plaintiff forwarded to Defendant Acob.  Plaintiff does not know what happened to the form.  Sims kept all of her leave forms in a folder on her desk, but stated that the form she submitted for May 15, 2009 had mysteriously disappeared.  [Id. at 11-12 (citing Pltf. Discrimination Decl. at ¶¶ 52-53).]  Plaintiff asserts that, when she met with Sims to discuss Sims's May 15, 2009 absence and the other issues that Defendant Acob identified, Plaintiff followed every lawful instruction that he gave her. Plaintiff, however, decided not to formally write Sims up for

15

taking vacation on May 15, 2009 and did not prohibit Sims from taking further Friday vacation days because Plaintiff believed it would constitute discrimination against Sims because it did not interfere with Sims's work or court appearances and other DPAs did not have the same restriction.  Thus, Plaintiff argues that her refusal to discipline Sims as instructed was not insubordination.  [Id. at 12-14 (citing Acob Discrimination Decl., Exh. H).]

Plaintiff next argues that she was subjected to a hostile work environment after she refused Defendant Tate's requests to promote Jura and Murakami and after she complained to management about his requests.  She asserts that she was subjected to actions "designed to harass and alarm her for no proper/legitimate purpose and [this] can only constitute a hostile work environment which sought, as its goal, to make the work place so stressful and to drive her out[.]"  [Id. at 15.] These incidents include: a meritless investigation for an EEOC violation arising from the complaint that she discriminated against Jura and Murakami because she was jealous of them;[6] the

---

[6] Plaintiff asks this Court to take judicial notice of the district judge's Order Granting Defendants' Motion for Summary Judgment, filed on October 17, 2012 in Jura v. County of Maui, et al., CV 11-00338 SOM-RLP.  The district judge concluded that Jura's allegations did not raise a cognizable Title VII claim. The defendants in Jura argued that the investigation of the allegations against Plaintiff was not based on Title VII allegations.  [Discrimination Mem. in Opp. at 15-16 (citing
(continued...)

meeting during which Hanano and Steel questioned Plaintiff about the whereabouts of a painting and told her that the discussion could result in her being disciplined or terminated; the investigation into the allegation that Plaintiff called Jura and Murakami idiots and morons and stated that she hated Rivera;[7] being forced to attend the March 2009 drug training presented by Defendant Tate;[8] and being targeted for things that previously had not been problems.  [Id. at 15-18 (citing Pltf. Discrimination Decl. at ¶¶ 2-10; Kramer Discrimination Decl. at ¶ 6).]  Defendants' declarations show that Department employees witnessed Plaintiff being "stressed, anxious and ill" during the

---

[6](...continued)
Hevicon Discrimination Decl., Exh. 2 at 16, 29).]

[7] Plaintiff emphasizes that, at the time of this investigation, Corporation Counsel had allegedly advised Defendant Acob that one instance of calling a woman a lesbian or a butch was not discrimination.  Defendant Acob, however, apparently did not consult with Corporation Counsel about whether Plaintiff's one-time statements about Jura, Murakami, and Rivera constituted retaliation.  Plaintiff also states that, on the same date as her meeting with Steel and Hanano, Marr Jones and Wang conducted a training for the Department and, when asked if this type of comment was discriminatory, they responded that it was not unless the comment was directed at a disabled person. [Discrimination Mem. in Opp. at 16-17 (citing Acob Discrimination Decl. at ¶ 9; Pltf. Discrimination Decl. at ¶ 11).]

[8] Jerrie Sheppard states in her declaration that she thought Defendant Acob would minimize Plaintiff's contact with Defendant Tate, and Sheppard stated that Plaintiff was required to attend Defendant Tate's drug training.  Another person could have provided the training information to Plaintiff or Plaintiff could have reviewed the Power Point presentation.  [Discrimination Mem. in Opp. at 17 (quoting Sheppard Discrimination Decl. at ¶ 12).]

period in question.  [Id. at 18 (citing Kramer Discrimination

Decl. at ¶ 7; Lee Discrimination Decl. at ¶ 6).]  Thus, Plaintiff

asserts that she has identified sufficient evidence of both

pervasive behavior that she was subjected to and the harm she

suffered as a result, and therefore her claims should survive

summary judgment.  [Id. at 18.]

Finally, as to the timely incidents which Defendants

allege were not related to Plaintiff's gender, [Mem. in Supp. of

Discrimination Motion at 20-21,] Plaintiff responds as follows.

She concedes that the following are not related to her gender and

do not support her claim for gender discrimination: the failure

to name her as manager of the year; the meeting regarding the

missing picture; the meeting about Defendant Tate's complaint

during which Plaintiff was told that there was an investigation

against her for a management violation and that her testimony to

the EEOC could negatively impact her employment; the events

related to the drug training; the threats of discipline for her

handling of the Sims matter; her limited pay increases and lack

of awards and commendations during the period in question; and

the negative marks in her personnel file.  Plaintiff asserts that

there is a genuine dispute for the jury regarding whether

Defendant Tate's complaint and the ensuing investigation about

derogatory comments that she allegedly made about Jura, Murakami,

and Rivera and Defendant Tate's encouraging Jura and Murakami to

file EEOC complaints against Plaintiff and Plaintiff's
termination were related to her gender. [Discrimination Mem. in
Opp. at 18-19.]

Plaintiff therefore urges this Court to deny the
Discrimination Motion as to her gender discrimination claim.

B.   **Discrimination Reply**

Defendants first argue that Plaintiff has offered no
evidence of disparate treatment or animus based on gender.
Plaintiff relies on anecdotal evidence comparing herself with
other male attorneys. Defendants argue that any differences are
merely coincidence and this Court should not consider Plaintiff's
evidence. Defendants argue that statistical evidence is
circumstantial and Plaintiff's evidence was not generated by
reliable protocols, nor does her evidence show a clear pattern of
preferential treatment. [Discrimination Reply at 1-3.] Further,
even if this Court is inclined to consider the male employees who
Plaintiff compares herself too, Defendants contend that they were
disciplined for significantly different conduct. Rivera's and
Kim's conduct was discussed *supra*. Tani was disciplined for
missing a police training that he told Defendant Acob he did not
know he was scheduled to attend. Tani also stated that he did
not believe Defendant Acob targeted women; he believed Defendant
Acob did not tolerate disagreement with his opinions. [Id. at 3-
4 (citing Defs.' Concise Stat. of Material Facts in Supp. of

19

Their Motion for Summary Judgment, Decl. of Carson Tani, filed 9/26/11 (dkt. no. 48-14) ("2011 Tani Decl.")).] Defendants also contest Plaintiff's argument that she was terminated for her first offense.  They argue that the secret recordings Plaintiff made of her meetings with Defendant Acob showed that she was argumentative and rude when she disagreed with him and she even accused him of setting her up.  Defendants state that he did not discipline Plaintiff for her shortcomings as a supervisor and instead focused their discussion on the Sims matter.  [Id. at 4 (citing Tipton Discrimination Decl., Exh. T-2 at 23).]

Defendants also argue that Plaintiff has not presented any evidence supporting her allegation that the stated reason for her termination was pretextual.  Even if this Court believes that the Sims matter was not the only reason for Plaintiff's termination, Plaintiff cannot carry her burden of proving that there was intentional discrimination to rebut evidence of Defendants' non-discriminatory purpose.  She has not presented specific, substantial evidence of animosity toward women. Plaintiff's disagreement with Defendant Acob's handling of the Sims matter is not sufficient.  [Id. at 4-6.]

As to Plaintiff's hostile work environment claim, Defendants note that, in her Retaliation Memorandum in Opposition, Plaintiff states that Count II alleges a claim for hostile work environment based upon sexual harassment.

20

[Discrimination Reply at 6-7 (citing Retaliation Mem. in Opp. at 10).]  Defendants argue that none of the timely incidents could be considered sexual harassment, and they reiterate that the incidents do not even relate to gender in the first instance. Defendants emphasize that Plaintiff conceded that the majority of the incidents are unrelated to her gender.  The only incidents remaining in dispute relate to: Defendant Tate's complaint about Plaintiff's derogatory comments about Jura, Murakami, and Rivera; the ensuing investigation; and Defendant Tate's alleged encouragement of Jura and Murakami to file EEOC complaints against Plaintiff.  [Id. at 7.]

Defendants emphasize that Plaintiff alleges that Defendant Tate's alleged encouragement occurred in September 2008, but Jura filed her EEOC complaint on January 14, 2008. Plaintiff prepared a response dated January 24, 2008 to Jura's and Murakami's EEOC complaints, but it had no reference to Defendant Tate's alleged encouragement, nor has she identified any evidence during this action.  [Id. at 7-8 (citing Hevicon Discrimination Decl., Exh. 2 at 13; Defs.' Counter-Motion for Appointment of Discovery Master, Decl. of Cheryl Tipton, Exh. 4, filed 3/21/12 (dkt. no. 112-6)[9]).]

---

[9] Exhibit 4 is Plaintiff's statement dated January 24, 2008 to Defendant Acob responding to Jura's and Murakami's EEOC complaints.

Defendants argue that the investigation into Jura's complaint was not harassment or gender discrimination because the County had a legitimate basis for the investigation and the investigation resulted in a finding of no violation.  Similarly, the investigation into Plaintiff's alleged idiots and morons statement also had a legitimate basis and was not enough to rise to the level of discrimination or retaliation.  As to the drug training, Defendants emphasize that Defendant Acob never ordered Plaintiff to attend and he never denied any request for other accommodations.  Further, Plaintiff did not interact with Defendant Tate during the training, nor did she even look at him. Thus, the training could not be an incident of sexual harassment. Even if Plaintiff's division was targeted, there were both males and females in the division, and management has a legitimate interest in addressing issues that arise in different divisions. Even viewing the evidence in the light most favorable to Plaintiff, she has not carried her burden of proof on her hostile work environment claim.  [Id. at 8-11.]

Defendants argue that Plaintiff's contact with the alleged harassers, Defendants Acob and Tate, was sporadic at best in 2008 and 2009, and Plaintiff does not dispute this.  The alleged harassment therefore cannot be characterized as frequent or severe.  Defendants also argue that there is no evidence that the alleged harassment interfered with Plaintiff's work.  [Id. at

11-12 (citing Defs.' Discrimination CSOF at ¶¶ 20, 51, 229; <u>id.</u>, Decl. of Timothy T. Tate ("Tate Discrimination Decl."), Exh. U at 1, 10).]

Finally, Defendants argue that the issues of fact which Plaintiff identified either relate to time-barred incidents or are irrelevant. [<u>Id.</u> at 12-13.] Defendants therefore urge this Court to grant the Discrimination Motion.

## II.   <u>Retaliation Motion</u>

The underlying facts relevant to the Retaliation Motion are essentially the same as those relevant to the Discrimination Motion.  In particular, Defendants emphasize that, at both the August 25, 2008 meeting regarding the missing picture and the August 27, 2008 meeting in connection with the "idiots and morons" investigation, Defendant Acob was not present and Plaintiff was not disciplined in any way.  [Mem. in Supp. of Retaliation Motion at 5 (citing Defs.' Concise Stat. of Material Facts in Supp. of Retaliation Motion, filed 9/26/12 (dkt. no. 185) ("Defs.' Retaliation CSOF"), Decl. of Peter Hanano ("Hanano Retaliation Decl.") at ¶¶ 10-11; <u>id.</u>, Decl. of Cheryl Tipton ("Tipton Retaliation Decl."), Exh. C).]  Defendants also note that Plaintiff was not selected as the manager of the year in 2008 because she had not been properly documenting issues regarding the employees under her supervision.  [<u>Id.</u> at 6 (citing Defs.' Retaliation CSOF, Decl. of Benjamin M. Acob ("Acob

23

Retaliation Decl.") at ¶ 30).]  Defendants emphasize that the
Department was not required to name a manager of the year and, in
2006, prior to Defendant Acob's tenure, no award was given.  [Id.
at 13 (some citations omitted) (citing Acob Retaliation Decl. at
¶ 30).]

Defendants point out that, when Defendant Acob
terminated Plaintiff's employment, he was unaware that she had
filed a second EEOC complaint.  Defendants note that, during his
tenure as the County's prosecuting attorney, Defendant Acob
decreased another DPA's salary and never decreased Plaintiff's
salary or otherwise disciplined Plaintiff prior to her
termination.  Further, although Plaintiff complains that she was
not promoted during his tenure, Plaintiff never applied for a
different position, nor did she request a promotion.  [Id. at 7
(citing Acob Retaliation Decl. at ¶¶ 25, 28, 32-34).]

Defendants argue that, viewing the evidence in the
light most favorable to Plaintiff, the acts she complains of were
done for legitimate, non-discriminatory reasons.  Plaintiff
reported alleged discrimination on or about October 29, 2007.
Around the same time, Defendant Tate raised concerns of
discrimination by Plaintiff.  Investigations were completed by
the end of the year and resulted in findings of no
discrimination.  [Id. at 9 (citing Second Amended Complaint at
¶¶ 29-30; Acob Retaliation Decl. at ¶ 7).]

24

As to the August 25, 2008 meeting, a former DPA under Plaintiff's supervision, James Masters, left behind a picture and authorized management to donate it to the Salvation Army. Another employee reported to Defendant Acob that she saw Sims, a DPA under Plaintiff's supervision, put the picture in her car. The employee also said that she heard Plaintiff tell Sims to do whatever she wanted.  Hanano and Steel were directed to retrieve the picture.  Thus, Defendants argue that there was a legitimate, non-discriminatory reason for the meeting.  [Id. at 10-11 (citing Hanano Retaliation Decl. at ¶ 10; id., Exhs. I, J; Acob Retaliation Decl. at ¶ 11; id., Exh. H; Tipton Retaliation Decl., Exh. C).]  Defendant Acob was the only person who had the authority to discipline or terminate Plaintiff.  He did not attend this meeting and he did not do anything to Plaintiff because of the incident with the picture.  [Id. at 11 (citing Tipton Retaliation Decl., Exh. K; Defs.' Retaliation CSOF, Decl. of David Underwood ("Underwood Retaliation Decl.") at ¶ 4; Acob Retaliation Decl. at ¶ 11).]

The August 27, 2008 meeting primarily dealt with the allegation that Plaintiff referred to Jura and Murakami as idiots and morons to DPA Tracy Jones while they were in a courtroom. Jones reported the comments to Defendant Tate, who reported them to management because of Jura's and Murakami's pending EEOC complaints.  Management conducted an investigation to determine

25

if the allegations were true and whether Plaintiff's comments were retaliation for the filing of the EEOC complaints. Defendants assert that management conducted the investigation appropriately and confidentially and that Plaintiff did not suffer any adverse employment action as a result.  Thus, Defendants argue there was a legitimate, non-discriminatory purpose for the investigation, and the investigation was not retaliatory.  [Id. at 11-12 (citing Defs. Retaliation CSOF, Decl. of Tracy Jones, Exh. A; id., Decl. of Timothy T. Tate ("Tate Retaliation Decl.") at ¶ 5; Acob Retaliation Decl. at ¶ 12; id., Exh. L).]  As noted in connection with the Discrimination Motion, Defendants deny that Hanano and Steel tried to influence Plaintiff's EEOC testimony at the August 27, 2008 meeting.  [Id. at 12.]  Defendants also deny that Hanano and Steel informed Plaintiff that she was under a management investigation. Defendants assert that all investigations are fully documented and there is no evidence of an investigation of Plaintiff for a management violation.  Defendants note that Defendant Acob's letter informing Plaintiff of the result of the investigation of Defendant Tate's complaint said nothing about another investigation for a management violation.  [Id. at 12-13 (citing Defs.' Retaliation CSOF, Decl. of Wayne Steel ("Steel Retaliation Decl.") at ¶ 4; Hanano Retaliation Decl. at ¶ 11; Acob Retaliation Decl., Exh. L).]

As to the April 2, 2009 meeting to discuss Plaintiff's request that she not have further contact with Defendant Tate, Defendants emphasize that the meeting "occurred seven months after the meeting on August 27, 2008; seventeen months after she reported alleged discrimination; seven months after she provided information to the EEOC investigator for the Jura/Murakami charges; and six months after she had filed her own EEOC complaint." [Id. at 13-14.] Defendants emphasize that Plaintiff now admits that she did not ask to be excused prior to the drug training. Further, Defendants argue that Defendant Acob never specifically ordered Plaintiff to attend the training. [Id. at 14 (citing Acob Retaliation Decl. at ¶ 15; Defs.' Retaliation CSOF, Exh. O[10] at ¶ 16).] In addition to reiterating the description of the April 2, 2009 meeting *supra* and in this Court's prior orders, Defendants emphasize that the Report of Conference contains no discipline for Plaintiff's failure to complete the drug training. [Id. at 15.] Defendants note that, although a Power Point presentation was available from the training, it did not cover the entire lecture. In fact, one of the presenters did not use Power Point at all. [Id. at 15-16 (citing Tate Retaliation Decl. at ¶ 4).] Defendants reiterate

---

[10] Exhibit O is a copy of the Declaration of Marie J. Kosegarten filed with Plaintiff's Concise Statement of Facts in Opp. to Defendants' Motion for Summary Judgment on Aiding and Abetting Claims, filed September 10, 2012. [Dkt. no. 174-1.]

that the recording of the April 2, 2009 meeting does not support Plaintiff's allegations about Defendant Acob's statements and actions during the meeting.  [Id. at 16-17 (citing Tipton Retaliation Decl., Exh. T-1 at 10, 29).]

Defendants also argue that, prior to the April 2, 2009 meeting, Plaintiff took actions that were inconsistent with her claim that she had told Defendant Acob that she wanted to have no further contact with Defendant Tate.  On the September 26, 2008 acknowledgment of her performance evaluation, Plaintiff wrote that she wanted to return to circuit court at some point. Defendants point out that, when she made that statement, Plaintiff knew that such a move would have increased her contact with Defendant Tate, who worked in the circuit court division. Thus, Defendants argue that Defendant Acob had no way of knowing prior to the drug training that Plaintiff objected to being around Defendant Tate.  [Id. at 17 (citing Acob Retaliation Decl. at ¶¶ 13, 15; id., Exh. U at 3).]  Defendants argue that there is no evidence that Defendant Acob's denial of Plaintiff's request not to have contact with Defendant Tate was retaliatory. Instead, it was for a legitimate, non-discriminatory purpose. Plaintiff herself admitted that she never interacted with Defendant Tate after the April 2, 2009 meeting.  [Id. at 18 & n.10 (citing Tipton Retaliation Decl., Exh. B at 136).]

28

Plaintiff also complains that Defendant Acob retaliated against her by questioning her vacation in May 2009.  She claims it was improper for him to challenge whether she had advance approval to use her vacation time because he was the one who approved her leave request in the first instance.  [Id. at 18 (citing Tipton Retaliation Decl., Exh. B at 148, 150).] Defendants argue that Defendant Acob's inquiry was appropriate because it was Hanano who approved Plaintiff's vacation request. Defendant Acob was unaware whether Plaintiff had properly obtained approval.  When Defendant Acob learned of Sims's absence, he tried to question Plaintiff about it, but was told Plaintiff was not in the office.  [Id. at 18-19 (citing Acob Retaliation Decl. at ¶ 39; id., Exh. E; Hanano Retaliation Decl. at ¶ 12).]  Defendants contend that his inquiry was not an adverse employment action and, even if it was, there was a legitimate, non-discriminatory purpose.

As to the May 19, 2009 meeting regarding Sims, Defendants reiterate that Plaintiff's recording of the meeting does not support her claims about what Defendant Acob said and did during the meeting.  [Id. at 19 (citing Tipton Retaliation Decl., Exh. T-2).]  In addition to reiterating Sims's attendance and performance problems discussed *supra*, Defendants note that Plaintiff acknowledges that Sims never requested an accommodation for a medical condition and that there was no approved written

request for Sims's leave on May 15, 2009.  [Id. at 19-21 & n.11 (citing Tipton Retaliation Decl., Exh. B at 166, 145).] Plaintiff alleges that Defendant Acob yelled at her during this meeting and threatened to discipline her if he was not happy with Sims's attendance.  [Second Amended Complaint at ¶ 83; Tipton Retaliation Decl., Exh. N-2 at 3.]  Defendants argue that yelling at or mildly reprimanding an employee is not an adverse employment action.  [Mem. in Supp. of Retaliation Motion at 22.]

Defendants emphasize that Plaintiff did not in fact counsel Sims for failing to obtain pre-approval for her May 15, 2009 leave.  [Id. (citing Acob Retaliation Decl. at ¶ 22; id., Exh. F at 6).]  Defendants also point out that Defendant Acob previously counseled Plaintiff about the need to discipline her subordinates and to prepare the associated documentation. Plaintiff admits that she failed to counsel or discipline Jura after Jura failed to appear at court on time and Plaintiff had to have another DPA cover for Jura.  Plaintiff also attended a supervisor skills training where one of the topics discussed was documenting discipline.  [Id. at 23 (citing Acob Retaliation Decl. at ¶ 29; Tate Retaliation Decl., Exh. U at 2; Tipton Retaliation Decl, Exh. B at 62, 101; id., Exh. AA).]  In fact, in Plaintiff's EEOC interview following her first EEOC complaint, she stated that she disagreed with Defendant Acob's view of a supervisor as a disciplinarian and stated that she generally

would not write up her subordinates.  [Id. at 24 (citing Tipton Retaliation Decl., Exh. BB; id., Exh. CC at 2).]  Thus, Defendants argue that the May 19, 2009 meeting had a legitimate, non-discriminatory reason and was not retaliatory.

As to Plaintiff's termination, Defendants state that, according to the County's Director of Personnel at the time, employees who consistently take leave or are late to work may be counseled for abusing County leave policies.  [Id. at 25 (citing Defs.' Retaliation CSOF, Decl. of Lynn G. Krieg ("Krieg Retaliation Decl.") at ¶ 7).]  Defendants also note that, although Plaintiff alleges that Defendant Acob terminated her on the same day he received her second EEOC charge, Defendant Acob tried to meet with Plaintiff on June 19, 2009 and June 22, 2009. Further, Acob denies that he knew about the charge when he terminated Plaintiff.  Defendants state that notice of the second EEOC charge went to the County's counsel and the Hawai`i Civil Rights Commission complaint went to Krieg.  [Id. (citing Tipton Retaliation Decl. at ¶ 6; id., Exhs. T-3, DD; Acob Retaliation Decl. at ¶ 25; Krieg Retaliation Decl. at ¶ 9).]  Thus, Defendants argue that there was a legitimate non-discriminatory reason for Plaintiff's termination and her termination was not in retaliation for filing the second EEOC charge or for reporting other discrimination.  Further, to the extent that Plaintiff bases her Title VII and Haw. Rev. Stat. § 378-2(2) retaliation

claims on any belief that restricting Sims's leave would have violated the Family Medical Leave Act ("FMLA"), Plaintiff's opposition was not to acts of discrimination in violation of Title VII or Chapter 378, Part I.  [Id. at 25-26.]

As to Plaintiff's allegation that Corporation Counsel's failure to investigate her complaint was an act of retaliation, Defendants assert that the Corporation Counsel's office was not the appropriate entity to handle such an investigation.  Further, Defendant Acob informed Plaintiff that the result of the investigation was that neither Plaintiff's nor Defendant Tate's complaints raised a violation of the County's policy.  Further, Plaintiff prepared and signed a memo stating that she was satisfied with the outcome of the investigation and considered the matter closed.  [Id. at 26-27 (citing Tipton Retaliation Decl. at ¶ 14; Underwood Retaliation Decl. at ¶ 3; id., Exh. EE; Acob Retaliation Decl. at ¶ 9; id., Exhs. FF, GG).]  Thus, Defendants argue that the Corporation Counsel's failure to investigate Plaintiff's complaint was not an adverse employment action.

During her deposition, Plaintiff alleged that Defendant Acob tried to prevent her from receiving COBRA health insurance benefits after her termination.  According to Defendant Acob, he was not involved in Plaintiff's coverage.  Further, the County does not administer COBRA coverage.  Defendants state that the

32

County signed all of the required paperwork and Plaintiff received COBRA coverage immediately upon the end of Plaintiff's coverage as a County employee.  [Id. at 28 (citing Tipton Retaliation Decl., Exh. B at 197-98; Acob Retaliation Decl. at ¶ 38; Defs.' Retaliation CSOF, Decl. of Nicole L. Wong at ¶ 14).]

Defendants also assert that, as to her timely claims, Plaintiff failed to use the County's complaint procedure and this constitutes an affirmative defense to any claims that do not involve serious employment actions such as pay cuts, demotions, or undesirable transfers.  Defendants therefore argue that Plaintiff can only pursue her Title VII claims based on a lack of pay raises and her termination.  [Id. at 29.]

Finally, Defendants argue that Plaintiff's whistleblowers' claim is meritless.  Plaintiff relies upon the same acts to support her whistleblower claim as her Title VII and Haw. Rev. Stat. § 378-2 claims.  Insofar as all of those actions had legitimate, non-discriminatory reasons and would have occurred regardless of any whistleblowing, Plaintiff's whistleblowers' claim also fails.  To the extent that Plaintiff alleges that she opposed Defendant Acob's disciplinary actions against Sims based on the FMLA, Plaintiff admitted that Sims never asked for an accommodation based on any health issue, and Plaintiff has not identified any protected basis for Sims's leave.  Further, Sims never requested FMLA leave, and County

policy allows the Department head the right to control employees'
leave.  [Id. at 31-32 & n.17 (citing Tipton Retaliation Decl.,
Exh. B at 165-66; Acob Retaliation Decl. at ¶ 36; Krieg
Retaliation Decl. at ¶¶ 5-7; id., Exh. Z (Executive Order No.
2007-08 to All Department Heads from Lynn G. Krieg[11]).]

Defendants therefore urge this Court to grant the
Retaliation Motion.

A.   **Retaliation Memorandum in Opposition**

Plaintiff moves to strike Defendants' Exhibit C because
it is incomplete and does not bear a signature or other
identification of the sender.  Plaintiff also objects to
Ms. Tipton's providing testimony.  Plaintiff further asserts that
Defendants' statement that she cannot show evidence of a
management violation is an ultimate issue of fact or a conclusion
of law.  Plaintiff therefore asks this Court to strike that
statement.  [Retaliation Mem. in Opp. at 11-12.]

Plaintiff argues that the incidents Defendants
discussed in the Retaliation Motion clearly demonstrate pretext.
As to the August 25, 2008 meeting about the missing painting,
Plaintiff alleges that Hanano and Steel must have believed she
took the painting or they would have interviewed Sims instead of
Plaintiff.  Further, Plaintiff argues that there was no reason

---

[11] The Krieg Retaliation Declaration erroneously identifies
this attachment as Exhibit H.  [Krieg Retaliation Decl. at ¶ 3.]

34

for a formal conference over a painting that a former employee had approved for donation.  [Id. at 13-14.]

Similarly, Plaintiff's arguments regarding the other incidents are based upon her characterization of the events which this Court previously discussed in connection with the Discrimination Motion and in prior orders.  Plaintiff does, however, note that management never raised an issue about her allegedly inadequate documentation until she complained about Defendant Tate.  [Id. at 16 (citing Pltf.'s Separate and Concise Stat. of Material Facts in Opp. to Retaliation Motion, filed 11/5/12 (dkt. no. 198) ("Pltf.'s Retaliation CSOF"), Decl. of Marie J. Kosegarten ("Pltf. Retaliation Decl.") at ¶ 19).]  As to the April 2, 2009 meeting to discuss her failure to attend the drug training, Plaintiff notes that Defendant Acob stated "what you going to do if I put you there?  I am not saying I will right now, but, I mean . . . ."  [Id. at 20 (quoting Tipton Retaliation Decl., Exh. T-1 at 13).]  Plaintiff states that she reasonably interpreted this as a threat of discipline, demotion, or sanction and therefore she asserts that the April 2, 2009 meeting was a direct threat of discipline or demotion.  [Id. (quoting Pltf. Retaliation Decl. at ¶¶ 43, 45).]

In spite of her statement that the Second Amended Complaint does not contain such a claim, Plaintiff asserts that the evidence supports a claim that she was subject to a hostile

work environment based on retaliation.  She alleges the same allegedly retaliatory behavior for all of her retaliation-based claims, and she urges this Court to deny the Retaliation Motion as to her hostile work environment claim.  [Id. at 28-31.]

Finally, Plaintiff asserts that she was a whistleblower and that she suffered consequences as a result.  She argues that she was subjected to conferences, investigations, a hostile workplace, and eventually termination, after she made her internal complaint about Defendant Tate in November 2007 through the filing of her first EEOC complaint on October 18, 2008 and her second EEOC Complaint on June 10, 2009.  [Id. at 31-32.]  She alleges that the timing of these events "create[s] a strong suspicion that Plaintiff's termination was a result of her outstanding complaints" and that the events prior to her termination were pretext to set up her termination.  [Id. at 31.] She contends that, at the very least, there is a triable issue of fact as to whether her complaints were a motivating factor in the decision to terminate her.  Plaintiff therefore urges this Court to deny the Retaliation Motion as to her Hawai`i Whistleblowers' Protection Act ("HWPA") claim.  [Id. at 32.]

   **B.   Retaliation Reply**

Defendants argue that most of the allegedly retaliatory acts that Plaintiff complains of do not rise to the level of adverse employment actions.  Thus, these cannot support a prima

36

facie case.  Where Plaintiff has identified adverse employment
actions, she has not rebutted the evidence of the County's
legitimate, non-discriminatory reasons for the actions.
[Retaliation Reply at 1-2.]  Defendants also note that Plaintiff
has not established that the adverse actions would not have
occurred if she had not reported violations of law.  [Id. at 9-
10.]

        Defendants assert that the internal complaint Plaintiff
filed in November 2007 did not trigger protection from
retaliation.  Defendants argue that only events occurring after
Plaintiff filed her first EEOC charge on October 17, 2008 can
support her retaliation claims.  [Id. at 2.]

        Defendants argue that Plaintiff did not dispute
Defendants' Retaliation CSOF No. 15, which states that Acob,
Hanano, and Steel did not imply that she should be careful about
what she said during her EEOC interviews, nor did she dispute
CSOF No. 18, which states that Acob never disciplined her prior
to her termination.  Thus, they argue that any contrary
allegations in the Second Amended Complaint should be dismissed.
[Id. at 10.]  Defendants also argue that there are
inconsistencies in her concise statement of facts in opposition
to the Retaliation Motion and that most of the facts in
Plaintiff's concise statement are immaterial because they either
do not establish retaliatory conduct or they relate to conduct

that does not constitute adverse employment action.  Thus, to the extent that there is any dispute about these issues, the dispute is not material and does warrant denying the Retaliation Motion. [Id. at 12-14.]

As to Plaintiff's allegations that certain documents were not properly authenticated, Defendants argue that those issues are either moot or meritless.  In particular, Defendants argue that corporation counsel is entitled to authenticate records requested from other County agencies.  [Id. at 11-12.]

Defendants therefore argue that this Court should grant the Retaliation Motion.

**DISCUSSION**

I.   **Objections**

Plaintiff objects to many of the statements of fact that Defendants have identified as undisputed in their concise statements of fact because Plaintiff contends that many of the facts remain in dispute.  This Court emphasizes that, when considering Defendants' motions for summary judgment, it must view the record in the light most favorable to Plaintiff.  See Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006) (stating that, on a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor" (citations, quotation marks, and brackets omitted)).  Further, this Court can

only grant summary judgment where there are no genuine disputes of material fact.  See Fed. R. Civ. P. 56(a).  This Court considers Defendants' purported undisputed facts in light of these principles and does not rely on Defendants' characterization of factual matters as undisputed.

As to the Retaliation Motion, Plaintiff asks this Court to strike Defendants' Exhibit C because it is incomplete and insufficiently authenticated.  Defendants state that Exhibit C is a document which Plaintiff produced in discovery.  In the document, Plaintiff discusses, *inter alia*, the meetings she had with Hanano and Steel on August 25 and 27, 2008.  [Defs.' Retaliation CSOF, Decl. of Cheryl Tipton ("Tipton Retaliation Decl.") at ¶ 4.]  While Defendants are correct that their counsel can authenticate documents received during discovery, Plaintiff represents that the exhibit is incomplete, and this Court notes that the text of the exhibit appears to confirm that there was more to the document.  Thus, Exhibit C does not appear to be a complete version of what Plaintiff produced in discovery.  This Court therefore GRANTS Plaintiff's request to strike Exhibit C.

Plaintiff also objects that Ms. Tipton cannot give testimony as to the factual issues in this case.  This Court, however, does not construe Ms. Tipton's declarations authenticating various documents as giving testimony regarding the factual issues in this case.  Ms. Tipton has merely

identified the documents, and this Court reviews the contents of those documents, including the representations about any disputed factual issues, in light of the principles set forth *supra*.  This Court therefore DENIES Plaintiff's request to strike Ms. Tipton's declarations as improperly providing testimony regarding the disputed factual issues in this case.

This Court now turns to the merits of the instant motions.

## II. **Discrimination Motion**

### A. **Count I and Count IV**

First, this Court notes that Plaintiff has withdrawn her claim of discrimination based on sexual orientation. [Discrimination Mem. in Opp. at 1.]  This Court therefore GRANTS the Discrimination Motion as to Count I, Plaintiff's Title VII claim, and Count IV, Plaintiff's Haw. Rev. Stat. § 378-2 claim, based on sexual orientation discrimination.

Second, the parties agree that the majority of the timely incidents alleged in the Second Amended Complaint are unrelated to Plaintiff's claims of gender discrimination.  The only incidents remaining at issue are: Defendant Tate's complaint that Plaintiff called Jura and Murakami idiots and morons and that Plaintiff said she hated Rivera; the ensuing investigation about the alleged derogatory comments; Defendant Tate's alleged encouragement of Jura and Murakami to file EEOC complaints

against Plaintiff; and Plaintiff's termination. [Discrimination

Mem. in Opp. at 18-19; Discrimination Reply at 7.]  This Court

therefore GRANTS the Discrimination Motion as to Plaintiff's

Title VII and § 378-2 claims to the extent Plaintiff alleges

gender discrimination based on the other timely incidents.

This district court has stated:

> To prevail on a disparate treatment claim, [the
> plaintiff] must establish a prima facie case of
> discrimination by showing that (1) he belongs to a
> protected class, (2) he was qualified for his
> position, (3) he was subject to an adverse
> employment action, and (4) similarly situated
> individuals outside his protected class were
> treated more favorably.  See Davis v. Team Elec.
> Co., 520 F.3d 1080, 1089 (9th Cir. 2008).  See
> also McDonnell Douglas Corp. v. Green, 411 U.S.
> 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  If
> he does so, the burden shifts to [the defendant]
> to articulate a "legitimate, nondiscriminatory
> reason for the challenged action."  See Davis, 520
> F.3d at 1089.  If [the defendant] satisfies his
> burden, [the plaintiff] must finally show that the
> "reason is pretextual either directly by
> persuading the court that a discriminatory reason
> more likely motivated the employer or indirectly
> by showing that the employer's proffered
> explanation is unworthy of credence."  Id.
> (quoting Chuang v. Univ. of Cal. Davis, 225 F.3d
> 1115, 1123-24 (9th Cir. 2000) (quotation marks
> omitted)).

Daniels v. Donahoe, Civil No. 11-00287 SOM-BMK, 2012 WL 4739460,

at *6 (D. Hawai`i Oct. 2, 2012).

> "[A] plaintiff's burden is much less at the prima
> facie stage than at the pretext stage."  Hawn v.
> Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1158 (9th
> Cir. 2010).  That is, circumstantial evidence of
> pretext must be specific and substantial, Becerril
> v. Pima Cnty. Assessor's Office, 587 F.3d 1162,
> 1163 (9th Cir. 2009), and a plaintiff must do more

41

than merely deny the credibility of the defendant's proffered reason.[12]  Schuler v. Chronicle Broad. Co., 793 F.2d 1010, 1011 (9th Cir. 1986). . . .  "Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory [or retaliatory] statements or actions by the employer."  Coghlan [v. Am. Seafoods Co., 413] F.3d [1090,] 1095 [(9th Cir. 2005)].  Circumstantial evidence requires an additional inferential step to demonstrate discrimination.  Id.

>Despite this "useful tool" of the McDonnell Douglas framework, there is nothing that "compels the parties to invoke the McDonnell Douglas presumption."  McGinest [v. GTE Serv. Corp.], 360 F.3d [1103,] 1122 [(9th Cir. 2004)].  "When responding to a summary judgment motion . . . [the plaintiff] may proceed by using the McDonnell Douglas framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the employer]."  Metoyer v. Chassman, 504 F.3d 919, 931 (9th Cir. 2007) (quoting McGinest, 360 F.3d at 1122.  If the plaintiff submits direct or circumstantial evidence, "a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial."  Id. (quoting Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998)).

---

12 The Ninth Circuit, however, has also recognized that

>any indication of discriminatory motive . . . may suffice to raise a question that can only be resolved by a factfinder, and for that reason summary judgment for the defendant will ordinarily not be appropriate on any ground relating to the merits because the crux of a Title VII dispute is the elusive factual question of intentional discrimination.

Lyons v. England, 307 F.3d 1092, 1113 (9th Cir. 2002) (alteration in Lyons) (citation and internal quotation marks omitted).

Hughes [v. Mayoral], 721 F. Supp. 2d [947,] 957-58
[(D. Hawai`i 2010)].

The same general framework applies for both
Plaintiff's Title VII and Hawai`i state
law discrimination claims.  See Schefke v. Reliable
Collection Agency, Ltd., 96 Hawai`i 408, 426, 32
P.3d 52, 70 (2001); Villiarimo v. Aloha Island
Air, Inc., 281 F.3d 1054, 1064 (9th Cir. 2002)
(recognizing that Hawai`i courts use the McDonnell
Douglas framework in analyzing analogous state law
claims). . . .

Nunes-Baptista v. WFM Hawaii, LLC, 2012 WL 1536075, at *3 (D.

Hawai`i Apr. 30, 2012) (some alterations in Nunes-Baptista).

Plaintiff alleges that the County discriminated against

her on the basis of her gender, a protected classification.

Although there has been some evidence regarding Defendant Acob's

dissatisfaction with Plaintiff's failure to document problems

with employees under her supervision, there has been no evidence

that, prior to the Sims incident that was purportedly the basis

of Plaintiff's termination, Plaintiff was not qualified for her

position.  First, the mere fact that Defendant Tate made an

internal complaint alleging that Plaintiff made derogatory

statements about Jura, Murakami, and Rivera is not an adverse

employment action.  Defendant Tate was neither Plaintiff's

employer nor her supervisor, and the complaint itself was not an

employment action.  Similarly, viewing the evidence in the light

most favorable to Plaintiff, there is a disputed issue of

material fact as to whether Defendant Tate encouraged Jura and

Murakami to file EEOC complaints against Plaintiff, but even if

43

this did occur, the encouragement itself was not an employment action against Plaintiff.  This is particularly so in light of the fact that Jura's and Murakami's complaints against Plaintiff were also effectively complaints against the County.

Viewing the evidence in the light most favorable to Plaintiff, there is a genuine issue of fact regarding whether the investigation of Defendant Tate's complaint, and results thereof, constituted an adverse employment decision against Plaintiff. Plaintiff, however, has not produced any evidence that similarly situated individuals outside of her protected class, *i.e.* male DPAs, were treated more favorably.  There is no evidence that there were similar complaints brought against male DPAs which the County either did not investigate, investigated less vigorously, or dealt with less severely.  Further, as this district court has recognized, "Title VII is not 'a general civility code for the American workplace.'"  Jura v. Cnty. of Maui, Civ. No. 11-00338 SOM/RLP, 2012 WL 5187845, at *7 (D. Hawai`i Oct. 17, 2012) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998)).  Moreover, "'personal animosity is not the equivalent of sex discrimination,' and a plaintiff 'cannot turn a personal feud into a sex discrimination case.'"  Jura, 2012 WL 5187845, at *7 (quoting Succar v. Dade Cnty. Sch. Bd., 229 F.3d 1343, 1345 (11th Cir. 2000)).  Even considering the evidence in the light most

44

favorable to Plaintiff and even considering the untimely incidents as relevant background, this Court finds that the timely incidents of alleged gender discrimination involving Defendant Tate merely establish personal animosity and a personal feud between Defendant Tate and Plaintiff.

This Court CONCLUDES that Plaintiff failed to establish a prima facie case of gender discrimination by the County as to Defendant Tate's complaint, the investigation of that complaint, or Defendant Tate's encouragement of Jura's and Murakami's EEOC complaints. This Court therefore GRANTS the Discrimination Motion as to Plaintiff's Title VII and § 378-2 claims based on these incidents.

The only remaining portion of Plaintiff's discrimination claims relate to Plaintiff's termination. As previously stated, Plaintiff alleges that the County discriminated against her because of her gender, a protected classification. It is undisputed that Plaintiff's termination constitutes an adverse employment action. Defendants' position is that there was a legitimate, non-discriminatory reason for Plaintiff's termination - her insubordination in the Sims matter. The incident also arguably affects the issue of whether Plaintiff was qualified for her position. Viewing the record in the light most favorable to Plaintiff, however, there is at least a genuine issue of material fact as to whether Plaintiff was qualified for

her position in light of her actions in connection with the Sims matter.

Plaintiff contends that similarly situated persons outside of her protected class, *i.e.* male DPAs, were treated more favorably than she was.  She alleges that, after her termination, the County filled her position with a male DPA who was not as qualified as Plaintiff was.  [Second Amended Complaint at ¶ 114.] Plaintiff, however, did not present any evidence in support of her allegation regarding her replacement's qualifications,[13] and this Court therefore will not consider the allegation for summary judgment purposes.

She also alleges that male DPAs who were insubordinate were not terminated and were subjected to lesser forms of discipline.  Plaintiff states that Carson Tani, who began his employment as a DPA the same year she did and who still works for the Department, told her that Defendant Acob disciplined him twice for insubordination.  [Pltf. Discrimination Decl. at ¶¶ 77-78, 80.]  Plaintiff states that Tani believes there is documentation of the insubordination in his personnel file, [id. at ¶ 79,] but Plaintiff has not presented or otherwise identified any supporting evidence.  Defendants submitted the 2011 Tani

---

[13] In fact, Defendants presented testimony by Defendant Acob that he promoted Kenton Werk to Plaintiff's position following her termination because of "his excellent performance and his previous administrative experience, and not his gender." [Acob Discrimination Decl. at ¶ 35.]

46

Declaration which describes two incidents for which Defendant Acob wrote Tani up for insubordination.

Tani stated that he voluntarily taught the laws of arrest at Maui police recruit training sessions.  Once when he was on vacation, he did not know there was a training scheduled and therefore did not attend.  Acob wrote him up for insubordination because he failed to schedule someone else to provide coverage for him at the training session.  The second write up for insubordination occurred when Tani missed a meeting.  According to Tani, he forgot about the meeting and may have been in court at the time of the meeting, but Defendant Acob accused him of intentionally missing the meeting.  Tani stated that he may have been written up for one other incident of insubordination, but he did not provide any information about the third incident.  [2011 Tani Decl. at ¶¶ 6-7.]  Tani described the insubordination write ups as discipline for disagreeing with Defendant Acob, which is arguably analogous to the allegedly unwarranted discipline imposed upon Plaintiff.  It is a close question whether Tani's allegedly insubordinate conduct is sufficient to render him similarly situated to Plaintiff.  Viewing the record in the light most favorable to Plaintiff, however, this Court finds for purposes of the instant motions that Tani was a similarly situated individual outside of Plaintiff's protected class who was treated more favorably than

47

Plaintiff was treated.

Plaintiff presented Rivera's testimony that, in 2008,[14] Defendant Acob removed him from his position as circuit court supervisor and EEOC officer to a circuit court line deputy because he disclosed confidential information discussed at a management meeting to Defendant Tate.  Rivera also speculated that this was not the only reason which prompted his demotion. [Hevicon Discrimination Decl., Exh. 1 at 25-26, 40.]  Defendant Acob eventually terminated Rivera in 2010.  [Acob Discrimination Decl. at ¶ 27.]  Plaintiff emphasizes that, unlike in her case, Defendant Acob did not terminate Rivera for his first offense. [Discrimination Mem. in Opp. at 10.]  In addition, Defendant Acob demoted and suspended Kim for his case backlog and for failing to inform his case team leader of changes to settlement terms. [Acob Discrimination Decl. at ¶ 28.]

Although Defendant Acob may not have used the term "insubordination" in connection with Rivera's and Kim's demotions, viewing the record in the light most favorable to Plaintiff for purposes of the instant motions, their conduct was sufficiently similar to Plaintiff's alleged insubordination to render them similarly situated individuals outside of Plaintiff's protected class who were treated more favorably than Plaintiff

---

[14] Defendant Acob states that the disclosure to Defendant Tate occurred in October 2007.  [Acob Discrimination Decl. at ¶ 28.]

was treated.   Although this Court acknowledges that it is a close
question, this Court FINDS that there is a triable issue of
material fact as to whether the actual motivation behind
Plaintiff's termination was her gender.   This Court therefore
DENIES the Discrimination Motion as to the portions of
Plaintiff's Title VII claim and § 378-2 claim for gender
discrimination in Plaintiff's termination.

   B.   **Count II**

      Count II alleges that Plaintiff was subjected to sexual
harassment and a hostile work environment based on her gender.[15]

> To prevail on a hostile work environment claim
> under Title VII, [the plaintiff] must show that
> her "workplace was permeated with discriminatory
> intimidation . . . that was sufficiently severe or
> pervasive to alter the conditions of her
> employment and create an abusive working
> environment." Brooks v. City of San Mateo, 229
> F.3d 917, 923 (9th Cir. 2000) (internal quotation
> marks and citations omitted).   The court examines
> the totality of the circumstances to determine
> whether a claimant shows that her work environment
> was both subjectively and objectively abusive.
> Id.   "When assessing the objective portion of a

---

[15] Although some of Plaintiff's filings suggested that Count
III alleges a claim of hostile work environment based on
retaliation, Plaintiff ultimately confirmed that she is not
alleging such a claim.   [Retaliation Mem. in Opp. at 8-9.]
Further, even without considering Plaintiff's concession, this
Court has also reached the same conclusion based on this Court's
review of the allegations in Count III.
   To the extent that Count III alleges sexual
harassment/hostile work environment based on Plaintiff's sexual
orientation, this Court considers the claim withdrawn,
[Discrimination Mem. in Opp. at 1,] and this Court GRANTS the
Discrimination Motion as to the portion of Count III based on
sexual orientation.

> plaintiff's claim, we assume the perspective of
> the reasonable victim." Id. at 924.
>
>    The Hawaii Supreme Court analyzes similar
> factors in considering hostile work environment
> claims brought under chapter 378.  See Nelson v.
> University of Hawaii, 97 Hawai`i 376, 390, 38 P.3d
> 95, 109 (2001).  Its "analysis of whether
> particular harassing conduct was severe and
> pervasive is separate and distinct from the
> remaining requirements of a plaintiff's claim: it
> is the harasser's conduct which must be severe or
> pervasive, not its effect on the plaintiff or the
> work environment." Aguero v. Hilton Hawaiian
> Vill. LLC, 104 Hawai`i 423,431, 91 P.3d 505, 513
> (2004) (internal alterations omitted) (emphasis in
> original).

Jura, 2012 WL 5187845, at *6.

     In evaluating Plaintiff's hostile work environment

claim, this Court must consider "the frequency of the

discriminatory conduct; its severity; whether it is physically

threatening or humiliating, or a mere offensive utterance; and

whether it unreasonably interferes with an employee's work

performance." Faragher v. City of Boca Raton, 524 U.S. 775, 787-

88 (1998).  Further, "simple teasing, offhand comments, and

isolated incidents (unless extremely serious) will not amount to

discriminatory changes in the terms and conditions of

employment." Id. at 788 (internal quotation marks omitted).

     Plaintiff alleges that Defendant Acob's and Defendant

Tate's conduct constituted sexual harassment and a hostile work

environment.  Viewing the record in the light most favorable to

Plaintiff, and even considering the untimely incidents as

relevant background, this Court finds that their conduct was not sufficiently severe or pervasive to support Plaintiff's claim under either Title VII or Chapter 378.  Their conduct did not rise beyond offhand comments and isolated incidents of personal animosity between Plaintiff and Defendants Acob and Tate.  This Court therefore FINDS that there are no genuine issues of material fact as to Count II, and this Court CONCLUDES that the County is entitled to judgment as a matter of law.  Defendants' Discrimination Motion is GRANTED as to Count II.

## III. Retaliation Motion

At the outset, this Court acknowledges that Defendants argue in the Retaliation Motion that they have an affirmative defense to any of Plaintiff's claims that do not involve serious employment actions because Plaintiff failed to use the County's complaint procedure.  This Court notes that such a defense may be inapplicable because of this Court's rulings in the 8/31/12 Order and/or because of waiver.  This Court, however, concludes that it is not necessary to render findings and conclusions about this issue because of this Court's ultimate ruling that only Plaintiff's retaliation claims based upon Plaintiff's termination survive.

### A.   Count VI

Plaintiff has stated that she will stipulate to withdraw Count VI, her defamation claim against Defendant Tate.

51

[Retaliation Mem. in Opp. at 1.]   This Court therefore GRANTS Defendants' Retaliation Motion as to Plaintiff's defamation claim and GRANTS summary judgment in favor of Defendant Tate as to Count VI.

**B.   Count III**

As previously noted, with respect to Plaintiff's retaliation claims against the County, Title VII and Haw. Rev. Stat. § 378-2 are analogous.   See Jura, 2012 WL 5187845, at *10 (citing Gonsalves v. Nissan Motor Co., 100 Hawai`i 149, 163, 58 P.3d 1196, 1210 (2002)).   In order for Plaintiff to establish a prima facie case of retaliation under either state or federal law,

> she must show that: (1) she engaged in protected activity; (2) she was thereafter subjected to an adverse action; and (3) a causal link exists between the protected activity and the adverse action.   See Wallis v. J.R. Simplot Co., 26 F.3d 885, 891 (9th Cir. 1994); Gonsalves v. Nissan Motor Co., 100 Hawai`i 149, 58 P.3d 1196, 1207 (Haw. 2002).   The requisite degree of proof Jura must proffer to establish a prima facie case is "minimal."   See Cordovo v. State Farm Ins. Cos., 124 F.3d 1145, 1148 (9th Cir. 1997); Gonsalves, 58 P.3d at 1210.
>
> If a plaintiff asserts a prima facie retaliation claim, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision.   See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).   If the defendant articulates such a reason, the plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive.   Id.

52

Id. at *11.

        For the purposes of Plaintiff's Title VII
retaliation claim, an adverse employment action is
one that "a reasonable employee would have found
. . . materially adverse, which in [the
retaliation] context means it well might have
dissuaded a reasonable worker from making or
supporting a charge of discrimination."
Burlington N. R.R. & Santa Fe Ry. Co. v. White,
548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d
345 (2006).  Threats may rise to the level of an
adverse employment action in a retaliation claim
if, under the particular circumstances, those
threats would have deterred a reasonable employee
from engaging in protected activity.  See
Burlington, 548 U.S. at 68, 126 S. Ct. 2405;
Martin v. Gates, 2008 WL 4657807 at *10–11 (D.
Haw. Oct. 20, 2008) (finding that employee made a
prima facie claim of retaliation where employer
made threat of severe disciplinary action).
Threats sufficient to deter an employee from
engaging in protected activity may include threats
to terminate employment, reduce compensation, or
impose administrative leave.  E.E.O.C. v.
Collegeville/Imagineering, 2007 WL 2051448, at *8
(D. Ariz. July 16, 2007) (concluding plaintiff put
forth prima facie evidence of material adverse
action by showing supervisor with requisite power
threatened to terminate plaintiff); Lee v. Winter,
439 F. Supp. 2d 82, 85 (D.D.C. 2006) (finding
threat of reduced compensation constitutes
materially adverse action after Burlington);
Killen v. Nw. Human Servs., Inc., 2007 WL 2684541,
at *7 (E.D. Pa. Sept. 7, 2007) (finding that the
threat of placement on administrative leave could
have dissuaded a reasonable employee from making a
discrimination claim).  "A fair reading of
[Burlington] reveals that the case imposes no
requirement that a threat be fulfilled."  Walsh v.
Irvin Stern's Costumes, 2006 WL 2380379, at *2
(E.D. Pa. Aug. 15, 2006); see also Williams v.
W.D. Sports, N.M., Inc., 497 F.3d 1079, 1090 (10th
Cir. 2007) (finding combination of threats and
actions could dissuade reasonable employee).

D'Andrea v. Univ. of Hawaii, 686 F. Supp. 2d 1079, 1088 (D.

Hawai`i 2010) (alterations in D'Andrea).

The timely incidents which Plaintiff bases her claims upon are: the failure to name Plaintiff as the manager of the year in 2008; the August 25, 2008 meeting regarding a picture left behind by a former DPA; Defendant Tate's statements to management and other Department personnel about Plaintiff's idiots and morons comment and her comment that she hated Rivera; management's investigation into Defendant Tate's report; management's alleged warning that Plaintiff should be careful during her EEOC testimony because it could negatively impact her employment; the drug team training incident; alleged threats that Plaintiff would be disciplined for her failure to discipline Sims; Defendant Tate's encouraging Jura and Murakami to file EEOC complaints against Plaintiff; Plaintiff's limited pay raises and lack of awards and commendations while Defendant Acob was the County's prosecuting attorney; the alleged negative marks in Plaintiff's personnel file; and Plaintiff's termination.

Plaintiff did engage in protected activity by filing internal complaints and EEOC charges. This Court also finds that there is a genuine issue of material fact as to whether Plaintiff engaged in protected activity by refusing to impose disciplinary actions upon Sims which Plaintiff believed were illegal and/or discriminatory. As previously stated, neither Defendant Tate's complaint regarding Plaintiff's derogatory comments about Jura,

54

Murakami, and Rivera nor Defendant Tate's alleged encouragement of Jura's and Murakami's filing of discrimination complaints against Plaintiff was an adverse employment action.  Further, Plaintiff has not presented any evidence that, during the period in question, there were raises, awards (including the manager of the year award in 2008), and commendations that were available and for which Plaintiff was entitled to or qualified but did not receive because she engaged in protected activity.  This Court also finds that Plaintiff has not established a genuine issue of material fact regarding her claim that negative marks were placed in her personnel file.  Defendants presented evidence that the only negative marks in Plaintiff's personnel file relate to the Sims matter, for which Plaintiff was terminated.  Plaintiff speculates that negative records did exist, but were removed. Plaintiff, however, has not presented any evidence to support this.  This Court also finds that Plaintiff has not established a genuine issue of material fact regarding an adverse employment action she suffered in connection with the August 25, 2008 meeting regarding the missing painting.

     The remaining timely incidents arguably constitute adverse employment actions.  This Court, however, finds that, even viewing the record in the light most favorable to Plaintiff, she has not established a genuine issue of material fact regarding the existence of a causal link between the

investigation into Defendant Tate's complaint regarding
Plaintiff's derogatory comments and the drug training incident.
Plaintiff has put forth sufficient evidence to create a genuine
issue of material fact regarding whether there was a causal link
between the adverse actions she suffered because of the Sims
matter and her refusal to impose disciplinary actions on Sims
which Plaintiff believed were illegal or discriminatory.
Similarly, this Court also finds that Plaintiff established a
genuine issue of material fact as to the issue of pretext.  As
discussed with regard to Plaintiff's gender discrimination claim
based on her termination, Rivera and Kim were merely demoted for
their first offenses of insubordination or similar misconduct,
and Tani was merely written up for his two insubordination
incidents.  These employees had not engaged in the protected
activity of objecting to and refusing to follow employment orders
they asserted were illegal and/or discriminatory.  This Court
therefore DENIES Defendants' Retaliation Motion as to the
portions of Plaintiff's Title VII claim and § 378-2 claim
alleging that Plaintiff's termination was in retaliation for the
Sims incident.  This Court GRANTS the Retaliation Motion as to
all of the remaining portions of Plaintiff's Title VII and § 378-
2 retaliation claims.[16]

---

[16] To the extent that Plaintiff's retaliation claims are
based upon any incidents which this Court has not expressly
                                              (continued...)

C.    **Count V**

The HWPA provides that:

An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:

(1) The employee, or a person acting on behalf of the employee, reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of:

(A) A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States; or

(B) A contract executed by the State, a political subdivision of the State, or the United States,

unless the employee knows that the report is false; or

(2) An employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

Haw. Rev. Stat. § 378-62.

This district court has recognized that:

The HWPA "provides protection to employees who report suspected violations of law from 'any form of retaliation by their employers.'"  Crosby v. State Dep't of Budget & Fin., 76 Hawai`i 332, 341, 876 P.2d 1300, 1309 (1994), cert. denied, 513 U.S. 1081, 115 S. Ct. 731, 130 L. Ed. 2d 635 (1995).

--------

[16](...continued) discussed herein, this Court rejects those incidents as insufficient to create a triable issue of material fact.

57

> (quoting Sen. Stand. Comm. Rep. No. 1127, in 1987
> Senate Journal, at 1392).  Indeed, "the
> legislature intended that the HWPA bar 'discharge,
> discrimination and other forms of adverse
> action.'"  Id. (quoting Sen. Stand. Comm. Rep. No.
> 833, in 1987 Senate Journal, at 1249).

Price v. Molokai General Hosp., Civil No. 09-00548 DAE-KSC, 2010

WL 715413, at *4 (D. Hawai`i Mar. 1, 2010).  Further, "'any form

of retaliation by [] employers' may support a charge under the

Hawaii Whistleblowers' Protection Act." D'Andrea, 686 F. Supp.

2d at 1088 (quoting Crosby v. State Dept. of Budget & Fin., 76

Hawai`i 332, 341, 876 P.2d 1300, 1309 (1994) (quoting Sen. Stand.

Com. Rep. No. 1127, in 1987 Sen. Journal, at 1392))).

　　　　For the reasons set forth in connection with

Plaintiff's retaliation claims, only Plaintiff's claims related

to her termination for the Sims matter remain at issue.  At the

time of her termination, Plaintiff had not made any type of

report that she believed Defendant Acob directed her to impose

illegal and/or discriminatory discipline upon Sims.  Further,

there is no evidence in the record that, at the time of

Plaintiff's termination, Defendant Acob believed that Plaintiff

was about to make such a report.  Plaintiff has therefore failed

to establish a prima facie case of a HWPA violation.  Defendants'

Retaliation Motion is GRANTED as to Count V.

　　　　**D.　Aiding and Abetting Claim**

　　　　In the 10/30/12 Order, this Court denied Defendant

Acob's and Defendant Tate's motion for summary judgment as to

Plaintiff's Haw. Rev. Stat. § 378-2(3) claim in Count IV, and in the 8/31/12 Order, this Court denied their motion for summary judgment based on qualified immunity.  After this Court's rulings on the instant motions, however, the only incident which remains at issue for trial is Plaintiff's termination, and there is no evidence in the record that Defendant Tate was involved in Plaintiff's termination.  This Court therefore GRANTS summary judgment as to Count IV in favor of Defendant Tate.

Although there is a genuine issue of material fact as to whether Defendant Acob's termination of Plaintiff was motivated by discriminatory intent, Plaintiff cannot establish her § 378-2(3) claim based on his actions alone.  See 10/30/12 Order, 2012 WL 5381799, at *19 (citing Maizner v. Haw., Dep't of Educ., 405 F. Supp. 2d 1225, 1239 (D. Hawai`i 2005) (ruling that the plaintiff failed to state a § 378-2(3) claim where he alleged that a defendant incited, compelled, or coerced himself into discriminatory practices because "[t]here must be at least two persons (someone who incites, compels, or coerces, and some other person who is incited, compelled, or coerced)")).  The Second Amended Complaint alleges that Defendant Tate was the person who incited, compelled, or coerced Defendant Acob's alleged discriminatory actions.  Id.  Insofar as Plaintiff has failed to establish a prima facie case for her § 378-2(3) claim against Defendant Tate, her § 378-2(3) claim against Defendant Acob also

fails.  This Court therefore GRANTS summary judgment as to Count IV in favor of Defendant Acob.

## CONCLUSION

On the basis of the foregoing, Defendants' Motion for Summary Judgment on Plaintiff's Claims of Discrimination Based on Gender and Sexual Orientation, filed September 24, 2012, and Defendants' Motion for Summary Judgment on Claims of Retaliation and Defamation, filed September 26, 2012, are HEREBY GRANTED IN PART AND DENIED IN PART.

Defendants' Discrimination Motion is DENIED as to the portions Count I and Count IV, Plaintiff's Title VII and Haw. Rev. Stat. § 378-2 claims, alleging gender discrimination claims based on her termination.  Defendants' Retaliation Motion is DENIED as to the portions Count III and Count IV, Plaintiff's Title VII and Haw. Rev. Stat. § 378-2 claims, based on her termination.  The motions are GRANTED in all other respects.  In addition, this Court GRANTS summary judgment in favor of Defendants Acob and Tate as to the portion of Count IV alleging Plaintiff's § 378-2(3) claim against them.  Insofar as this Court has granted summary judgment to Defendant Acob and Defendant Tate on all claims against them, this Court DIRECTS the Clerk's Office to terminate them as parties.

The only claims remaining for trial are the portions of Counts I, III, and IV alleging gender discrimination and

retaliation claims against the County based on Plaintiff's termination.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, February 21, 2013.



    /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**MARIE J. KOSEGARTEN V. THE DEPARTMENT OF THE PROSECUTING ATTORNEY, ET AL**; CIVIL NO. 10-00321 LEK-KSC; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS OF DISCRIMINATION BASED ON GENDER AND SEXUAL ORIENTATION AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON CLAIMS OF RETALIATION AND DEFAMATION